

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| KENNETH MASON and JULIA WATKINS, | ) <br> ) <br> ) |
| Plaintiffs, | ) <br> ) |
| v. | ) <br> ) <br> ) |
| LONG BEACH MORTGAGE COMPANY and DEUTSCHE BANK NATIONAL TRUST COMPANY, | ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) <br> ) |

Civil Action No. 07-C-0272 CNC

**LONG BEACH'S MEMORANDUM IN
SUPPORT OF 12(B)(6) MOTION TO DISMISS**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendant Washington Mutual Bank, f/k/a Long Beach Mortgage Company ("Long Beach"), moves this Court to dismiss, with prejudice, both claims asserted in this case by Kenneth Mason and Julia Watkins ("Plaintiffs"). Plaintiffs' 1-4 Family Rider claim (Count II) should be dismissed as that claim is time-barred by the applicable statute of limitations. Moreover, even if the Court were to determine that Plaintiffs timely asserted their 1-4 Family Rider claim, the Court should still dismiss that claim as Long Beach was not required to disclose the incidental interests set forth in the rider. Plaintiffs also assert a claim for rescission (Count I), which should be dismissed because Plaintiffs signed properly dated copies of the Notice of Right to Cancel for their mortgage loan and thus they do not have the right to rescind that loan.

**FACTUAL BACKGROUND**

The claims asserted by Plaintiffs in this case arise from a mortgage loan that Plaintiffs obtained from Long Beach in September 2005. (Cmplt. ¶ 8). Plaintiffs claim that Long Beach

provided Plaintiffs incomplete copies of the Notice of Right to Cancel. (*Id.* ¶ 11). Based on this allegation, Plaintiffs assert a rescission claim under the Truth in Lending Act ("TILA"), which is Count I of their Complaint. (*Id.* ¶¶ 16-22). In addition to this rescission claim, Plaintiffs also contend that the 1-4 Family Rider (the "Rider") executed as part of their mortgage loan created a security interest in their personal property that should have been disclosed under TILA. (*Id.* ¶¶ 23-28).

Plaintiffs expressly acknowledge that their 1-4 Family Rider claim would put them within a pending putative class action, captioned *Navara v. Long Beach Mortgage Company, et al.*, U.S.D.C. Northern District of Illinois, No. 05 C 00864 (*id.* ¶ 25), brought by the same law firm representing Plaintiffs in this case. In this proceeding, Plaintiffs seek to exclude themselves from the putative *Navara* class claim. (*Id.*). Plaintiffs' Complaint does not provide any explanation as to why they want to be excluded from the proposed class in *Navara*.[1] In any event, Plaintiffs seek to pursue their own individual 1-4 Family Rider claim in this proceeding outside the proposed *Navara* class.[2]

## ARGUMENT

I.    **The Court Should Dismiss Plaintiffs' 1-4 Family Rider Claim.**

A.    **The 1-4 Family Rider Claim Is Barred By The Statute Of Limitations.**

TILA provides that any action brought under TILA must be commenced within one year from the date of the occurrence of the alleged violation. 15 U.S.C. § 1640(e). In a closed-end transaction, such as a mortgage loan, the limitations period begins to run from the date of the

---

[1] Although class claims are asserted in *Navara*, a class has yet to be certified.

[2] In addition, the law firm representing the *Navara* plaintiffs has informed Long Beach's counsel that the *Navara* plaintiffs plan to file a motion with the Judicial Panel on Multidistrict Litigation to transfer this action and another class action pending in the District of Massachusetts to the Northern District of Illinois, where the *Navara* action is pending.

loan closing. *Tucker v. Beneficial Mortg. Co.*, 437 F. Supp. 2d 584, 589-90 (E.D. Va. 2006); *Morris v. Lomas & Nettleton Co.*, 708 F. Supp. 1198, 1203 (D. Kan. 1989). In this case, Plaintiffs failed to timely assert this claim, as they filed their Complaint on March 21, 2007, more than a year after their September 28, 2005 loan transaction.

Plaintiffs acknowledge that their suit was filed outside the limitations period, but nonetheless claim that the limitations period has been tolled as a result of the filing of a putative class action in *Navara*. (Cmplt. ¶ 25). Plaintiffs seek to exclude themselves as class members from the *Navara* case in order to pursue their 1-4 Family Rider claim in this proceeding. (*Id.*). Apparently, Plaintiffs believe that they are entitled to rely on the tolling principles enunciated in *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974).

