# EXHIBIT 1

LEXSEE 1998 U.S. DIST. LEXIS 12534

**IN RE: BRAND NAME PRESCRIPTION DRUGS ANTITRUST LITIGATION;**
**This Document Relates To: ALL CASES FILED BY INDIVIDUAL PLAINTIFFS**

**94 C 897, MDL 997**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF**
**ILLINOIS, EASTERN DIVISION**

*1998 U.S. Dist. LEXIS 12534*

**August 4, 1998, Decided**
**August 6, 1998, Docketed**

**DISPOSITION:** [*1] Wholesaler Defendants' motion for partial summary judgment granted-in-part while Manufacturer Defendants' motion for partial summary judgment denied.

**COUNSEL:** For BRAND NAME PRESCRITION DRUGS ANTITRUST LITIGATION, plaintiff: Paul Ethan Slater, Greg Shinall, Sperling, Slater & Spitz, P.C., Chicago, IL.

For BRAND NAME PRESCRITION DRUGS ANTI-TRUST LITIGATION, RANDALLS FOOD & DRUG, MALLEY'S PHARMACY, RITE AID, DON'S PHAR INC, CONNEYS PHAR INC, TAYLOR DRUG STORES, INC., plaintiffs: Ann C. Tighe, Cotsirilos, Stephenson, Tighe & Streicker, Chicago, IL.

For BRAND NAME PRESCRITION DRUGS ANTI-TRUST LITIGATION, plaintiff: Jeff Robert Branick, Provost & Umphrey, Beaumont, TX.

For BRAND NAME PRESCRITION DRUGS ANTI-TRUST LITIGATION, plaintiff: Junie Leroy Bradshaw, Wyatt B. Durrette, Jr., Durrette, Irvin, Lemons & Bradshaw, P.C., Richmond, VA.

For BRAND NAME PRESCRITION DRUGS ANTI-TRUST LITIGATION, plaintiff: Van C Ernest, Durrette Irvin & Bradshaw, Richmond, VA.

For BRAND NAME PRESCRITION DRUGS ANTI-TRUST LITIGATION, plaintiff: Richard Lyle Coffman, Attorney at Law, Beaumont, TX.

For RANDALLS FOOD & DRUG, plaintiff: James M. McGraw, Looper, Reed, Mark & McGraw, Inc., Houston, [*2] TX.

For DON'S PHAR INC, plaintiff: Steven Joseph Rotunno, Kubasiak, Cremieux, Fylstra, Reizen & Rotunno, P.C., Chicago, IL.

For DON'S PHAR INC, plaintiff: David A Melnick, Stephanie L Melnick, Melnick & Melnick, S.C., Milwaukee, WI.

For CONNEYS PHAR INC, plaintiff: Judi A. Lamble, Fay Clayton, Robinson, Curley & Clayton, P.C., Chicago, IL.

For TAYLOR DRUG STORES, INC., plaintiff: Wendi Sloane Weitman, Richard Allen Saldinger, Barack, Ferrazzano, Kirschbaum, Perlman & Nagelberg, Chicago, IL.

For TAYLOR DRUG STORES, INC., plaintiff: Thomas P. O'Brien, III, Charles G Middleton, III, James N Williams, Nancy J Schook, Middleton & Reutlinger, Louisville, KY.

For ABBOTT LABS, defendant: Jeffrey A. Leon, Winston & Strawn, Chicago, IL.

For ABBOTT LABS, defendant: Frank Cicero, Jr., James Andrew Langan, Anne J. McClain, Nader R. Boulos, Kirkland & Ellis, Chicago, IL.

For ABBOTT LABS, defendant: Jeffrey S. Cashdan, King & Spalding, Atlanta, GA.

1998 U.S. Dist. LEXIS 12534, *

For G D SEARLE & COMPANY, defendant: John W. Treece, David M. Schiffman, Marjorie Golis Wilde, Sidley & Austin, Chicago, IL.

For BINDLEY WESTERN INDUSTRIES, INC., defendant: Steven Joseph Rotunno, Kubasiak, [*3] Cremieux, Fylstra, Reizen & Rotunno, P.C., Chicago, IL.

For BINDLEY WESTERN INDUSTRIES, INC., defendant: Kael Behan Kennedy, James L. Komie, Schuyler, Roche & Zwirner, Chicago, IL.

For BINDLEY WESTERN INDUSTRIES, INC., defendant: Marguerite S. Boyd, John W. Nields, Jr., Howrey & Simon, Washington, DC.

For BINDLEY WESTERN INDUSTRIES, INC., defendant: Patricia A Gaegler, George R Kucik, Nada S Sulaiman, Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC.

For BINDLEY WESTERN INDUSTRIES, INC., defendant: David A Melnick, Stephanie L Melnick, Melnick & Melnick, S.C., Milwaukee, WI.

For MARION MERRELL DOW INC., defendant: Jerome H. Torshen, Torshen, Spreyer & Garmisa, Ltd., Chicago, IL.

For MARION MERRELL DOW INC., defendant: Lee A. Freeman, Freeman, Freeman & Salzman, P.C., Chicago, IL.

For MARION MERRELL DOW INC., defendant: Gregory D. Hanley, Honigman, Miller, Schwartz & Cohn, Detroit, MI.

For MARION MERRELL DOW INC., defendant: David E. Everson, Stinson, Mag & Fizzeli, P.C., Kansas City, MO.

For MARION MERRELL DOW INC., defendant: Richard Alan Arnold, Scott E Perwin, James J Kenny, William J Blechman, Kenny, Nachwalter, Seymour, Arnold, [*4] Critchlow & Spector, P.A., Miami, FL.

For MARION MERRELL DOW INC., defendant: Richard W Giauque, Stephen T Hard, Douglas H Patton, Giauque, Crockett, Bendinger & Peterson, Salt Lake City, UT.

For MARION MERRELL DOW INC., defendant: Peter J. Venaglia, Jeffrey M. Strank, Dornbush, Mensch, Mandelstam & Schaeffer, New York, NY.

For BURROUGHS WELLCOME COMPANY, defendant: Ruth F. Masters, Latham & Watkins, Chicago, IL.

For BURROUGHS WELLCOME COMPANY, defendant: David Stewart Fleming, Ralph Joseph Gabric, Brinks, Hofer, Gilson & Lione, Chicago, IL.

For BURROUGHS WELLCOME COMPANY, defendant: Lee A. Freeman, Jr., John F. Kinney, James T. Malysiak, Freeman, Freeman & Salzman, P.C., Chicago, IL.

For BURROUGHS WELLCOME COMPANY, defendant: Richard William Austin, Richard S. Wisner, Audrey A. Berish, Pretzel & Stouffer, Chtd., Chicago, IL.

For BURROUGHS WELLCOME COMPANY, defendant: Nancy Schaefer, Schaefer, Rosenwein & Fleming, Chicago, IL.

For BURROUGHS WELLCOME COMPANY, defendant: Matthew Sean Elvin, Ross & Hardies, Chicago, IL.

For BURROUGHS WELLCOME COMPANY, defendant: Mark G. Arnold, Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, MO.

For [*5] BURROUGHS WELLCOME COMPANY, defendant: Daniel S. Hefter, Martin B. Carroll, Hefter & Radke, Chicago, IL.

For BURROUGHS WELLCOME COMPANY, defendant: George L. Saunders, Jr., Saunders & Monroe, Chicago, IL.

For BURROUGHS WELLCOME COMPANY, defendant: William F. Cavanaugh, Jr., Patterson, Belknap, Webb & Tyler, New York, NY.

For BURROUGHS WELLCOME COMPANY, defendant: Thomas F Curnin, Laura Mezey, Cahill, Gordon & Reindel, New York, NY.

For BURROUGHS WELLCOME COMPANY, defendant: Donald L Flexner, Crowell & Moring, Washington, DC.

For BURROUGHS WELLCOME COMPANY, defendant: Jennifer A Albert, Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC.

For BURROUGHS WELLCOME COMPANY, defendant: Richard J. Holwell, White & Case, New York, NY.

For BURROUGHS WELLCOME COMPANY, defendant: Arthur Makadon, Mark S. Stewart, Leslie E. John,

Daniel Schoor-Rube, Stephen J. Kastenberg, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, PA.

For BURROUGHS WELLCOME COMPANY, defendant: Heather A. Libbey, Wilson & McIlvaine, Chicago, IL.

For BURROUGHS WELLCOME COMPANY, defendant: Herbert Dym, David L Meyer, Jonathan R Galst, Covington & Burling, Washington, DC.

For [*6] BURROUGHS WELLCOME COMPANY, defendant: Frederick P. Furth, Furth, Fahrner & Mason, San Francisco, CA.

For BURROUGHS WELLCOME COMPANY, defendant: Joseph L. Alioto, Joseph L. Alioto Law Offices, San Francisco, CA.

For BURROUGHS WELLCOME COMPANY, defendant: Barbara Reeves, Morrison & Foerster, Los Angeles, CA.

For BURROUGHS WELLCOME COMPANY, defendant: John Alexander Cochrane, Cochrane & Bresnahan, St. Paul, MN.

For BURROUGHS WELLCOME COMPANY, defendant: Charles Harley Johnson, Johnson Law Office, St. Paul, MN.

For BURROUGHS WELLCOME COMPANY, defendant: Joseph Andrew Kowalcik, Kowalcik Law Office, St. Paul, MN.

For BURROUGHS WELLCOME COMPANY, defendant: Lawrence B Clark, Lange, Simpson, Robinson & Somerville, Birmingham, AL.

For BURROUGHS WELLCOME COMPANY, defendant: James L Schwartz, Schwartz & Spalding, Chicago, IL.

For BURROUGHS WELLCOME COMPANY, defendant: John Kenneth Kallman, Law Offices of John Kenneth Kallman, Chicago, IL.

For BURROUGHS WELLCOME COMPANY, defendant: Robert A Milne, Dewey Ballantine, New York, NY.

For BURROUGHS WELLCOME COMPANY, defendant: Ronald W. Davis, Attorney, New York, NY.

For BURROUGHS WELLCOME COMPANY, [*7] defendant: Robert E. Davy, Robert E. Davy, Jr. & Associates, Chicago, IL.

For BURROUGHS WELLCOME COMPANY, defendant: Henry F. Field, Attorney at Law, Chicago, IL.

For BURROUGHS WELLCOME COMPANY, defendant: Thomas D. Rosenwein, Rosenwein & Oberholtzer, Chicago, IL.

For FOXMEYER DRUG COMPANY, defendant: Alan J Weinschel, Bruce A Colbath, Weil, Gotshal & Manges, New York, NY.

For FOXMEYER DRUG COMPANY, defendant: Steven P. Mandell, Davidson, Goldstein, Mandell & Menkes, Chicago, IL.

For FOXMEYER DRUG COMPANY, defendant: Craig Allen Varga, Varga, Berger, Ledsky & Hayes, Chicago, IL.

For MCKESSON CORPORATION, defendant: William J. Gibbons, Latham & Watkins, Chicago, IL.

For MCKESSON CORPORATION, defendant: J Thomas Rosch, McCutchen, Doyle, Brown & Enersen, San Francisco, CA.

For MCKESSON CORPORATION, defendant: J. Thomas Rosch, Trevor J Chaplick, Peter K Huston, Latham & Watkins, San Francisco, CA.

For RHONE-POULENC RORER INTERNATIONAL, INC., defendant: Nathan P. Eimer, Sidley & Austin, Chicago, IL.

For RHONE-POULENC RORER INTERNATIONAL, INC., defendant: Mary B. Cranston, Jeffrey S. Ross, Terrence A. Callan, Attorney at Law, San Francisco, [*8] CA.

For RHONE-POULENC RORER INTERNATIONAL, INC., defendant: Gary H Anderson, Melanie A Sherk, Patrick S Thompson, Pillsbury, Madison & Sutro, San Francisco, CA.

For ALCO HEALTH SERVICES CORPORATION, NATIONAL WHOLESALE DRUGGISTS' ASSOCIATION, WHITMIRE DISTRIBUTION CORPORATION, MCKESSON CORPORATION, CARDINAL HEALTH, INC., BINDLEY WESTERN INDUSTRIES, INC., defendants: Jacqueline A. Criswell, Tressler, Soderstrom, Maloney & Priess, Chicago, IL.

For ALCO HEALTH SERVICES CORPORATION, defendant: Howard D Scher, Stephen J Levy, Steven E Bizar, Montgomery, McCracken, Walker and Rhoads, Philadelphia, PA.

For UPJOHN COMPANY, THE, defendant: Larry J Saylor, Catherine M Patterson, Miller, Canfield, Paddock & Stone, Detroit, MI.

For UPJOHN COMPANY, THE, defendant: Martin J Dubowsky, Martin J. Dubowsky, Ltd., Chicago, Il.

For UPJOHN COMPANY, THE, defendant: James G. Vantine, Jr., B Jay Yelton, III, Charles E Ritter, Attorney, Kalamazoo, MI.

For JOHNSON AND JOHNSON VISION PRODUCTS, INC., defendant: William F. Cavanaugh, Jr., Thomas W Pippert, Roosevelt N Nesmith, Patterson, Belknap, Webb & Tyler, New York, NY.