In *American Pipe*, the Supreme Court held that the filing of a class action "suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* at 554. The Supreme Court subsequently held that the *American Pipe* tolling rule applies to putative class members who file separate suits instead of moving to intervene after a district court denies class certification. *See Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350 (1983).

This case is factually different from *American Pipe* and *Crown, Cork*, in that Plaintiffs are seeking to exclude themselves from a class ***prior*** to a decision on class certification. In that regard, the majority of courts that have addressed this very issue have concluded that "a plaintiff who files an independent action before a decision regarding class certification in the related class action forfeits tolling under *American Pipe*." *In re Enron Corp. Securities & ERISA Litig.*, 465 F. Supp. 2d 687, 715-16 (S.D. Tex. 2006) (collecting cases).

3

These courts reason that it would be inequitable to allow individual plaintiffs "to reap the benefits of a doctrine which is designed for a group – the Class and its putative members – which they have disavowed being a part of from the beginning." *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94-C 897, MDL 997, 1998 WL 474146, at * 8 (N.D. Ill. Aug. 6, 1998); *see also Kozlowski v. Sheahan*, No. 05C5593, 2005 WL 3436394, at * 3 (N.D. Ill. Dec. 12, 2005) (holding that the tolling "doctrine should not be applied to a putative class member who multiplies proceedings by filing a new action while class certification is pending"); *Wyser-Pratte Mgmt. Co., Inc.*, 413 F.3d 553, 567-69 (6th Cir. 2005) (holding that the purposes of *American Pipe* are not "furthered when plaintiffs file independent actions before decision on issue of class certification"); *In re Heritage Bond Litig.*, 289 F. Supp. 2d 1132, 1150 (C.D. Cal. 2003); *Fezzani v. Bear, Stearns & Co., Inc.*, 384 F. Supp. 2d 618, 632-33 (S.D.N.Y. 2004). This reasoning is even more applicable in this case, given that Plaintiffs are represented by the same law firm that is pursuing the *Navara* putative class action.

Put simply, Plaintiffs are not entitled to the benefit of any tolling principles as a class has not yet been certified in the *Navara* proceeding. Because Plaintiffs filed their Complaint more than one year after their mortgage loan closing, Plaintiffs' 1-4 Family Rider claim is barred by the statute of limitations and should be dismissed with prejudice.

**B.      The Court Should Dismiss The 1-4 Family Rider Claim Because The Rider Only Creates Incidental Interests That Cannot Be Disclosed.**

Even if their 1-4 Family Rider Claim was not time-barred, Plaintiffs cannot maintain that claim, because the Rider creates only incidental interests that cannot be disclosed under TILA and Regulation Z.

4

**1.    Regulation Z Prohibits Lenders From Disclosing Incidental Interests.**

Under TILA, lenders are required to provide a disclosure statement advising the borrower "that a security interest has been taken in (A) the property which is purchased as part of the credit transaction, or (B) property not purchased as part of the credit transaction identified by item or type." 15 U.S.C. § 1638 (a)(9).  Regulation Z, however, creates a category of "incidental interests" - including but not limited to "accessions, additions, fixtures" and "interests in after acquired property" - that are expressly excluded from the definition of "security interest" that must be disclosed under TILA.  12 C.F.R. § 226.2(a)(25).  "Security interest" is defined as:

> An interest in property that secures performance of a consumer credit obligation and that is recognized by state or federal law.  *It does not include incidental interests such as interests in proceeds, accessions, additions, fixtures, insurance proceeds (whether or not the creditor is a loss payee or beneficiary), premium rebates, or interests in after acquired property.*

*Id.* (emphasis added).

The official commentary to Regulation Z adds to this definition and provides that:

> [T]he general definition of security interest excludes three groups of interests:  incidental interests, interests in after acquired property, and interests that arise solely by operation of law.  *These interests may not be disclosed ...*

12 C.F.R. § 226.2, Supp. 1, at 305 (emphasis added).

Under this regulatory scheme, the lender is not only permitted to omit the excluded interest from the TILA disclosure statement - the lender is *required* to omit them.