For FOREST LAB INC, defendant: Peter J. Venaglia, [*9] Herschel Weinstein, Dornbush, Mensch, Mandelstam & Schaeffer, New York, NY.

For CIBA-GEIGY CORP, SANDOZ PHARMACEUTICALS CORPORATION, defendants: John E. Frey, Wildman, Harrold, Allen & Dixon, Chicago, Il.

For CIBA-GEIGY CORP, SANDOZ PHARMACEUTICALS CORPORATION, NOVARTIS PHARMACEUTICALS CORPORATION, defendants: Harvey Kurzweil, Dewey Ballantine, New York, NY.

For RX USA, INC., defendant: Richard Lewis Reinish, D'Ancona & Pflaum, Chicago, IL.

For RX USA, INC., defendant: Arlin M. Adams, Schnader, Harrison, Segal & Lewis, Philadelphia, PA.

For RX USA, INC., defendant: Steve D Shadowen, Schnader, Harrison, Segal & Lewis, Harrisburg, PA.

For RX USA, INC., defendant: Ira P. Tiger, Attorney, Philadelphia, PA.

For EXPRESS SCRIPTS, defendant: David Barry Kahn, David B. Kahn & Associates, Ltd., Northfield, IL.

For AMERICAN CYANAMID COMPANY, defendant: Joel Gerald Chefitz, Stephen David Libowsky, Katten, Muchin & Zavis, Chicago, Il.

For AMERICAN CYANAMID COMPANY, defendant: Kenneth R. Logan, Joseph F Tringali, Simpson, Thacher & Bartlett, New York, NY.

For GIANT EAGLE INC, defendant: John L. Huff, Attorney at Law, Chicago, IL.

For GIANT [*10] EAGLE INC, defendant: Scott D Livingston, Robert M Barnes, Bernard D Marcus, Marcus & Shapira, L.L.P., Pittsburgh, PA.

For WHITMIRE DISTRIBUTION CORPORATION, CARDINAL HEALTH, INC., defendants: Thomas L Long, Baker & Hostetler, Columbus, OH.

For MCKESSON CORPORATION, defendant: J Thomas Rosch, Peter K Huston, Latham & Watkins, San Francisco, CA.

For BINDLEY WESTERN INDUSTRIES, INC., defendant: Ernest A. Tuckett, III, George R Kucik, Nada S Sulaiman, Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC.

For BERGEN BRUNSWIG CORP, defendant: Melvin R. Goldman, Lynn M Humphreys, Morrison and Foerster, San Francisco, CA.

For BERGEN BRUNSWIG CORP, defendant: Steven Kaufman, Ropes & Gray, Boston, MA.

**JUDGES:** Charles P. Kocoras, United States District Judge.

**OPINION BY:** Charles P. Kocoras

**OPINION**

**MEMORANDUM OPINION AND ORDER**

CHARLES P. KOCORAS, District Judge:

This matter is before the Court on the Manufacturer Defendants' and Wholesaler Defendants' motions for partial summary judgment on the Individual Plaintiffs' Sherman Act claims. For the following reasons, the Wholesaler Defendants' motion is granted-in-part, while the Manufacturer Defendants' [*11] motion is denied.

**BACKGROUND**

The Individual Plaintiffs consist of thousands of independent pharmacies, drug store chains, and grocery store chains who have chosen to opt out of the nationwide class action ("the Class case") to pursue their own individual claims under *Section 1* of the Sherman Act, *15 U.S.C. § 1*. The Individual and Class Plaintiffs each as-

sert a conspiracy among brand name prescription drug manufacturers to fix the prices for such drugs through their use of a "two-tiered" pricing system. Though both the Class Plaintiffs and the Individual Plaintiffs originally named the Manufacturer Defendants as defendants in their Sherman Act claims, these plaintiff groups diverged in their treatment of the Wholesalers. The Class Plaintiffs named the Wholesalers as defendants in their original complaint; conversely, the Individual Plaintiffs merely identified the Wholesalers as co-conspirators but did not name them as defendants in their complaints.

On October 2, 1997, certain Individual Plaintiffs filed a Motion for Leave to Amend to Add Wholesaler Defendants to assert their Sherman Act claims against six wholesalers ("the Wholesaler Defendants"): AmeriSource [*12] Corporation; Bergen Brunswig Corporation; Bindley Western Industries, Inc.; Cardinal Health, Inc.; McKesson Corporation; and Whitmire Distribution Corporation. The Individual Plaintiffs did not seek to join another Wholesaler, FoxMeyer, because FoxMeyer had filed for bankruptcy in August 1996. Since that time, however, Wholesaler Defendant McKesson has executed an Asset Purchase Agreement in which FoxMeyer sold substantially all of its assets to McKesson. In an opinion dated November 20, 1997, this Court granted the Individual Plaintiffs' motion for leave to join the Wholesaler Defendants.

In their amended complaints, the Individual Plaintiffs seek damages against the Wholesaler Defendants for the time period from October 1989 through the present (or the time of trial). The Individual Plaintiffs also seek damages for the same time period for purchases of brand name drugs from Wholesalers other than the Wholesaler Defendants. These damage claims now sought by the Individual Plaintiffs are essentially identical to the claims asserted by the class action complaint originally filed by the Class Plaintiffs on November 4, 1993. All of the cases were consolidated in this Court by the Multidistrict [*13] Panel on February 4, 1994. The class was ultimately certified by this Court, though all of the Individual Plaintiffs opted out of the class by the opt-out deadline of March 10, 1995.

The Wholesaler and Manufacturer Defendants have now filed the present motions for partial summary judgment, seeking a limitation on certain damage claims asserted by the Individual Plaintiffs. Specifically, the Defendants seek summary judgment on the following claims: (1) damages accruing from purchases through the Wholesaler Defendants that were consummated prior to October 2, 1993; and (2) damages for purchases made from non-Defendant Wholesalers. Before addressing the merits of these motions, it is first necessary to set forth the appropriate standard of review.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*. Once a motion has been filed for summary judgment, the burden shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains [*14] on issues on which the nonmovant bears the burden of proof at trial. See *Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*. The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; the nonmovant must go beyond the pleadings and support its contentions with proper documentary evidence. See Id.

The plain language of *Rule 56(c)* mandates the entry of summary judgment against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See *Id at 322*. "In such a situation there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See *Id at 323*. Applying these principles, we turn to the merits of the motions presently before us.

## DISCUSSION

The Wholesaler and Manufacturer Defendants have each filed motions seeking partial summary judgment on the Individual Plaintiffs' Sherman Act claims. Primarily, the [*15] Defendants ask the Court to limit the Individual Plaintiffs' potential claims to cover only those purchases of brand name prescription drugs made within the 4-year statutory limitations period. The genesis of these motions is found in this Court's recent decision, dated November 20, 1997, to allow the Individual Plaintiffs leave to amend their complaints to add the Wholesalers as defendants in this action. See *In re Brand Name Prescription Drugs Antitrust Litig., 177 F.R.D. 414 (N.D. Ill. 1997)*. In this opinion, the Court expressly reserved judgment on the issue of whether this amendment would "relate back" for purposes of delineating the time period for which damages would be recoverable. *Id. at 423*. Accepting our invitation to revisit this issue in appropriate detail, the Wholesaler and Manufacturer Defendants have now filed the instant motions.

The effective filing date of these claims is critical to the determination of the period for which the Individual Plaintiffs can recover damages. The Supreme Court has recently reaffirmed that damages resulting from an antitrust conspiracy can only be recovered for those acts

which were committed within [*16] the limitations period. See *Klehr v. A. O. Smith Corp., 521 U.S. 179, 138 L. Ed. 2d 373, 117 S. Ct. 1984, 1990-91 (1997)* (explaining that in a continuing price fixing conspiracy, a plaintiff cannot recover for sales which were made to it outside the limitations period). Applying this rule to the instant case, the Individual Plaintiffs can only recover overcharge damages for those sales which were consummated within the four years preceding the filing of their lawsuits. For the direct purchaser claims against the Manufacturer Defendants, the relevant cut-off date for these purchases is four years before the filing of the original complaints in 1993 and 1994. However, for the indirect purchaser claims against the Manufacturer Defendants, and for the claims against the newly-added Wholesaler Defendants, it is necessary to consider the effective date of the Wholesalers' joinder and the legal effect that this joinder should have on the scope of the Individual Plaintiffs' potential recovery. That, in a nutshell, is the impetus for the present motions.

To answer these questions, however, several legal issues must be considered. The first is whether the amended complaint, [*17] and its joinder of the Wholesaler Defendants, "relates back" to the filing of the original complaint. If it does not relate back, we must next consider whether the limitations period was tolled during the pendency of the class action complaint for purposes of establishing an earlier filing date. Depending on how these issues play out, the question of whether the various indirect purchaser claims can be maintained against the Manufacturer Defendants must finally be considered. The Court will address each of these issues in turn.

I. Relation Back

The first question raised in the Defendants' motions is whether the joinder of the Wholesaler Defendants should relate back to the filing of the original complaints in 1993 and 1994. When an amendment serves to add claims against additional parties, *Federal Rule of Civil Procedure 15(c)(3)* governs the relation back question. *Rule 15(c)(3)* provides that where an amendment "changes the party or the naming of the party against whom a claim is asserted," the amended claims are allowed to relate back to the date of the original pleading only if, inter alia, the party "knew or should have known that, but for a mistake concerning the identity [*18] of the proper party, the action would have been brought against the party." *Fed.R.Civ.P. 15(c)(3)*.

There is no real dispute over whether the Wholesaler Defendants had knowledge of the pendency of this action from the beginning - clearly they did. Nor is there any question that the Individual Plaintiffs knew full well who the Wholesalers were and deliberately chose not to name them as defendants in their original complaints. What is

hotly contested, however, is whether the initial omission of the Wholesaler Defendants from the Individual Plaintiffs' cases must have been the product of some sort of mistake in order to qualify for relation back under *Rule 15(c)(3)*. The Defendants assert that, in the absence of any such mistake, relation back is not proper.

The Seventh Circuit has strictly read the language of *Rule 15(c)(3)* to require "a misnomer of defendant"; in other words, claims against a new party relate back only "where there has been an error made concerning the identity of the proper party." *Wood v. Worachek, 618 F.2d 1225, 1230 (7th Cir. 1980)*; see also *Worthington v. Wilson, 8 F.3d 1253, 1256 (7th Cir. 1993)* (relation back not allowed where [*19] failure to name the putative defendants was not due to a mistake about their proper names); *Hill v. Shelander, 924 F.2d 1370, 1374 n.2 (7th Cir. 1991)* (*Rule 15(c)* "comprehends a situation where the original complaint sues the correct party but identifies him by a technically incorrect name"). Thus, where the plaintiff has knowledge of, but initially fails to join, an omitted defendant, the amended complaint does not relate back when that defendant is later joined. See *Norton v. International Harvester Co., 627 F.2d 18, 22-23 (7th Cir. 1980)*; *Vakharia v. Swedish Covenant Hosp., 824 F. Supp. 769, 773-74 (N.D. Ill. 1993)*. In fact, this rule has been applied to deny relation back in a case, remarkably similar to the instant situation, where the later-joined defendant had been identified in the original complaint, but only as a co-conspirator. *Havoco of America, Ltd. v. Hilco, Inc., 750 F. Supp. 946 (N.D. Ill. 1990)*, aff'd, *971 F.2d 1332 (7th Cir. 1992)*. The Defendants assert, therefore, that the Individual Plaintiffs prior identification of the Wholesalers as co-conspirators conclusively establishes [*20] that no mistake was ever made and that relation back is not appropriate.

The Individual Plaintiffs, in response, dispute whether *Rule 15(c)(3)* has been so strictly construed by the Seventh Circuit. In support of a more liberal interpretation of the rule, Plaintiffs cite the case of *Woods v. Indiana University-Purdue University at Indianapolis, 996 F.2d 880 (7th Cir. 1993)*, which held that *Rule 15(c)*

> *expressly* contemplates the prospect of the retrospective application of an amended complaint to a defendant who was *not* named originally but who was added only later, when the plaintiff or plaintiff's attorney realized that the defendant should have been named at the outset. And that of course includes (indeed it would far more commonly involve) a defendant who was not named at all to begin with ... rather than a defendant who was

named at the beginning but was originally sued in the wrong capacity.

*Id. at 888.* Likewise, in *Donald v. Cook County Sheriff's Dept., 95 F.3d 548 (7th Cir. 1996)*, the Seventh Circuit indicated that joinder of completely new parties - not simply those that were originally misnamed - [*21] could be related back under the federal rules. *Id. at 561* (court would allow relation back where the plaintiff mistakenly sued the Sheriff's Department rather than the individual officers against whom his claims could only be brought). Thus, the Individual Plaintiffs argue that *Rule 15(c)* applies beyond the context of mere misnomer to situations involving legal mistakes such as is present in the instant case.