**2.    The Rider Only Creates Incidental Interests.**

Plaintiffs' Rider only created incidental interests, and Long Beach therefore acted properly by excluding the items listed in the Riders from the TILA disclosures.  Plaintiffs' Rider provide as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INTEREST.**    In addition to the Property described in the Security

5

Instrument, the following items are added to Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bathtubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings now or hereafter attached to the Property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument.  All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

(Cmplt., Ex. B).

Under Wisconsin law, whether personal property is a fixture is determined by reference to the following rules or tests: (1) actual physical annexation to the real property; (2) application or adaptation to the use or purpose to which the realty is devoted; and (3) an intention on the part of the person making the annexation to make a permanent accession to the freehold. *Premonstratension Fathers v. Badger Mut. Ins. Co.*, 46 Wis. 2d 362, 367, 175 N.W.2d 237 (1970).[3]  Long Beach submits that this Court can and should determine as a matter of law that the items in the Rider fall within these definitions.

The list of items in the Rider all are subject to, and limited by, the phrase "now or hereafter attached to the property."  The list of items enumerated in the Rider begins with "building materials and appliances."  Building materials are fixtures under Wisconsin law

---

[3] This court should look to the state law definition of "fixture" as it is not defined by the TILA, Regulation Z, or the rider.  12 C.F.R. § 226.2(b)(3); *see also Leon v. Washington Mutual Bank, F.A.*, 164 F. Supp. 2d 1034, 1038 (N.D. Ill. 2001) ("Although neither TILA nor Regulation Z defines 'fixture,' Regulation Z provides that any term not defined by the regulation should be construed in accordance with state law or the contract.  12 C.F.R. § 226.2(b)(3).  Because, in this case, the contract does not define 'fixture' the court looks to Illinois law to determine 'fixture.'").

because they become related to and a part of the real property. Appliances also are installed and therefore relate to the real property. Goods that are used "for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light," are also related to the real estate and are therefore fixtures to that real property, as are "security and access control apparatus, plumbing, bathtubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings." Because each of the items described in the Rider is properly considered a fixture, and since fixtures are expressly prohibited from disclosure under TILA regulations, Long Beach acted properly in excluding the Rider from the TILA disclosure.

Long Beach suspects that Plaintiffs will rely heavily on a ruling from the Northern District of Illinois in *Leon v. Washington Mutual, F.A.*, 164 F. Supp. 2d 1034 (N.D. Ill. 2001), in arguing that whether the rider involves "fixtures" is a factual question that cannot be resolved at the pleading stage. In *Leon*, the court determined that whether an incidental rider created a "fixture" could not be resolved at the pleading stage because, under Illinois law, a good becomes a fixture only when a consumer intends to permanently attach it to realty, which the court characterizes as a fact question. *Id* at 1038.[4]

Long Beach respectfully submits that – in addition to the fact that the *Leon* court's ruling is not binding on this Court – the *Leon* court's ruling was erroneous. First, the fact that the Rider limits fixtures to those items "now or hereafter attached to the property" removes the intent

---

[4] Plaintiffs may also rely on district court decisions in *Navara v. Long Beach Mortg. Co., et al.*, No. 05 C 864, slip op. at 6-8 (N.D. Ill. Jan. 26, 2006) and *Carye v. Long Beach Mortg. Co.*, 470 F. Supp. 2d 3 (D. Mass. 2007). Those courts, however, relied on the *Leon* decision in denying Long Beach's motion to dismiss. The *Leon* opinion is distinguishable as discussed above and thus the *Navara* and *Carye* cases should be given short shrift.

component from consideration.  Therefore, in this case, it makes no sense from a standpoint of judicial efficiency to require Long Beach to establish, through deposition or otherwise, that, for example, goods that are used "for the purposes of supplying or distributing heading, cooling, electricity, gas, water, air and light" are intended to be permanently attached to the property.  In addition, Long Beach submits that the *Leon* court erred by focusing solely on whether the rider was limited to fixtures – and failing to consider whether the rider involved "accessions," "additions," or "after acquired property."  12 C.F.R. § 226.2, Supp. 1 at 305.[5]

Although the terms "accessions," "additions" and "after acquired property" are not defined by Regulation Z, each has a commonly accepted meaning within which the items enumerated in the Rider fall.  "Accession" means the "artificial improvement or natural growth of a property," *see* Oxford English Dictionary 13 (1993 Edition) (law definition).  As with the term "fixture," there is no intent component in determining whether an item is an "accession."  Under the terms of the Rider, in order for any interest to arise, the goods must be "now or hereafter attached to the property."  Again, Long Beach submits that this Court can and should conclude as a matter of law that the items enumerated in the Rider are "accessions," and therefore prohibited from disclosure.