Defendants contend that *Woods* and *Donald*, rather than overruling the general rule requiring a misnomer, have merely carved out an exception for cases involving governmental entities. In these cases, the plaintiffs had made mistakes in determining the proper defendants in their suits against the government. The Seventh Circuit found that such mistakes were within the purview of *Rule 15(c)(3)*, and thus permitted relation back of the claims against defendants who were only properly named after the statute of limitations had run. See *Donald, 95 F.3d at 561; Woods, 996 F.2d at 888*. The Defendants assert that, because there are clearly no governmental defendants implicated in this case, the exception exemplified by the [*22] *Donald* and *Woods* cases is inapplicable.

Though it is somewhat difficult to reconcile this prior precedent, a very recent decision from the Seventh Circuit sheds some needed light on this issue. In *Baskin v. City of Des Plaines, 138 F.3d 701 (7th Cir. 1998)*, the court reaffirmed the rule of *Wood* and *Worthington* requiring a "'mistake in the identification of the proper party.'" *Id. at 704* (quoting *Wood, 618 F.2d at 1230*). Rejecting the plaintiff's argument for a broader construction of *Rule 15(c)(3)*, the court distinguished *Donald* on the basis that it involved a pro se plaintiff who had mistakenly sued the Sheriff's Department when his only cause of action was against the individual jail personnel. *Id. at 704 fn. 1.* Without a similar mistake to excuse his belated amendment of the proper defendant, the *Baskin* plaintiff was not allowed to take advantage of the relation back rules. *Id. at 704.*

This Seventh Circuit precedent makes clear that the Individual Plaintiffs cannot enjoy the benefits of *Rule 15(c)(3)* to allow relation back of their claims against the Wholesaler Defendants. Though there has been [*23] some conflicting dicta on this point over the years, a common theme has emerged from this Circuit's analysis of *Rule 15(c)(3)* - the need for some sort of "mistake" as

to the proper defendant's identity. This mistake may involve a simple factual misnomer, e.g. *Diaz v. Shallbetter, 984 F.2d 850, 854 (7th Cir. 1993)* (amendment which seeks to change name of defendant from "John Shullbetter" to "Dennis Shallbetter" is covered by *Rule 15(c)*), or it may consist of a plaintiff's legal misconception as whether to sue an individual or institutional governmental defendant, e.g. *Donald, 95 F.3d at 560; Woods, 996 F.2d at 886-87*. In all of these cases where the Seventh Circuit has permitted relation back under *Rule 15(c)(3)*, however, the plaintiff has always made some type of mistake in suing the proper defendants.

The Individual Plaintiffs made no such mistake in this case. Represented by sophisticated, able and learned counsel, the Individual Plaintiffs *deliberately chose* not to originally sue the Wholesaler Defendants for whatever reason. They did not misname the Wholesalers in their original complaints, nor did they mistakenly sue [*24] the wrong party by virtue of some legal misconception. Any miscalculation the Individual Plaintiffs may have made with regard to *Illinois Brick Co. v. Illinois, 431 U.S. 720, 52 L. Ed. 2d 707, 97 S. Ct. 2061 (1977)*, and its effect on their indirect purchaser claims, simply cannot be shoehorned into *Rule 15(c)(3)*'s "mistake" requirement. Thus, the amendment of the Wholesaler Defendants does not relate back to filing of the original complaint, and therefore any damages which depend on this amendment are to be defined by the date of this amendment.

## II Tolling of Limitations Period

The Individual Plaintiffs alternatively argue that the statute of limitations period should be tolled to permit damages from before the four years leading up to the 1997 amendment. The Individual Plaintiffs advance two theories for tolling the limitations period in this case: (1) equitable tolling, and (2) class action tolling. The Defendants dispute that these tolling doctrines apply to the facts of this case.

Equitable tolling "permits a plaintiff to sue after the statute of limitations has expired if through no fault or lack of diligence on his part he was unable to sue before." [*25] *Singletary v. Continental Illinois Nat'l Bank and Trust Co. of Chicago, 9 F.3d 1236, 1241 (7th Cir. 1993); Donald, 95 F.3d at 561*. The touchstone of this doctrine is "reasonable diligence" - the plaintiff must demonstrate that he exercised all reasonable diligence to sue the proper party within the limitations period. *Singletary, 9 F.3d at 1241-43*. If a plaintiff demonstrates such diligence, and could not have sued previously, tolling of the statute may be appropriate. In determining whether equitable tolling is appropriate, courts have considered several factors which weigh in favor of applying the doctrine. See *Donald, 95 F.3d at 562*.

One such factor that has been found to justify equitable tolling is when a "'court has led the plaintiff to believe that she had done everything required of her.'" *Donald*, 95 F.3d at 562 (quoting *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151, 80 L. Ed. 2d 196, 104 S. Ct. 1723 (1984)). Citing this factor, the Individual Plaintiffs contend that they have relied on the Seventh Circuit's decision in *Fontana Aviation, Inc. v. Cessna Aircraft Co.*, 617 F.2d 478, 481 (7th Cir. 1980), [*26] and this Court's prior rulings in 1994 and 1996, in previously deciding not to name the Wholesalers as defendants in their cases. Arguing that these opinions led them to believe that the Wholesalers need not be joined, the Individual Plaintiffs assert that they have been reasonably diligent in pursuing their claims and thus should receive the benefits of the equitable tolling doctrine.

The Defendants disagree, arguing that the Individual Plaintiffs have not satisfied the requirements for equitable tolling. Though agreeing that this doctrine focuses on the diligence of the plaintiff, the Defendants point out that, regardless of any diligence, a plaintiff must also show he was "*unable to sue* [the proper defendants] before." *Singletary*, 9 F.3d at 1241 (emphasis added). Though the Individual Plaintiffs may have had a reasonable reason for not suing the Wholesalers in the first instance, the Defendants contend that nothing affected the Individual Plaintiffs' *ability* to include the Wholesalers as defendants. Since the omission of the Wholesalers Defendants from the original complaint was merely the product of a strategic choice by the Individual Plaintiffs, the [*27] Defendants argue that they cannot avoid the consequences of this choice by invoking the doctrine of equitable tolling.

The Court agrees. The standard for equitable tolling clearly requires that the plaintiff be prevented in some way from proceeding with its claim, and the Individual Plaintiffs have offered no excuse for their failure to join the Wholesaler Defendants sooner. The Individual Plaintiffs have always (or at least should have) understood that their indirect purchaser claims, without the joinder of the Wholesalers as defendants, stood on arguably tenuous footing because of Illinois Brick and its progeny. Cf. *In re Beef Industry Antitrust Litigation*, 600 F.2d 1148, 1163 (5th Cir. 1979) (holding that direct sellers must be joined as defendants in order to avoid an Illinois Brick bar); and *Fontana Aviation, Inc. v. Cessna Aircraft Co.*, 617 F.2d 478 (7th Cir. 1980) (arguably holding that Illinois Brick does not bar recovery when an intermediary is alleged to be a co-conspirator). Though they ultimately placed their reliance on Fontana, and this Court validated this reliance in our prior opinions, the Individual Plaintiffs [*28] proceeded down this path at their own potential peril. This Court allowed the recent joinder of the Wholesaler Defendants to the Individual cases, but

we are not amenable to employing an equitable doctrine to bail the Individual Plaintiffs out of the consequences of their prior strategic decision. Thus, the Court finds it inappropriate to invoke the doctrine of equitable tolling in this case.

In a final attempt to salvage as much of their damage claims as possible, the Individual Plaintiffs alternatively seek to invoke the doctrine of class action tolling. This doctrine works to suspend the limitations clock for putative class members upon the filing of a class action complaint, preserving for each that portion of the limitations period that remained at the time the class action was filed. See *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 76 L. Ed. 2d 628, 103 S. Ct. 2392 (1983); *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 38 L. Ed. 2d 713, 94 S. Ct. 756 (1974). After a statute has been tolled, the limitations clock then resumes ticking again only after the court makes a class certification decision and the class member "opts out" [*29] of the class. *Tosti v. City of Los Angeles*, 754 F.2d 1485, 1488-89 (9th Cir. 1985). The Individual Plaintiffs contend that the filing of the initial class action on November 4, 1993, which included the same claims now asserted against the Wholesalers in this case, served to toll the statute of limitations for these claims until the opt-out deadline of March 10, 1995. Assuming that class action tolling is appropriate, the potential period of damage recovery against the Wholesaler Defendants (and other related claims) would be expanded by 488 days - back to June 2, 1992 from October 2, 1993 (based on the amendment date of October 2, 1997).

The Defendants, however, argue that class action tolling cannot be invoked in this case. The purpose of the class action tolling doctrine, the Defendants assert, is to preserve the claims of putative class members while class action status is pending. See *Crown, Cork & Seal*, 462 U.S. at 350-51. Tolling the statute of limitations avoids the necessity of each individual class member having to file his own claim in order to avoid the risk of being shut out if a class is not certified. In this case, however, [*30] many of the Individual Plaintiffs filed their actions *prior to* any determination of class action status and prior to opting out of the class. The Defendants contend that these Plaintiffs, who filed the type of duplicative claims which the tolling rule seeks to avoid, cannot now turn around and enjoy the benefits of class action tolling. In fact, many courts have refused to apply the class action tolling rule for plaintiffs who choose to opt out of a putative class. See, e.g., *Pulley v. Burlington Northern, Inc.*, 568 F. Supp. 1177, 1179 (D. Minn. 1983) ("while a class action tolls the statute of limitations for all claims within the class action, it does not toll the limitations period for individual actions brought by members of the class while the class still exists"); *Chemco, Inc. v.*

*Stone, McGuire & Benjamin, 1992 U.S. Dist. LEXIS 11657, 1992 WL 188417*, at *2 (N.D. Ill. July 29, 1992) (where class certification has not been denied, applying tolling doctrine would create "the problem of a needless multiplicity of suits that American Pipe and Crown, Cork & Seal Co. strove to avoid").

If nothing else, this case certainly presents a novel [*31] circumstance for application of the class action tolling rule. Many of the Individual Plaintiffs did file their own individual lawsuits prior to the certification of the class, and thus arguably burdened the court system with needless duplicative paper. Furthermore, this is not the typical case in which the plaintiffs are reliant on a tolling of the limitations period in order to preserve their claims; instead, the Individual Plaintiffs seek to employ the tolling doctrine merely to preserve a longer period of time for purposes of calculating damages. To our knowledge, no court has been previously presented with such an application of the class action tolling doctrine.

From one perspective, several considerations augur in favor of allowing class action tolling in this case. For one, the Supreme Court has painted with a broad brush in defining the class action tolling doctrine: "The commencement of a class action suspends the applicable statute of limitations as to *all asserted members of the class* that would have been parties had the suit been permitted to continue as a class action." *Crown, Cork & Seal, 462 U.S. at 353* (quoting *American Pipe, 414 U.S. at 554*) [*32] (emphasis added). The Supreme Court has explained that the class action tolling rule "is a generous one ... preserving for class members a range of options pending a decision on class certification." *Crown, Cork & Seal, 462 U.S. at 354* (concurring opinion). In addition, the doctrine has been made available to eventual class members and opt-out plaintiffs alike, see *id at 352*, and no Supreme Court case has held that plaintiffs filing individual lawsuits should be necessarily precluded from having a statute tolled for their claims.

However, though class action tolling is a broad rule, and could arguably apply in a case such as this, the Court feels strongly that it should not be invoked in this case. The Individual Plaintiffs made a conscious decision early on to pursue their claims on an entirely separate, though essentially parallel, track from that of the Class case. These Plaintiffs filed their own lawsuits and disavowed class status. They also chose, in contrast to the Class Plaintiffs, not to include the Wholesalers as defendants in their original complaints. In this Court's mind, it would be inequitable to now allow the Individual Plaintiffs [*33] to reap the benefits of a doctrine which is designed for a group -- the Class and its putative members -- which they have disavowed being a part of from the beginning. In fact, class action tolling has been denied in such situations where a plaintiff "wants his cake and to

eat it, too." *Stutz v. Minnesota Mining Mfg. Co., 947 F. Supp. 399, 403 (S.D. Ind. 1996)* (further explaining that the class action tolling rule should not be applied "when a plaintiff attempts to manipulate the rule in a way that frustrates its underlying purpose"). Thus, the Court finds that the class action tolling rule should not be extended to apply to the facts of this case.

The Court holds that neither equitable nor class action tolling is appropriate in this case. Therefore, for those claims against the Wholesaler Defendants (and any others which depend on the Wholesaler Defendants being joined), the relevant damages period only dates back to October 2, 1993.

III Illinois Brick and Co-conspirator Intermediaries

The final issue on this motion, one that has proven to be a recurring point of contention in this case, deals with the effect of the Illinois Brick indirect purchaser [*34] bar on the Individual Plaintiffs' claims against the Manufacturer Defendants. The Supreme Court in Illinois Brick held that an indirect purchaser -- a party that is at least one step removed on the distribution chain from the alleged conspirators -- cannot seek antitrust damages for illegal overcharges that are passed on to them through intermediaries in the distribution chain who purchased directly from the conspirators. *Illinois Brick Co. v. Illinois, 431 U.S. 720, 746, 52 L. Ed. 2d 707, 97 S. Ct. 2061 (1977)*. Thus, in order for the Plaintiffs to avoid an Illinois Brick bar with regards to their indirect purchaser claims against the Manufacturer Defendants, the Wholesalers must have been part of the alleged conspiracy. The big question, however, is whether the Wholesalers must be formally named as defendants, or if merely identifying the Wholesalers as co-conspirators is enough to overcome the rule of Illinois Brick.