Similarly, the term "additions" "implies physical contact, something added to another," or a "structure physically attached to or connected with the building itself."  *See* Black's Law Dictionary 38 (6th ed. 1990).  The goods provided for in the Rider are also properly classified as "additions" because they are all goods which must be – under the express terms of the Rider –

---

[5] Without violating the well established "interpretive principle that 'every word or provision of a statute must, if possible, be given some effect," the terms "accessions," "additions," and "after acquired property" cannot be construed as synonyms of the term "fixture."  *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 575 (7th Cir. 2001) (quotations omitted).  Indeed, such an

"physically attached to or connected with [the] building itself," regardless of whether the owner intends to attach them permanently.

Finally, "after acquired property" refers to the "property of [a] debtor which is acquired after a security transaction covering property already owned is perfected." *Id* at 61. Necessarily, any goods that are attached to the property, covered by the Rider and acquired after the security transaction covering the property already owned is perfected, constitute "after acquired property."

In sum, Long Beach submits that this Court can and should find as a matter of law that the items listed in the Rider are "incidental interests" that cannot be disclosed under TILA regulations. Accordingly, the Court should dismiss Plaintiffs' 1-4 Family Rider Claim.

## II.   Plaintiffs Cannot Maintain A Rescission Claim Because They Signed Dated Copies Of The Notice Of Right To Cancel For Their Mortgage Loan.

In Count I of their Complaint, Plaintiffs seek to rescind their mortgage loan based on Long Beach's alleged failure to disclose the date by which they could exercise their right to cancel their mortgage loan. (Cmplt. ¶ 18). Plaintiffs attached to their Complaint undated copies of the Notice of Right to Cancel. (Cmplt., Ex. A).  Contrary to these allegations, however, on September 28, 2005, both Plaintiffs signed and acknowledged the receipt of two Notices of Right to Cancel. (Ex. 1).[6]  These notices clearly show that Plaintiffs had three days within which to

---

interpretation would, without any justification, render the terms "accessions," "additions" and "after acquired property" mere surplusage. *Id.*

[6] When a plaintiff relies on a particular document as a basis for their claim, the defendant may attach the document to its motion to dismiss without converting the motion to one for summary judgment. *McCready v. EBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006) (recognizing that documents attached to a motion to dismiss are considered part of the pleadings if they are referenced in plaintiff's complaint and central to plaintiff's claim). It is particular appropriate in this case for Long Beach to attach the completed notice of right to cancel to its motion as the undated version was attached to Plaintiffs' Complaint.  In the event that this Court does convert

exercise their right to cancel their mortgage loan, *i.e.*, on or before October 1, 2005. (*Id.*). Plaintiffs' claim for rescission therefore fails as a matter of law, because Plaintiffs did not exercise their right to cancel within the three-day period. 15 U.S.C. § 1635(a). Accordingly, this Court should dismiss the rescission claim with prejudice.

## CONCLUSION

For the foregoing reasons, Long Beach respectfully requests that this Court grant this motion and dismiss, with prejudice, all claims asserted by Plaintiffs in this proceeding.

---

Long Beach's motion to dismiss rescission claim to a motion for summary judgment, Long Beach respectfully requests that this Court grant summary judgment as to that claim.

Dated: June 4, 2007                    Respectfully submitted,

                                       WASHINGTON MUTUAL BANK f/k/a
                                       LONG BEACH MORTGAGE COMPANY


                                       /s/ Lisa M. Arent
                                       Nathan A. Fishbach
                                       Kenneth R. Nowakowski
                                       Lisa M. Arent
                                       WHYTE HIRSCHBOECK DUDEK S.C.
                                       555 East Wells Street, Suite 1900
                                       Milwaukee, WI 53202
                                       Telephone: (414) 273-2100
                                       Fax: (414) 223-5000
                                       Email: nfishbach@whdlaw.com
                                               knowakowski@whdlaw.com
                                               larent@whdlaw.com

CO-COUNSEL:

Scott T. Schutte
HOWREY LLP
321 N. Clark Street, Suite 3400
Chicago, IL 60610
Telephone: (312) 846-5641
Fax: (312) 264-0368
Email: schuttes@howrey.com


## CERTIFICATE OF SERVICE

I, Lisa M. Arent, hereby certify that a copy of the foregoing Long Beach's Memorandum

in Support of 12(b)(6) Motion to Dismiss has been served on all counsel of record via the

Court's CM/ECF case management system on the 4th day of June, 2007.