In granting the Individual Plaintiffs leave to amend their complaints to join some of the Wholesalers as defendants, this issue has already been rendered moot in large part. However, since the Court has now held that this amendment does [*35] not relate back to the filing date of the initial complaints, those damage claims accruing before October 2, 1993 are still governed by the original pleadings. In their original complaints, the Individual Plaintiffs did *not* name the Wholesalers as defendants, but did identify them as co-conspirators in the alleged price-fixing conspiracy. In addition, those indirect purchaser claims which are predicated on purchases from non-Defendant Wholesalers are also dependent on the resolution of this issue. The issue, as we have stated, is whether identifying these intermediaries as co-conspirators is enough in light of Illinois Brick's bar on indirect purchaser claims.

This Court has answered this question before. The Court previously agreed with the Individual Plaintiffs

that, in order to avoid the Illinois Brick bar, it was suffi-
cient that the intermediaries in the distribution chain --
the Wholesalers -- be identified in the complaint as co-
conspirators. See *In re Brand Name Prescription Drugs
Antitrust Litigation, 867 F. Supp. 1338, 1344-45 (N.D.
Ill. 1994).* Since this prior holding, however, the Seventh
Circuit has weighed in with its opinion as to the effect
[*36] of Illinois Brick on the antitrust claims in this
MDL proceeding. Unfortunately, the Seventh Circuit's
analysis was written from the perspective of the Class
case, in which the Wholesalers have been defendants
from the outset, and did not directly address the question
of whether the Wholesalers need be named as defen-
dants. Nevertheless, Judge Posner's opinion did shed
some new light on this issue, and thus it is necessary to
reconsider our prior holdings on this point.

With regards to Illinois Brick and the indirect pur-
chaser claims, the Court of Appeals had the following to
say:

> The indirect-purchaser issue (with
> which we begin) is separate from the issue
> of the wholesalers' participation in the
> manufacturers' alleged conspiracy. It is
> true that if we reversed the judge's ruling
> on the latter issue and so reinstated the
> wholesalers as defendants, and if the
> plaintiffs went on to obtain a judgment
> against the wholesalers and manufactur-
> ers, any indirect-purchaser defense would
> go by the board, since the pharmacies
> would then be direct purchasers from the
> conspirators. *Fontana Aviation, Inc. v.
> Cessna Aircraft Co., 617 F.2d 478, 481
> (7th Cir. 1980);* [*37] *Arizona v. Sham-
> rock Foods Co., 729 F.2d 1208, 1212-13
> (9th Cir. 1984);* see also *In re Beef Indus-
> try Antitrust Litigation, 600 F.2d 1148,
> 1163 (5th Cir. 1979)* (requiring that the
> direct sellers, here the wholesalers, be
> joined as defendants -- but that require-
> ment is satisfied).

*In re Brand Name Prescription Drugs Antitrust Litiga-
tion, 123 F.3d 599, 604-05 (7th Cir. 1997).* The Seventh
Circuit decided to reinstate the Wholesalers as defen-
dants in the Class case, though making clear that their
complicity in the conspiracy was necessary in order for
the Plaintiffs to recover from the Manufacturer Defen-
dants for purchases made through the Wholesalers. With
respect to the Class case, it was unnecessary for the court
to decide whether the Wholesalers' involvement must be
as named defendants, or merely as co-conspirators not
joined to the case.

Predictably, the Individual Plaintiffs and the Defen-
dants read the Seventh Circuit's opinion to support their
polar-opposite positions in this case. Relying on the Sev-
enth Circuit's tangential discussion of the issue, the par-
ties now argue how they believe the court would rule if
directly [*38] presented with the question of whether it
recognizes a co-conspirator exception to Illinois Brick.
The parties' respective interpretations as to how the tea
leaves read are as follows.

The Manufacturer Defendants assert that the Sev-
enth Circuit's opinion conclusively establishes that the
Plaintiffs' indirect purchaser overcharge claims are
barred by Illinois Brick unless two prerequisites are sat-
isfied: (1) the direct sellers (the Wholesalers) must be
joined as defendants, and (2) the Plaintiffs must obtain a
judgment against the Wholesalers and Manufacturers.
The Manufacturer Defendants place great reliance on the
Seventh Circuit's citation with approval to the Fifth Cir-
cuit's decision in In re Beef and its requirement that co-
conspirator intermediaries be joined as defendants in
order to avoid an Illinois Brick bar to indirect purchaser
claims. See *In re Beef, 600 F.2d at 1163.* This citation to
In re Beef confirms, according to the Defendants, that the
Seventh Circuit has always subscribed to the rule requir-
ing direct purchaser intermediaries be formally joined as
defendants.

The Manufacturer Defendants detect no inconsis-
tency in the Court [*39] of Appeals' preceding citation
to *Fontana Aviation, Inc. v. Cessna Aircraft Co., 617
F.2d 478 (7th Cir. 1980).* In Fontana, the Seventh Circuit
opined that they were "not satisfied that the Illinois Brick
rule directly applies in circumstances where the manu-
facturer and the intermediary are both alleged to be co-
conspirators in a common illegal enterprise resulting in
intended injury to the buyer." *Id. at 481.* The Defendants
argue, however, that the Fontana court did not rely on
this reason for finding the Illinois Brick bar inapplicable
to the indirect purchaser claims in that case. Instead, the
Defendants claim the Fontana court based its decision on
the fact that the plaintiff was seeking damages as "a
competitor, not a customer," and because the plaintiff's
claim was not for an overcharge passed through the chain
of distribution but was rather for a combination of anti-
competitive acts which destroyed the plaintiff's business.
See *id at 481.* In fact, other courts have subscribed to this
interpretation of Fontana, refusing to read Fontana to
create a co-conspirator exception to Illinois Brick's rule
[*40] prohibiting indirect purchaser recovery. See *Link
v. Mercedes-Benz of North America, Inc., 788 F.2d 918,
931 n. 11 (3d Cir. 1986).*

The Individual Plaintiffs, on the other hand, place a
much different spin on the Seventh Circuit's citation to
Fontana. The direct citation to Fontana, Plaintiffs ex-
plain, indicates this Circuit's continuing adherence to the

rule allowing indirect purchaser claims where the inter-mediaries are merely identified as co-conspirators but not joined as defendants. This interpretation is bolstered by the Seventh Circuit's subsequent citation to *Arizona v. Shamrock Foods Co., 729 F.2d 1208 (9th Cir. 1984)*, which similarly held that Illinois Brick was inapplicable in a case where the plaintiffs alleged that the intermediaries were co-conspirators but did not name them as defendants. *Id. at 1212-13*. Thus, the Individual Plaintiffs read the Seventh Circuit's string of citations as affirming the co-conspirator exception created by Fontana and Shamrock Foods.

The Individual Plaintiffs interpret the Seventh Circuit's subsequent direction to "see also" In re Beef as merely identifying an [*41] inter-circuit conflict and to note that, with respect to the Class case, this more rigorous requirement was nevertheless satisfied. At worst, the Plaintiffs contend, it was not clear what Judge Posner meant to imply with his citation to In re Beef; in such a situation involving ambiguous dictum, a lower court should not interpret that dictum as overruling prior Circuit precedent. See, e.g., *United States v. Crawley, 837 F.2d 291, 292-93 (7th Cir. 1988)* (providing several reasons why dictum in prior cases should be given little or no weight). If Judge Posner wanted to dispel any notion that Fontana recognized a co-conspirator exception to Illinois Brick, the Plaintiffs argue, he certainly would not have done it by attaching a direction to "see also" In re Beef at the end of a string cite. Thus, the Individual Plaintiffs contend that the Seventh Circuit's opinion changes nothing, and that this Court should stand by our prior pronouncements recognizing the inapplicability of Illinois Brick as long as the Wholesalers are identified as co-conspirators.

Before solving this riddle, the Court must first note that this analysis is relevant to two separate [*42] subsets of damage claims against the Manufacturer Defendants in this case. First, the Individual Plaintiffs seek damages for pre-October 2, 1993 purchases made through the Wholesaler Defendants. As previously explained, the recent joinder of the Wholesaler Defendants does not relate back to the original complaints, and this leaves the pre-1993 claims with the Wholesalers only implicated as co-conspirators and not named defendants. Second, the Individual Plaintiffs have also asserted indirect purchaser claims for purchases made through non-Defendant Wholesalers. These Wholesalers were originally identified as co-conspirators, but were not joined as defendants by the amended complaints. Thus, the entirety of these non-Defendant Wholesaler indirect purchaser claims also rest on the Court's resolution of the co-conspirator exception issue. Since the Court finds the considerations attendant to each of these subsets of indi-rect purchaser claims to be somewhat different, we will analyze them separately.

A. Pre-1993 purchases from Defendant Wholesalers

The first group of claims which are affected by this co-conspirator exception question are the Individual Plaintiffs' purchases made through [*43] the Wholesaler Defendants before October 2, 1993. These claims are unique in that the intermediary Wholesalers, though not officially defendants for the relevant time period, have since been joined to this action. It is this unique aspect of these claims which, the Court believes, conclusively dictates that Illinois Brick should not bar their recovery.

In refusing to recognize a co-conspirator exception to Illinois Brick, the In re Beef court based its decision on a consideration of the policies underlying the Illinois Brick bar on indirect purchaser claims. See *In re Beef, 600 F.2d at 1163*. Absent joinder of the intermediaries, the court feared, there could be "inconsistent adjudications on the issue of the existence of a vertical conspiracy [which would] leave[] the defendants subject to the risk of multiple liability that the Illinois Brick Court found unacceptable." Id. Since non-defendant intermediaries would not be bound by any judgment as to the conspiracy, the In re Beef court rejected any exception to Illinois Brick where "the alleged co-conspirator middlemen are not named as parties defendant." Id.

In this case, [*44] of course, the Wholesaler Defendants have now been joined as defendants, albeit for a later time period than the claims that are at issue. As a result, the Wholesaler Defendants will be bound by and unable to relitigate the facts found by the jury in the present case. If the Wholesaler Defendants are found to have been members of a vertical conspiracy with the Manufacturers, they will be collaterally estopped from later pressing their own antitrust claims against the Manufacturers in a subsequent proceeding. Conversely, if the Wholesaler Defendants are exonerated at trial, they will not have to face any other Sherman Act claims deriving from the same conduct. Thus, because the Wholesaler Defendants are now parties to this litigation, the considerations underlying the decision in In re Beef are no longer germane to this subset of indirect purchaser claims.

Therefore, even if this Circuit were to adopt the In re Beef rule, the Court believes that this rule would not bar recovery for those pre-1993 claims which involved purchases from the Wholesaler Defendants. The sum and substance of the In re Beef rule is to require that co-conspirator middlemen be parties to the proceeding [*45] that will adjudge the existence of any conspiracy. For the pre-1993 claims, this requirement is satisfied. The Wholesaler Defendants will have a full and fair opportu-

nity to litigate their involvement in the alleged price-fixing conspiracy, and will be bound by any judgment reached in this case. The fact that the Manufacturer Defendants may be forced to pay damages for a longer period time than the Wholesaler Defendants is, in this Court's opinion, irrelevant to the application of the In re Beef rule.

In summary, the Court believes that the joinder of the Wholesaler Defendants conclusively eliminates any of the risks or concerns which underlie the rule of In re Beef, and therefore we find this rule inapplicable for those claims which implicate intermediaries which are parties to this case. Thus, the Court holds that Illinois Brick does not bar those claims against the Manufacturer Defendants which derive from purchases made from Defendant Wholesalers prior to October 2, 1993 (but within the original limitations period).

B. All purchases from non-Defendant Wholesalers

The second subset of claims -- those involving purchases from non-Defendant Wholesalers -- presents a [*46] much tougher case. These Wholesalers have never been parties, nor has their joinder been sought, at any time during this case. Thus, the rule of In re Beef would squarely dictate that these claims are barred by Illinois Brick. It is necessary to determine, therefore, whether the Seventh Circuit now subscribes to the holding of In re Beef, or whether it continues to recognize a co-conspirator exception as seemingly set forth in Fontana.

Though the precedent lacks consistent clarity, this Court continues to read the relevant Seventh Circuit precedent to recognize a co-conspirator exception to the general rule prohibiting indirect purchaser claims. This exception allows an antitrust plaintiff to avoid the strictures of Illinois Brick by identifying an intermediary as a co-conspirator, though it does not further require that the intermediary also be formally named as a defendant. As applied to this case, this exception would permit the Individual Plaintiffs to recover damages for purchases made through any of the Wholesalers (who were all identified as co-conspirators), whether or not these Wholesalers were named as defendants. This was our holding prior to the Seventh [*47] Circuit's recent opinion in this case, and this is still our holding today.