                                       /s/ Lisa M. Arent
                                       Lisa M. Arent


11

# EXHIBIT

# 1

## NOTICE OF RIGHT TO CANCEL

|  |  |
|---|---|
|  | DATE    09/28/05 |
| LENDER:LONG BEACH MORTGAGE COMPANY | LOAN NO.    6574813-7892 |
|  | TYPE    ADJUSTABLE RATE |

BORROWERS/OWNERS:JULIA M WATKINS

ADDRESS          2802 N 56TH ST
CITY/STATE/ZIP   MILWAUKEE, WI 53210
PROPERTY         2802-2804 N 56TH ST
                 MILWAUKEE, WI 53210

You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

(1)   The date of the transaction, which is _____9-28-05_____ ; or
(2)   The date you received your Truth in Lending disclosures; or
(3)   The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at:
          LONG BEACH MORTGAGE COMPANY
          ONE PIERCE PLACE, STE 700
          ITASCA, IL 60143

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of __10-01-05__
(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above.) If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____          _____
SIGNATURE                                 DATE

---

The undersigned each acknowledge receipt of two copies of NOTICE of RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement.

Each borrower/owner in this transaction has the right to cancel. The exercise of this right by one borrower/owner shall be effective to all borrowers/owners.

| | | | |
|---|---|---|---|
| _Julia Ma Watkins_  9/28/05 | | _____ | _____ |
| BORROWER/OWNER    /DATE | | BORROWER/OWNER | DATE |
| JULIA M WATKINS | | | |
| _Kenneth J. Mason_  9/18/05 | | _____ | _____ |
| BORROWER/OWNER    /DATE | | BORROWER/OWNER | DATE |
| KENNETH J MASON | | | |

VMP -64 (9712).01

VMP MORTGAGE FORMS - (800)521-7291

12/97

1064VMP (04/23/01) PC

## NOTICE OF RIGHT TO CANCEL

|  |  |
|---|---|
|  | DATE 09/28/05 |
| LENDER:LONG BEACH MORTGAGE COMPANY | LOAN NO. 6584372-7892 |
|  | TYPE CONVENTIONAL FIXED |

BORROWERS/OWNERS JULIA M WATKINS

ADDRESS       2802 N 56TH ST
CITY/STATE/ZIP   MILWAUKEE, WI 53210
PROPERTY      2802-2804 N 56TH STREET
              MILWAUKEE, WI  53210

You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

(1)   The date of the transaction, which is   **9-28-05**   ; or
(2)   The date you received your Truth in Lending disclosures; or
(3)   The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

### HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:
LONG BEACH MORTGAGE COMPANY
ONE PIERCE PLACE, STE 700
ITASCA, IL 60143

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of **10-01-05** .(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above.) If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

### I WISH TO CANCEL

_____        _____
SIGNATURE                                                                    DATE

The undersigned each acknowledge receipt of two copies of NOTICE of RIGHT to CANCEL and one copy of the Federal Truth in Lending Disclosure Statement.

Each borrower/owner in this transaction has the right to cancel. The exercise of this right by one borrower/owner shall be effective to all borrowers/owners.

| | | |
|---|---|---|
| *Julia Ma Watkins*  9/08/05 | | _____ |
| BORROWER/OWNER          DATE | | BORROWER/OWNER          DATE |
| JULIA M WATKINS | | |
| *Kenneth J. Mason*  9/8/05 | | _____ |
| BORROWER/OWNER          DATE | | BORROWER/OWNER          DATE |
| KENNETH J MASON | | |

-54 (9712).01                    VMP MORTGAGE FORMS - (800)521-7291                         12/97
1064VMP (04/03/01) PC