Though Judge Posner's oblique references to this issue are not definitive either way, this Court reads the language of his opinion to recognize a co-conspirator exception to Illinois Brick. Upon dissecting the relevant passage of the Seventh Circuit's opinion, several clues suggest this interpretation. First of all, Judge Posner explained that if the Wholesalers were brought back in to the Class case, and judgment was rendered finding the Wholesalers and Manufacturers to have participated in the alleged conspiracy, "any indirect-purchaser defense would go by the board, since the pharmacies would then be direct purchasers from the *conspirators*." In re Brand Name, 123 F.3d at 604 (emphasis added). Though this choice of words may have been inadvertent, the court's decision to use the word "conspirators" rather than "defendants" could be construed as tacitly endorsing a co-conspirator exception to Illinois Brick. Since the Wholesalers have always been identified as co-conspirators by the Individual Plaintiffs, these Plaintiffs were "direct purchasers from the conspirators" if their [*48] claims are proven out at trial.

Even more indicative of this interpretation, however, are those cases that the court chose to cite in support of this statement. As direct support for the proposition, Judge Posner cited to *Fontana Aviation, Inc. v. Cessna Aircraft Co., 617 F.2d 478 (7th Cir. 1980)*, and to *Arizona v. Shamrock Foods Co., 729 F.2d 1208 (9th Cir. 1984)*. Among the several appellate decisions involving Illinois Brick and a possible co-conspirator exception, these two cases are recognized (though there is admittedly some disagreement as to the validity of this recognition) as being the leading Circuit authority in support of a co-conspirator exception to Illinois Brick. See *Link v. Mercedes-Benz of North America, Inc., 788 F.2d 918, 931 fn. 11 (3d Cir. 1986)* (recognizing that Fontana and Shamrock Foods have been cited in support of a co-conspirator exception, though finding that each could be distinguished on separate grounds). The citation to Fontana, the only prior precedent on the issue from this Circuit, is to be expected. However, the court's decision to also cite Shamrock Foods, as opposed [*49] to other decisions that have squarely rejected any co-conspirator exception to Illinois Brick and have required that co-conspirator intermediaries be named as defendants, see *Link, 788 F.2d 918; Austin v. Blue Cross & Blue Shield of Alabama, 903 F.2d 1385, 1392 (11th Cir. 1990); In re Midwest Milk Monopolization Litigation, 730 F.2d 528, 532 (8th Cir. 1984)*, is a telling indicator of the Seventh Circuit's position on this issue. The decision to cite the two cases on this far end of continuum, rather than the many others which clearly stand against this proposition, persuades this Court that our prior recognition of a co-conspirator exception is still viable.

The Seventh Circuit's final citation to In re Beef, a case which is clearly in the camp with Link and the others in rejecting such an exception, seems to be best explained as a recognition of conflicting authority. The court could have cited In re Beef as direct support for the court's statement, but instead chose to isolate this citation with a "see also" introductory signal. The isolation of In re Beef from Fontana and Shamrock Foods would seem [*50] to imply that the Seventh Circuit reads these cases to stand for something different than In re Beef. Taking

1998 U.S. Dist. LEXIS 12534, *

this inference a step further, this grouping of the citations insinuates that the court agrees with the Individual Plaintiffs' view that Fontana and Shamrock Foods allow a plaintiff to proceed with indirect purchaser claims where the intermediary in the distribution chain is identified as a co-conspirator. In subsequently citing In re Beef, the Seventh Circuit noted that, with regard to the Class case, the more stringent requirement of naming the intermediaries as defendants was also satisfied.

Admittedly, the Seventh Circuit's opinion does not provide much to go on with respect to resolving this issue which is unique to the Individual cases. But, based on the direction that has been given to us, this Court believes that the Seventh Circuit has endorsed, and continues to recognize, a co-conspirator exception to Illinois Brick. The effect of this ruling is to allow the indirect purchaser claims against the Manufacturer Defendants to go forward, without regard to whether a specific purchase was made from a Wholesaler who is a defendant or not. Nothing the [*51] Court of Appeals has said would indicate that this position is in error, and thus summary judgment for these claims is denied.

IV Summary

The Wholesaler Defendants' motion for partial summary judgment is granted-in-part, while the Manufacturer Defendants' motion is denied. The Individual Plaintiffs' damage claims will be limited as follows. The Court finds that the recent amendment joining the Wholesaler Defendants does not relate back to the date of the original complaints, and the Individual Plaintiffs cannot take advantage of any tolling rules to preserve more of their claims in this case. The result of these conclusions is that the claims against the Wholesaler Defendants will cover a period back to October 2, 1993. The Manufacturer Defendants, as a result of our recognition of a co-conspirator exception to Illinois Brick, still face damage claims dating back to four years preceding the filing of the original complaints.

**CONCLUSION**

For the foregoing reasons, the Wholesaler Defendants' motion is granted-in-part, while the Manufacturer Defendants' motion is denied.

Charles P. Kocoras

United States District Judge

Dated: August 4, 1998

LEXSEE 2003 U.S. DIST. LEXIS 20689

**BONNIE SHAFFER, Plaintiff, v. COMBINED INSURANCE COMPANY OF AMERICA, Defendant.**

**No: 02 C 1774**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2003 U.S. Dist. LEXIS 20689*

**November 17, 2003, Decided
November 18, 2003, Docketed**

**SUBSEQUENT HISTORY:** Motion granted by, in part, Motion denied by, in part, Costs and fees proceeding at *Shaffer v. Combined Ins. Co. of Am., 2004 U.S. Dist. LEXIS 4257 (N.D. Ill., Mar. 16, 2004)*

**DISPOSITION:**    [*1] Defendant's Motion for Summary Judgment granted.

**COUNSEL:** For Bonnie Shaffer, PLAINTIFF: Thomas R Meites, Meites, Mulder, Burger & Mollica, Chicago, IL USA. Johanna Josie Raimond, Meites, Mulder, Burger & Mollica, Chicago, IL USA.

**JUDGES:** JOHN W. DARRAH, United States District Judge.

**OPINION BY:** JOHN W. DARRAH

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Bonnie Shaffer ("Shaffer"), filed suit against Defendant, Combined Insurance Company of America ("Combined"). Shaffer alleges violations of Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e*. Presently before the Court is Combined's Motion for Summary Judgment. For the reasons that follow, Combined's Motion for Summary Judgment is granted.

**LEGAL STANDARD**

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P. 56(c)*; *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc., 40 F.3d 146, 150 (7th Cir. 1994)*. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . [*2] ." *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*. Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that a genuine issue of material fact exists and to show that a rational jury could return a verdict in the non-moving party's favor. *Celotex, 477 U.S. at 322-27*; *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254-56, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)*; *Waldridge v. American Hoechst Corp., 24 F.3d 918, 923 (7th Cir. 1994)*.

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker, 957 F.2d 506, 507-08 (7th Cir. 1992)*. When reviewing a motion for summary judgment, a court must view all inferences to [*3] be drawn from the facts in the light most favorable to the opposing party. *Anderson, 477 U.S. at 247-48*; *Popovits v. Circuit City Stores, Inc., 185 F.3d 726, 731 (7th Cir. 1999)*. However, a metaphysical doubt will not suffice. *Matsushita, 475 U.S. at 586*. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson, 477 U.S. at 249-250*.

**BACKGROUND**

The undisputed facts, for the purposes of this motion, taken from the parties' Local Rule 56.1(a) & (b) statements of material facts (referred to herein as "Pl.'s 56.1" and "Def's 56.1") and exhibits, are as follows.

Combined is a nationwide insurance company that sells supplemental insurance door to door to the public. Pl.'s 56.1 P1. Shaffer began selling insurance for Combined in Iowa as a sales agent in 1994. Def.'s 56.1 P10. Shaffer filed her underlying charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 31, 2001. Def.'s 56.1 P2.

On September 17, 2001, the EEOC issued Shaffer a Dismissal and Notice of Rights ("right-to-sue letter"). [*4] Def.'s 56.1 P3. On December 13, 2001, Shaffer, along with nine other plaintiffs, filed suit against Combined in the Northern District of Illinois before the Honorable Judge Alesia in *Radmanovich v. Combined Insurance Company of America,* 01 C 9502 ("the original *Radmanovich* action"). Def.'s 56.1 P5.

On February 5, 2002, Judge Alesia, *sua sponte,* informed these plaintiffs in open court that they could not maintain the original *Radmanovich* action with multiple named plaintiffs. Def.'s 56.1 P6. He gave the plaintiffs two options: either (1) convert the original action to a class action with one named plaintiff; or (2) dismiss all but one plaintiff from the original action and have the remaining plaintiffs each file individual suits. Def. Ex. C., Tr. of Proceedings, Feb. 5, 2002, at 3-6.

On February 8, 2002, Shaffer and eight other plaintiffs in the original *Radmanovich* action filed a motion requesting Judge Alesia to enter an order incorporating his February 5 order. Def.'s 56.1 P7. On February 12, 2002, Judge Alesia granted this motion and dismissed Shaffer and the eight other plaintiffs from the original *Radmanovich* action without prejudice. He also granted [*5] the remaining plaintiff, Traci Radmanovich, leave to file an amended complaint by February 27, 2002. Pl.'s Resp. to Def.'s 56.1 P8.

On February 26, 2002, Traci Radmanovich filed her amended class action complaint against Combined ("the *Radmanovich* class action"). Shaffer and the other plaintiffs in the original *Radmanovich* action were members of the class as described in Traci Radmanovich's amended complaint. Pl.'s 56.1 P167. On March 8, 2002, Shaffer filed the instant lawsuit. Def.'s 56.1 P9.

## ANALYSIS

Combined argues that Shaffer's individual lawsuit is barred by the ninety-day filing requirement of *42 U.S.C. § 2000e-5(f)(1)*. That statute requires the EEOC to determine whether it wishes to file a civil action on behalf of an aggrieved party in a Title VII matter. If the EEOC declines to so proceed, it must provide a right-to-sue letter to the aggrieved party, who then has ninety days to file a charge against the allegedly discriminating party.

"[A] suit dismissed without prejudice is treated for statute of limitations purposes as if it has never been filed." *Elmore v. Henderson, 227 F.3d 1009, 1011 (7th Cir. 2000)*; [*6] *Accord Beck v. Caterpillar Inc., 50 F.3d 405, 407 (7th Cir. 1995)*; *Robinson v. Willow Glen Acad., 895 F.2d 1168, 1169 (7th Cir. 1990)*; *United States v. Mt. Vernon Mem'l Estates, Inc., 734 F.2d 1230, 1236 (7th Cir. 1984)*.

In this case, Shaffer received her right-to-sue letter from the EEOC on September 17, 2001. Shaffer and the other *Radmanovich* plaintiffs filed their original action on December 13, 2001 -- just three days before Shaffer's ninety-day filing period ran out. On February 12, 2002, Shaffer was dismissed without prejudice from the original *Radmanovich* action. Shaffer did not file her own suit until March 8, 2002. Combined contends that this suit is barred because it was filed long after December 17, 2001, as required by *42 U.S.C. § 2000e-5(f)*.

Shaffer argues that a pending class action tolls the statute of limitations for class members. *American Pipe & Constr. Co. v. Utah, 414 U.S. 538, 552-53, 38 L. Ed. 2d 713, 94 S. Ct. 756 (1974)*. Moreover, Shaffer contends that all class members, regardless of whether they have filed their own legal action, are entitled to equitable [*7] tolling from the ninety-day filing rule until class certification is denied. "Once the statute of limitations has been tolled, it remains tolled for *all members* of the putative class until class certification is denied." *Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 354, 76 L. Ed. 2d 628, 103 S. Ct. 2392 (1983)* (emphasis added). Therefore, Shaffer claims that she remained an absent class member, after her dismissal from the original *Radmanovich* action, until at least June 26, 2003, when Judge Alesia finally denied class status.

However, plaintiffs that file their own individual lawsuit *before* class certification is denied do not obtain the benefits of the *Crown, Cork & Seal* class-action tolling. *Wachovia Bank & Trust Co., N.A. v. Nat'l Student Mktg. Corp., 209 U.S. App. D.C. 9, 650 F.2d 342, 346 n.7 (D.C. Cir. 1981)*; *Chazen v. Deloitte & Touche, LLP, 247 F. Supp. 2d 1259, 1271-72 (N.D. Ala. 2003)*; *Prohaska v. Somafor, S.N.C., 138 F. Supp. 2d 422, 432-33 (W.D.N.Y. 2001)*; *Primavera Familienstifung v. Askin, 130 F. Supp. 2d 450, 513-14 (S.D.N.Y. 2000)*; *Rahr v. Grant Thornton LLP, 142 F. Supp. 2d 793, 799-800 (N.D. Tex. 2000)*; [*8] *Chinn v. Giant Food, Inc., 100 F. Supp. 2d 331, 334-35 (D. Md. 2000)*; *Wahad v. City of New York, No. 75 Civ. 6203, 1999 U.S. Dist. LEXIS 12323, 1999 WL 608722, at *5-6 (S.D.N.Y. Aug. 12, 1999)*; *Stutz v. 3M, 947 F. Supp. 399, 400-04 (S.D. Ind. 1996)*; *Pulley v. Burlington N., Inc., 568 F. Supp. 1177, 1179-80 (D. Minn. 1983)*.

Generally, these opinions reflect a policy that plaintiffs who elect to individually pursue their own claims cannot "reap the benefits of a doctrine which is designed for a group -- the class and its putative members." *In re Brand Name Prescription Drugs Antitrust Litig., 1998 U.S. Dist. LEXIS 12534, No. 94 C 897, 1998 WL 474146, at *8 (N.D. Ill. Aug. 6, 1998)* (Kocoras, J.); *see also Chemco, Inc. v. Stone, McGuire & Benjamin, 1992 U.S. Dist. LEXIS 11657, No. 91 C 5041, 1992 WL 188417, at *2 (N.D. Ill. July 29, 1992)* ("Only if class certification was denied . . . would the putative class members be able to bring suits individually under *American Pipe* [and *Crown, Cork & Seal*].") (Zagel, J.). [1]

> 1   *But see Amati v. City of Woodstock, 1997 U.S. Dist. LEXIS 14281, Nos. 92 C 20347, 94 C 50235, 1997 WL 587493, at *6 (N.D. Ill. Aug. 7, 1997)* (allowing, without discussing any related authority on the issue, new plaintiffs to file suit during the pendency of class certification instead of intervening in the class action).

[*9] Shaffer, in voluntarily dismissing her first suit, can no longer claim the protection of a putative class member under *American Pipe* and *Crown, Cork, & Seal.* Shaffer filed her first lawsuit before Judge Alesia on December 13, 2001, three days before the ninety-day period for filing would have expired. Tolling the remaining part of that period before she withdrew from that suit and remained a putative class member permitted her to file this action within the three untolled days remaining, until February 15, 2002. Shaffer did not do so; she chose to voluntarily withdraw from the class and file this suit three weeks thereafter, on March 8, 2002.

Shaffer next argues that the ninety-day filing requirement should be equitably tolled. Equitable tolling rarely applies, and the doctrine should not be used in situations where the plaintiff negligently failed to preserve her legal rights. *Tyler v. Runyon, 70 F.3d 458, 465 n.8 (7th Cir. 1995)* (citing *Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96, 112 L. Ed. 2d 435, 111 S. Ct. 453 (1990))*. Other courts have discussed equitable tolling in the context of the ninety-day filing rule of § *2000e-5(f)*. "Receipt of a second EEOC Notice [*10] does not constitute grounds for equitable tolling where a party has actual knowledge of the first Notice." *Santini v. Cleveland Clinic Fla., 232 F.3d 823, 825 (11th Cir. 2000); see also Witt v. Roadway Express, 136 F.3d 1424, 1430 (10th Cir. 1998); Davidson v. Serv. Corp. Int'l, 943 F. Supp. 734, 737-40 (S.D. Tex. 1996), aff'd sub nom. Davidson v. Guardian Plans, Inc., 132 F.3d 1454 (5th Cir. 1997).*

Here, Shaffer suggests that Judge Alesia, *sua sponte*, dismissed her from the original *Radmanovich* action, and that a reasonable time period was necessary to r-file a new complaint. The records of the proceeding is to the contrary. On February 5, 2002, Judge Alesia gave the original *Radmanovich* plaintiffs, including Shaffer, a choice: (1) either convert the original action to a class action with one named plaintiff; or (2) dismiss all but one plaintiff from the original action and have the remaining plaintiffs each file an individual suit. It is clear that on February 12, 2002, Shaffer elected to be dismissed from the original *Radmanovich* action, pursuant to Judge Alesia's February 5 ruling. Under these [*11] circumstances, Shaffer cannot be said to be surprised regarding the ninety-day filing requirement. Shaffer's conduct in the untimely refiling of her claim will not equitably toll the ninety-day filing requirement further.

Finally, Shaffer argues that Combined should be estopped from raising the ninety-day filing requirement as a defense because it waited to present this argument until this Motion for Summary Judgment. However, Shaffer's only authority on this issue discusses motions to compel discovery. *Price v. Maryland Cas. Co., 561 F.2d 609, 611-12 (5th Cir. 1977); Commonwealth Edison Co. v. Allis-Chalmers Manu. Co., 40 F.R.D. 96, 108 (N.D. Ill. 1966).*

Shaffer offers no support for the proposition that a defendant who properly pleads an affirmative defense must use that defense as soon as possible or the defense is waived. Here, Combined properly pled the ninety-day filing requirement as an affirmative defense at the earliest possible time -- in its Answer. Therefore, Combined is not estopped from raising the filing requirement of § *2000e-5(f)*.

## CONCLUSION

For the foregoing reasons, Combined's Motion for Summary Judgment is granted.

[*12] Dated: November 17, 2003

JOHN W. DARRAH

United States District Judge

## JUDGMENT IN A CIVIL CASE

Decision by Court. This action came to hearing before the Court. The issues have been heard and a decision has been rendered.

Date: 11/17/2003

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2005 WL 3436394 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

**C** Kozlowski v. Sheahan
N.D.Ill.,2005.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
Alice KOZLOWSKI and Renee Walker, individually
and on behalf of a class, Plaintiffs,
v.
Michael SHEAHAN, Sheriff of Cook County in his
official capacity, and Cook County Defendants.
**No. Civ.A. 05 C 5593.**

Dec. 12, 2005.

Thomas Gerard Morrissey, Chicago, IL, for
Plaintiffs.
Steven M. Puiszis, Frank Joseph Marsico, James
Constantine Vlahakis, Hinshaw & Culbertson,
Patrick T. Driscoll, Jr., Cook County State's
Attorney, Chicago, IL, for Defendants.

*MEMORANDUM OPINION AND ORDER*

CONLON, J.
    *1 Alice Kozlowski and Renee Walker, two
former pretrial detainees at the Cook County
Department of Corrections ("the county jail"), brings
a putative class action against Cook County and its
sheriff, Michael Sheahan, in his official capacity,
pursuant to 42 U.S.C. § 1983. Defendants jointly
move to dismiss. For the reasons set forth below, the
motion is granted.

BACKGROUND

    The following facts are derived from the
amended complaint. This case arises from the pretrial
detention of Kozlowski and Walker in Division III of
the county jail. They were held for several months in
2002; Kozlowski was released on July 24, 2002, and
Walker, on September 19, 2002. Am. Compl. at ¶ 3.
They were assigned to Division III because it was
designated to house inmates who needed medical
treatment; Kozlowski received treatment for drug
addiction, and Walker, for asthma. *Id.* at ¶ 7.

    Division III, which occupied three floors, was

divided into six tiers. *Id.* at ¶ 8. An interlocking area
separated each floor into two tiers. *Id.* This area
served as the only passageway to the tiers and a
monitoring station for guards. *Id.* Inside each tier
were cells, a common holding area, and shower stalls.
*Id.* at ¶ 9. Each cell housed two inmates. *Id.* at ¶
10.Secured by a steel door with a small opening, each
cell had two bunk beds, a toilet, and a sink. *Id.* The
common holding area, known as "the day room," had
pay phones and a television. *Id.* at ¶ 9. If allowed in
the day room, inmates could socialize with each
other, use the pay phones, and shower. *Id.* From the
monitoring station, guards could observe the day
room, but not the cells.*Id.* at ¶¶ 9-10.The monitoring
station was supposed to be staffed by guards. *Id.* at ¶
8. As a result, it was impossible for inmates to pass
weapons or contraband from one tier to another. *Id.*

    The lockdowns, which usually lasted from
Friday afternoon to Sunday afternoon, were
conducted to seize weapons and contraband from
inmates. *Id.* at ¶ 11.Between March 11, 2001 and
March 11, 2003 ("the class period"), lockdowns took
place at least once a month. *Id.* at ¶¶ 2(c), 11.During
each lockdown, teams of guards searched the tiers for
weapons and contraband. *Id.* at ¶ 11.The searches of
each tier took less than 40 minutes. *Id.* Because
inmates could not pass weapons or contraband
between the tiers without going through the
monitoring stations, inmates would not burden the
search effort by using the day room and shower stalls
after their tiers were searched. *Id.* at ¶ 8. But inmates
were confined in their cells during the entire
lockdown. *Id.* at ¶ 11.As a result, they could not
exercise, shower, use the pay phones, or watch
television. *Id.* at ¶ 12.

    While they do not allege denial of food, medical
care, or protection during the lockdowns, Kozlowski
and Walker claim the lockdowns violated the
Fourteenth Amendment by subjecting them to
protracted detention in their cells. They seek to
represent all female pretrial detainees held in
Divisions III and IV during the class period.
Defendants move to dismiss on two grounds: (1) this
case is time-barred; and (2) plaintiffs fail to state a
claim.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3436394 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

## DISCUSSION

### I. Motion to Dismiss Standard

**\*2** "A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, and dismissal of an action under the rule is warranted only if 'no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Cler v. Ill. Educ. Ass'n,* 423 F.3d 726, 729 (7th Cir.2005) (quoting *DeWalt v. Carter,* 224 F.3d 607, 612 (7th Cir.2000)). In ruling on a motion to dismiss, the court must accept the well-pleaded allegations as true and draw all reasonable inferences in favor of the nonmoving party. *Cler,* 423 F.3d at 729. To survive a motion to dismiss, a complaint "need not plead particular legal theories or particular facts." *DeWalt,* 224 F.3d at 612. All that is required is "a short and plain statement ... that will give the defendant fair notice" of the nature and basis of the claim. *Id.* But a complaint must be dismissed if it "reveals that the plaintiff's claim is barred by a statute of limitations." *Tregenza v. Great Am. Commc'ns Co.,* 12 F.3d 717, 719 (7th Cir.1993).

### II. Statute of Limitations

Plaintiffs' § 1983 claim is subject to Illinois' two-year limitations period for personal injury actions. *Mitchell v. Donchin,* 286 F.3d 447, 450 (7th Cir.2002). Defendants argue the limitations period has run: Plaintiffs were released before September 19, 2002, but did not file this case until September 28, 2005-more than three years after suffering the alleged injuries. In response, plaintiffs argue the limitations period is tolled by the timely commencement of *Hart v. Sheahan,* 03 C 1768 (N.D.Ill.), another putative class action filed by pretrial detainees.

#### A. *Hart v. Sheahan*

Genise Hart and five other pretrial detainees filed a putative class action against Sheriff Sheahan and Cook County on March 11, 2003. Defs. Exs. C (docket printout), F (second amended complaint). Hart claimed protracted detention identical to Kozlowski and Walker's allegations: "[D]uring the weekend lock down, the detainee is neither released from her cell nor permitted to shower, exercise or have access to a phone to communicate with their [*sic* ] lawyer or family."Defs. Ex. F at ¶ 20. In addition, Hart alleged that because they were confined in their cells during the lockdowns, inmates could not communicate with guards if they needed protection against cellmates or medical attention. *See, e.g., id.* at ¶¶ 19, 39-41, 52(D)-(E).

Judge Zagel initially dismissed Hart's second amended complaint. *Hart,* Dkt. No. 35 (Dec. 18, 2003). On appeal, the Seventh Circuit held that Hart sufficiently stated a claim based on the alleged lack of access to medical attention and guard protection:

[T]he heart of the plaintiffs' claim, with enough merit to withstand a motion to dismiss, is that the jail is subjecting them *to a risk of serious harm by an unreasonably protracted detention of them out of sight and hearing of guards.*

*Hart v. Sheahan,* 396 F.3d 887, 894 (7th Cir.2005) (emphasis added). The Seventh Circuit instructed that on remand, Judge Zagel should "prun[e] the overlong complaint of untenable charges."*Id* . One of the untenable charges was Hart's claim based on protracted detention alone. Had the Seventh Circuit intended to allow the protracted detention claim to go forward, its holding would not have included the restricting language about the inmates' being "out of sight and hearing of guards."*Id.* Accordingly, Judge Zagel dismissed the protracted detention claim on remand. *Hart,* Dkt. No. 100, at \*1 (Oct. 25, 2005) (striking two allegations from Hart's fourth amended complaint (Defs. Ex. B at ¶¶ 9(d)(iv)-(v)) "because they seem relevant only to a theory that an unreasonably prolonged detention (even without risk of serious harm) is unconstitutional").

**\*3** Kozlowski and Walker acknowledge they are putative class members in *Hart* and that Judge Zagel has not ruled on class certification. Pls. Mem. at 8. By filing the present case, they attempt to revive the protracted detention claim dismissed in *Hart.See id.*Whether *Hart* provides a basis for tolling the limitations period depends on whether the tolling doctrine applies to their claims.

#### B. Applicability of the Tolling Doctrine

First established in *American Pipe & Construction Co. v. Utah,* the tolling doctrine provides that if a class action is timely filed, the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

limitations period stops running for all putative class members. 414 U.S. 538, 554, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). This doctrine serves to avoid multiplication of intervention motions by putative class members before class certification is decided. *See id.* at 551.The doctrine protects "the principal purposes of the class action procedure-promotion of efficiency and economy of litigation."*Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 349, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983). To achieve this purpose, the doctrine should not be applied to a putative class member who multiplies proceedings by filing a new action while class certification is pending.

A clear majority of federal courts has followed this approach. In *Glater v. Eli Lilly & Co.,* the First Circuit refused to toll the limitations period for a plaintiff who filed her individual suit while class certification was pending. 712 F.2d 735, 739 (1st Cir.1983). The First Circuit reasoned that judicial economy "would not be served, and in fact would be disserved, by guaranteeing a separate suit at the same time that a class action [was] ongoing."*Id.* Applying the same rationale in *Wyser-Pratte Management Co. v. Telxon Corp.,* the Sixth Circuit held that putative class members forfeited the benefit of the tolling doctrine if they filed individual actions during the pendency of class certification. 413 F.3d 553, 569 (6th Cir.2005). The weight of authorities militates against applying the tolling doctrine to the present case because class certification in *Hart* is pending.[FN1]

> FN1.*See, e.g., In re WorldCom, Inc. Sec. Litig.,* 294 F.Supp.2d 431, 452 (S.D.N.Y.2003); *In re Ciprofloxacin Hydrochloride Antitrust Litig.,* 261 F.Supp.2d 188, 221 (E.D.N.Y.2003); *Chinn v. Giant Food, Inc.,* 100 F.Supp.2d 331, 335 (D.Md.2000); *Rahr v. Grant Thornton LLP,* 142 F.Supp.2d 793, 800 (N.D.Tex.2000); *In re Brand Name Prescription Drugs Antitrust Litig.,* Nos. 94C897, MDL997, 1998 WL 474146, at *8 (N.D.Ill. Aug.6, 1998); *Stutz v. Minn. Mining & Mfg. Co.,* 947 F.Supp. 399, 404 (S.D.Ind.1996); *Chemco, Inc. v. Stone, McGuire & Benjamin,* No. 91 C 5041, 1992 WL 188417, at *2 (N.D.Ill. July 29, 1992); *Pulley v. Burlington N., Inc.,* 568 F.Supp. 1177, 1179-80 (D.Minn.1983); *Wachovia Bank & Trust Co. v. Nat'l Student*

*Mktg. Corp. .,* 461 F.Supp. 999, 1012 (D.D.C.1978); *but see Rochford v. Joyce,* 755 F.Supp. 1423, 1428 (N.D.Ill.1990) (limitations period tolled for individual plaintiffs because defendants could move to consolidate putative class actions).

Arguing the contrary, plaintiffs rely on *Yang v. Odom,* 392 F.3d 97 (3d Cir.2004), and *Catholic Social Services, Inc. v. Immigration and Naturalization Service,* 232 F.3d 1139 (9th Cir.2000) (en banc ).*Yang* and *Catholic* are distinguishable because class certification in both cases had been decided. *Yang* applied the tolling doctrine to plaintiffs after class certification in a previous action was denied. *Yang,* 392 F.3d at 112. Similarly, *Catholic* dealt with a situation where individual plaintiffs from a previously-dismissed class action sought to file a new class action.*Catholic,* 232 F.3d at 1147 ("[s]trickly speaking, this is not a statute of limitations question at all"). Neither case sheds any light on the situation here because class certification in *Hart* is still pending. Thus, plaintiffs' argument on the applicability of the tolling doctrine must fail.

**\*4** Plaintiffs advance an alternative argument that Judge Zagel's dismissal of Hart's protracted detention claim constitutes denial of class certification. Because plaintiffs assert only the protracted detention claim, they conclude tolling is applicable. This argument not only lacks a legal basis, but also incorrectly assumes their case may proceed under the protracted detention theory.

As discussed above, *Hart* forecloses claims based on protracted detention alone. Plaintiffs point to one sentence in *Hart:*"[U]nless inmates can go between tiers, once a tier has been searched there is no apparent reason why the inmates in that tier can't be let out of their cells."Pls. Memo. at 3 (quoting *Hart,* 396 F.3d at 893). This sentence, they assert, subjects their protracted detention to constitutional scrutiny. Pls. Mem. at 3. But the quoted sentence must be read in the context: *"These consequences* [resulting from the lack of access to medical care and guard protection] might ... condemn the administration of the jail if there ... [exists an]other way to conduct the lockdown."*Hart,* 396 F.3d at 893 (emphasis added). The sentence quoted by plaintiffs addresses only the claims based on lack of access to guards, and does not validate claims based on

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                 Page 4
Not Reported in F.Supp.2d, 2005 WL 3436394 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

protracted detention alone. Plaintiffs' argument has no merit.

Under *Hart,* plaintiffs may not sue for protracted detention. *Id.* at 894. The court need not address the parties' arguments based on other issues. The present case may proceed, if at all, only under the theory that defendants subjected the inmates "to a risk of serious harm by an unreasonably protracted detention of them out of sight and hearing of the guards." *Id.* The present case parallels *Hart;* the tolling doctrine does not apply when class certification in *Hart* is pending. Because the two-year limitations period has expired, the present case must be dismissed.

## CONCLUSION

For the reasons set forth above, the motion to dismiss is granted.

N.D.Ill.,2005.
Kozlowski v. Sheahan
Not Reported in F.Supp.2d, 2005 WL 3436394 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

LEXSEE 2007 U.S. DIST. LEXIS 70782

**SHRINERS HOSPITALS FOR CHILDREN, a Colorado corporation, Plaintiff, v. QWEST COMMUNICATIONS INTERNATIONAL INC., a Delaware corporation having its principal office and place of business in Denver, Colorado, et al., Defendants.**

**Civil Case No. 04-cv-00781-REB-KLM (Consolidated with Civil Action No. 06-cv-02189)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO**

*2007 U.S. Dist. LEXIS 70782; Fed. Sec. L. Rep. (CCH) P94,392*

**September 24, 2007, Decided
September 24, 2007, Filed**

**PRIOR HISTORY:** *Shriners Hosps. for Children v. Qwest Communs. Int'l, Inc., 2005 U.S. Dist. LEXIS 40044 (D. Colo., Sept. 23, 2005)*

**COUNSEL:** [*1] For Shriners Hospitals for Children, a Colorado corporation, Plaintiff: Charles G. Michaels, LEAD ATTORNEY, Charles G. Michaels, Attorney at Law, Denver, CO; I. Walton Bader, LEAD ATTORNEY, Bader & Bader, LLP, White Plains, NY.

For Qwest Communications International, Inc., a Delaware corporation having its principal office and place of business in Denver, Colorado, Defendant: Alfred P. Levitt, David Robert Boyd, Jonathan D. Schiller, LEAD ATTORNEYS, Boies, Schiller & Flexner, LLP-DC, Washington, DC; Kenneth F. Rossman, IV, LEAD ATTORNEY, Boies, Schiller & Flexner, LLPOakland Oakland, Oakland, CA; Marcy Marie Heronimus, Terence C. Gill, LEAD ATTORNEYS, Sherman & Howard, L.L.C.-Denver, Denver, CO.

For William L. Eveleth, Defendant: Karoline E. Jackson, Larry A. Mackey, LEAD ATTORNEYS, Barnes & Thornburg-Indianapolis, Indianapolis, IN.

For Douglas K. Hutchins, Defendant: Douglas P. Lobel, LEAD ATTORNEY, Cooley Godward Kronish, LLP-Reston, Reston, VA; John M. Richilano, LEAD ATTORNEY, Richilano & Gilligan, P.C., Denver, CO.

For Bryan K. Treadway, Defendant: James E. Scarboro, LEAD ATTORNEY, Arnold & Porter LLP-Denver, Denver, CO; M. Robert Thornton, LEAD ATTORNEY, Benjamin Lee, King & Spalding, [*2] LLP-Atlanta, Atlanta, GA.

For John M. Walker, Defendant: Douglas P. Lobel, LEAD ATTORNEY, Cooley Godward Kronish, LLP-Reston, Reston, VA; James E. Scarboro, LEAD ATTORNEY, Arnold & Porter LLP-Denver, Denver, CO; Stephen C. Peters, LEAD ATTORNEY, Lindquist & Vennum, P.L.L.P.-Colorado, Denver, CO.

For Richard L. Weston, and "DOES" numbers 1 through 10, Defendant: Douglas P. Lobel, LEAD ATTORNEY, Cooley Godward Kronish, LLP-Reston, Reston, VA; James E. Scarboro, LEAD ATTORNEY, Arnold & Porter LLP-Denver, Denver, CO; Robert Thomas Cahill, Jr., Cooley Godward Kronish, LLP-Reston, Reston, VA.

For Arthur Anderson & Company, Defendant: Scott B. Schreiber, LEAD ATTORNEY, Arnold & Porter LLP-DC, Washington, DC.

For Qwest Capital Funding, Inc., a Delaware Corporation, Defendant: Alfred P. Levitt, David Robert Boyd, Jonathan D. Schiller, LEAD ATTORNEYS, Boies, Schiller & Flexner, LLP-DC, Washington, DC.

For Philip F. Anschutz, Craig D. Slater, Defendants: Michael James Hofmann, LEAD ATTORNEY, Holme, Roberts & Owen, LLP-Denver, Denver, CO.

For Gregory M. Casey, Defendant: Richard L. Jacobson, LEAD ATTORNEY, Arnold & Porter LLP-DC, Washington, DC; Walter W. Garnsey, Jr., LEAD ATTORNEY, Kelly Garnsey Hubbell [*3] & Lass, LLC, Denver, CO.

Case 1:07-cv-06543     Document 21-2     Filed 02/22/2008     Page 23 of 26

Page 2

2007 U.S. Dist. LEXIS 70782, *; Fed. Sec. L. Rep. (CCH) P94,392

For Stephen M. Jacobsen, Lewis O. Wilks, and "Does" numbers 1 through 10, Defendants: Ty Cobb, LEAD ATTORNEY, Hogan & Hartson, LLP-DC, Washington, DC.

For Afshin Mohebbi, Defendant: Barbara C. Moses, LEAD ATTORNEY, Morvillo, Abramowitz, Grand, Iason, Anello & Bohrer, PC, New York, NY.

For Joseph P. Nacchio, Defendant: Herbert J. Stern, LEAD ATTORNEY, Stern & Kilcullen, LLC, Roseland, NJ.

For Frank L. Noyes, Defendant: Forrest W. Lewis, LEAD ATTORNEY, Forrest W. Lewis, P.C., Denver, CO.

For James A. Smith, Defendant: Robert Nolen Miller, LEAD ATTORNEY, Perkins Coie, LLP-Denver, Denver, CO.

For Robin R. Szeliga, Defendant: Mark T. Drooks, LEAD ATTORNEY, Bird, Marella, Boxer, Wolpert, Nessim, Drooks & Lincenberg, Los Angeles, CA.

For Drake S. Tempest, Defendant: James E. Nesland, LEAD ATTORNEY, Cooley Godward Kronish, LLP-Broomfield, Broomfield, CO.

For Marc B. Weisberg, Defendant: David A. Zisser, LEAD ATTORNEY, Isaacson Rosenbaum, P.C., Denver, CO.

**JUDGES:** Robert E. Blackburn, United States District Judge.

**OPINION BY:** Robert E. Blackburn

**OPINION**

**ORDER CONCERNING DEFENDANTS' MOTIONS TO DISMISS**

**Blackburn, J**

This matter is before me on the **Motion of Qwest Communications International Inc. and Qwest Capital [*4] Funding To Dismiss Claims Filed in *Shriners Hospitals for Children v. Arthur Andersen & Company, et al.* [# 117], filed January 16, 2007. The plaintiff filed a response [# 126], and the defendants filed a reply [# 129]. Recently, the defendants filed a memorandum of supplemental citations [# 139] discussing recent opinions of the United States Courts of Appeals for the Second and Ninth Circuits on the tolling issue that is at the heart**

of Qwest's motion. I grant the motion in part and deny it in part.

**I. JURISDICTION**

The motion to dismiss concern claims asserted by plaintiff Shriners Hospitals for Children (SHC) in Case No. 06-cv-02189. Case No. 06-cv-02189 has been consolidated with Case No. 04-cv-00781-REB-KLM. SHC alleges a claim under *§ 10(b) of the Securities Exchange Act of 1934* (the 1934 Act). I have jurisdiction over this claim under *15 U.S.C. § 78aa*, and *28 U.S.C. § 1331*. The plaintiff asserts claims also under Colorado law. I have supplemental jurisdiction over the state law claims under *28 U.S.C. § 1367*.

**II. BACKGROUND** SHC's complaint in 04-cv-00781 concerns alleged securities fraud and related claims pertaining to the securities of defendant Qwest Communications International, [*5] Inc. The claims in 04-cv-00781 are based on two specific transactions undertaken by Qwest. I will refer to 04-cv-00781 as *Shriners I.* I note that *Shriners I* was filed during the pendency of *In re Qwest Communications International, Inc. Securities Litigation,* Case No. 01-cv-01451 (*In re Qwest*). At that time *In re Qwest* was a proposed class action case concerning allegations of securities fraud by Qwest and other defendants. In September, 2006, I certified a settlement class in *In re Qwest,* and approved a class settlement between the plaintiff class and all but two of the defendants. SHC was a member of the plaintiff class in *In re Qwest,* but SHC opted out of the *In re Qwest* class action during the opt out period.

On October 31, 2006, shortly after I approved the settlement in *In re Qwest,* SHC filed a new case concerning allegations of securities fraud at Qwest, Case No. 06-cv-002189. I will refer to 06-cv-002189 as *Shriners II.* I note that *Shriners II* also concerns allegations of securities fraud at Qwest, but the complaint includes additional defendants, factual allegations not at issue in *Shriners I,* and claims not at issue in *Shriners I.* As noted above, *Shriners II* has been consolidated [*6] with *Shriners I.*

In their motion to dismiss, defendants Qwest Communications and Qwest Capital Funding, Inc., seek dismissal of all of the claims asserted in *Shriners II.* SHC has stipulated to the dismissal of Qwest Capital Funding, without prejudice. Qwest's primary argument for dismissal is that the applicable statutes of limitations have expired as to all claims in *Shriners II.* This issue concerns the question of whether or not the applicable statutes of limitation were tolled during the pendency of the *In re Qwest* class action. Qwest argues also that, even if the statutes of limitation were tolled, the tolling applies only to claims asserted in *In re Qwest,* and not to other claims. Qwest Capital Funding argues that it was not a

Case 1:07-cv-06543    Document 21-2    Filed 02/22/2008    Page 24 of 26

Page 3

2007 U.S. Dist. LEXIS 70782, *; Fed. Sec. L. Rep. (CCH) P94,392

defendant in *In re Qwest,* that any tolling based on the pendency of *In re Qwest* does not apply to Qwest Capital Funding, and that the claims against Qwest Capital Funding are time barred. Finally, Qwest argues that SHC's allegations are insufficient to state claims for relief for common law fraud, negligent misrepresentation, and breach of fiduciary duty. I address these issues in turn.

## III. APPLICABILITY OF *AMERICAN PIPE* TOLLING

Qwest argues that the statutes [*7] of limitation applicable to the claims in *Shriners II* began to run in early 2002. This is correct. The claims asserted in *Shriners II* are subject to statutes of limitation of two or three years, depending on the claim. The complaint in *Shriners II* was filed in October, 2006. Absent a tolling of the applicable periods of limitation, the claims in *Shriners II* are time barred.

SHC argues that the periods of limitation applicable to its claims were tolled during the pendency of the *In re Qwest* class action. SHC relies on the tolling doctrine established in *American Pipe and Construction Co. v. Utah, 414 U.S. 538, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974).* In *American Pipe,* a putative class action was filed, but class certification was denied eventually. An individual plaintiff then sought to intervene, pursuing identical claims, but after the statute of limitations had expired. The Supreme Court concluded that the statute of limitation on the individual plaintiff's claims had been tolled while the putative class action was pending. "(T)he filing of a timely class action complaint commences the action for all members of the class as subsequently determined." *American Pipe, 414 U.S. at 550.* "(T)he commencement of a class action [*8] suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id. at 554.* In a subsequent case, the Court held later that "(o)nce the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action." *Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 350, 103 S. Ct. 2392, 76 L. Ed. 2d 628 (1983).*

In an earlier order in *Shriners I,* I noted that SHC had expressed a desire to amend its complaint to add additional claims. Although no motion to amend the complaint was pending, I discussed the applicability of *American Pipe* tolling to this case. *Order Concerning Defendants' Motions to Dismiss [# 78],* filed September 23, 2005. Adopting the reasoning outlined in *In re WorldCom, Inc. Securities Litigation, 294 F.Supp.2d 431 (S.D.N.Y. 2003),* I concluded that a plaintiff who is a member of a putative class and who files an action independent of the class before the class is certified, or class certification is denied, cannot benefit from *American* [*9] *Pipe* tolling. SHC apparently did not seek to amend its complaint in *Shriners I* based on that portion of my order.

The district court's decision in *In re WorldCom* was reversed recently by the United States Court of Appeals for the Second Circuit. The Second Circuit noted that the "theoretical basis on which *American Pipe* rests is the notion that class members are treated as parties to the class action 'until and unless they received notice thereof and chose not to continue.'" *In re WorldCom Securities Litigation, F.3d , , 2007 U.S. App. LEXIS 17797, *26, 2007 WL 2127874, *9 (2nd Cir. 2007)* (quoting *American Pipe, 414 U.S. at 551).* The *WorldCom* court discussed *American Pipe* and subsequent cases in which the Supreme Court addressed tolling when a proposed class action is pending:

> Nothing in the Supreme Court decisions described above suggests that the rule should be otherwise for a plaintiff who files an individual action before [class] certification is resolved. To the contrary, the Supreme Court has repeatedly stated that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue [*10] as a class action.

*Id.* (quotation and citations omitted).

The opposing view of this issue, which holds that *American Pipe* tolling does not apply when a plaintiff files a separate suit before a decision has been made on class certification, has been adopted by several district courts and by the Sixth Circuit. *Wyser-Pratte Management Co., Inc. v. Telxon Corp., 413 F.3d 553, 568 - 569 (6th Cir. 2005).* The basic rationale for this position is that the "purposes of *American Pipe* tolling are not furthered when plaintiffs file independent actions before decision on the issue of class certification, but are when plaintiffs delay until the certification issue has been decided." *Id. at 569.*

Having reviewed this issue again, and in light of the Second Circuit's recent opinion in *In re WorldCom Securities Litigation,* I conclude that *American Pipe* tolling is applicable to SHC, even though SHC filed *Shriners I* while the issue of class certification still was pending in *In re Qwest.* The Supreme Court's repeated statement that the filing of a class action "suspends the applicable statute of limitations as to all asserted members of the

Case 1:07-cv-06543    Document 21-2    Filed 02/22/2008    Page 25 of 26

Page 4

2007 U.S. Dist. LEXIS 70782, *; Fed. Sec. L. Rep. (CCH) P94,392

class" should be taken at face value. Further, it is important to [*11] note that the filing of a separate lawsuit by a putative class member does not automatically cause that putative class member to be removed from the putative class. In this case, SHC was not treated as having opted out of the *In re Qwest* class when SHC filed a separate suit. Rather, SHC was treated as having oped out of the putative class in *In re Qwest* only when SHC formally opted out of the plaintiff class in *In re Qwest*. Application of *American Pipe* tolling to a plaintiff who chooses to file a separate suit while the issue of class certification is unresolved does not fundamentally undermine the primary purposes of the *American Pipe* tolling doctrine. Therefore, the rule as stated by the Supreme Court should be applied as stated.

However, It must be noted that there is a significant limitation on *American Pipe* tolling. The filing of a putative class action complaint tolls the period of limitations only for claims that are identical to the claims asserted in the putative class action complaint. *Johnson v. Railway Express Agency, 421 U.S. 454, 467 n.14, 95 S. Ct. 1716, 44 L. Ed. 2d 295 (1975).* The "tolling rule of *American Pipe* . . . should not be read . . . as leaving a Plaintiff free to raise different or peripheral [*12] claims following denial of class status." *Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 354, 103 S. Ct. 2392, 76 L. Ed. 2d 628 (1983)* (Powell, J, concurring). "It is important to make certain . . . that *American Pipe* is not abused by the assertion of claims that differ from those raised in the original class suit." *Id. at 355.*

One important reason for this rule is that the defendant is put on notice of the nature of the claims against it when a class action is filed, and the defendant then can take measures to address and defend against those claims while they are relatively fresh. If *American Pipe* tolling is applied to all possible claims against the defendant, then depending on the relevant nucleus of operative facts, a defendant may be confronted with new claims, of which it was not previously notified, years after the relevant facts occurred. Such claims would be the "different or peripheral claims" that Justice Powell warned should not be included within the generous *American Pipe* tolling rule.

## IV. APPLICATION OF STATUTES OF LIMITATION TO PLAINTIFF'S CLAIMS

### A. State Law & *§ 10(b)* Claims Against Qwest

To the extent SHC asserts claims in *Shriners II* that were asserted also in *In re Qwest,* the applicable periods of [*13] limitation were tolled until the plaintiff class in In re Qwest was certified in September, 2006. however, the *American Pipe* toll is not applicable to claims asserted in *Shriners II* that were not asserted in *In re Qwest.*

No claims under Colorado law were asserted in *In re Qwest.* The complaint in *Shriners II* includes claims against Qwest under Colorado law in counts three, four, five, and six. SHC does not dispute Qwest's assertion that three year periods of limitation are applicable to these state law claims. *Qwest's motion to dismiss* [# 117], filed January 16, 2007, p. 6, n. 6. These claims accrued in 2002, and SHC did not file the complaint in *Shriners II* until October of 2006. Therefore, each of SHC's claims under Colorado law are time barred and must be dismissed.

SHC's claim against Qwest under *§ 10(b)*, Count One of the *Shriners II* complaint, is subject to the *American Pipe* toll. A *§ 10(b)* claim based on essentially the same alleged facts was asserted in *In re Qwest.* Qwest argues that SHC should not be permitted to assert its claims based on essentially the same alleged facts in two different complaints filed under two different case numbers. Considering the unusual procedural posture [*14] of these cases and the efficiencies that can be achieved with consolidation of the two cases, I conclude that this circumstance does not preclude SHC from pursuing the claims it asserts in *Shriners II.*

SHC argues that its complaint in *Shriners II* relates back to its complaint in *Shriners I,* and, thus, its new claims must be deemed to have been filed in March, 2004, when the *Shriners I* complaint was filed. I disagree. *Shriners II* is a newly filed case, and is not an amendment to the *Shriners I* complaint. Therefore, the relation back provision of *FED. R. CIV. P. 15* is inapplicable.

### B. Qwest Capital Funding

Qwest Capital Funding, Inc., was not named as a defendant in *In re Qwest. American Pipe* tolling does not apply to a defendant that was not named as a defendant in the class action on which the tolling is based. For the purpose of applying the *American Pipe* toll, a party who is not named as a defendant in the class action cannot be seen as having been notified of the claims against it in the class action. Therefore, it would be improper to apply the toll to such a defendant.

Again, SHC's state law claims are subject to a three year period of limitation. SHC's *§ 10(b)* claim is subject to [*15] a two year period of limitation. *28 U.S.C. § 1658.* Any claims SHC may have had against Qwest Capital Funding, Inc., accrued in 2002, and SHC did not file the complaint in *Shriners II* until October of 2006. Thus, SHC's claims against Qwest Capital Funding, Inc., are time barred and must be dismissed.

2007 U.S. Dist. LEXIS 70782, *; Fed. Sec. L. Rep. (CCH) P94,392

## IV. CONCLUSION & ORDERS

Applying the *American Pipe* toll to claims that were asserted in *In re Qwest*, SHC's claim under *§ 10(b)*, as asserted in *Shriners II*, is not time barred. However, the *American Pipe* toll is not applicable to SHC's state law claims against Qwest, as asserted in counts three, four, five, and six of the *Shriners II* complaint, and these claims are time barred. Further, all of SHC's claims against Qwest Capital Funding, Inc., are time barred. Qwest argues also that SHC's state law claims must be dismissed for failure to state a claim on which relief can be granted. Because those claims have been dismissed because they are time barred, I will not address Qwest's arguments that these claims are pled inadequately.

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Motion of Qwest Communications International Inc. and Qwest Capital Funding To Dismiss Claims Filed in *Shriners Hospitals** [*16] *for Children v. Arthur Andersen & Company, et al.* [# 117], filed January 16, 2007, is **GRANTED** as to the claims asserted against Qwest Communications International, Inc., in counts three, four, five, and six of the complaint [# 1] in *Shriners II*, Case No. 06-cv-02189-REB-KLM;

2. That accordingly, the claims asserted against Qwest Communications International, Inc., in counts three, four, five, and six of the complaint [# 1] in *Shrin-ers II*, Case No. 06-cv-02189-REB-KLM, are **DISMISSED** as to Qwest Communications International, Inc.;

3. That the **Motion of Qwest Communications International Inc. and Qwest Capital Funding To Dismiss Claims Filed in *Shriners Hospitals for Children v. Arthur Andersen & Company, et al.* [# 117], filed January 16, 2007, is **GRANTED** as to all claims asserted against Qwest Capital Funding, Inc., in the complaint [# 1] in *Shriners II*, Case No. 06-cv-02189-REB-KLM;

4. That Qwest Capital Funding, Inc., is **DROPPED** as a party to this action, and the caption shall be amended accordingly;

5. That the **Motion of Qwest Communications International Inc. and Qwest Capital Funding To Dismiss Claims Filed in *Shriners Hospitals for Children v. Arthur Andersen & Company, et al.* [# 117], [*17] filed January 16, 2007, is **DENIED** otherwise.

Dated September 24, 2007, at Denver, Colorado.

**BY THE COURT:**

**s/ Robert E. Blackburn**

**United States District Judge**