IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LONG BEACH MORTGAGE COMPANY TRUTH IN LENDING ACT FAMILY RIDER LITIGATION | MDL CASE NO. 07 CV 06543 |
| | Centralized before Judge Wayne R. Andersen |
| THIS DOCUMENT RELATES TO | |
| *Navara v. Long Beach Mortgage Co.* U.S.D.C., N.D. Ill., Civil Action No. 05-0864 | |
| *Carye v. Long Beach Mortgage Co.* U.S.D.C., D. Mass., Civil Action No. 06-10887 (N.D. Ill. Civil Action No. 07-06544) | |
| *Shelton v. Long Beach Mortgage Co.* U.S.D.C., N.D. Ill., Civil Action No. 06-2323 | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant Washington Mutual Bank f/k/a Long Beach Mortgage Company ("Long Beach") submits this memorandum of law in support of its motion for partial summary judgment. As demonstrated below, the Court should dismiss, with prejudice, the TILA 1-4 Family Rider Claim asserted by each of the four named plaintiffs, Guadalupe Navara, Albert Stinson, Eric Shelton, and Charlene Sullivan (collectively "Plaintiffs") in Count I of the Consolidated Class Action Complaint.

The undisputed evidence demonstrates that three of the plaintiffs (Navara, Stinson, and Shelton) did not obtain their mortgage loans primarily for a personal purpose and therefore

1

cannot assert any claims under the Truth in Lending Act ("TILA"). The fourth named plaintiff (Sullivan) filed a Chapter 7 bankruptcy proceeding after initially filing suit against Long Beach and therefore lacks standing to maintain that claim, as it remains an asset of her bankruptcy estate. Accordingly, Long Beach requests that the Court enter summary judgment and dismiss, with prejudice, all TILA claims asserted by the named Plaintiffs.[1]

## FACTUAL BACKGROUND

In the Consolidated Class Action Complaint, Plaintiffs allege that Long Beach violated TILA by including a 1-4 Family Rider in Plaintiffs' mortgage contracts. (Cons. Compl., Dkt. No. 19, ¶¶ 26-29). According to Plaintiffs, the Rider gave Long Beach a security interest in Plaintiffs' personal property that should have been disclosed on Plaintiffs' TILA Disclosure Statements. (*Id.* at ¶ 27). Plaintiffs do not contend that the execution of the Rider caused Plaintiffs (or the putative class members) to sustain any actual damages such as loss of personal property through a foreclosure; instead, Plaintiffs only seek statutory damages and attorneys' fees for Long Beach's alleged TILA violation. (*Id.* at ¶ 35). To support their TILA claim, each of the four Plaintiffs alleges that they obtained their mortgage loan primarily for personal, family or household purposes. (*Id.* at ¶¶ 10, 13, 17, 20).

**A.     Plaintiff Guadalupe Navara**

On April 29, 2004, Ms. Navara obtained a $50,000 mortgage loan from Long Beach that was secured by real property located at 2715 S. Kostner, Chicago, Illinois. (*See* Local Rule 56.1

---

[1] The Consolidated Complaint identified one other proposed class representative (Mirlaine Jeune), who asserted a similar family rider claim under the Massachusetts Consumer Credit Cost Disclosure Act (the "MCCCDA") on behalf of a proposed Massachusetts-only class. (Cons. Compl., ¶¶ 36-45). After Plaintiffs filed their class certification motion and after Long Beach initiated discovery to Plaintiffs, Jeune's counsel indicated that she would voluntarily dismiss her claim. Although Ms. Jeune's counsel provided a draft stipulation of dismissal that Long Beach's counsel approved, Plaintiffs have yet to file the stipulation of dismissal.

Statement of Material Facts ("SOF"), ¶ 8). As part of her mortgage loan, Ms. Navara executed a 1-4 Family Rider. (SOF ¶ 9).

The property at 2715 S. Kostner consists of one building with two apartments and a coach house, and Ms. Navara leases the two apartments for rental income. (SOF ¶ 10). Ms. Navara's tax returns for 2003 through 2005 listed properties at 2715 S. Kostner and 2843 Drake Avenue in Chicago as "rental real estate property" on line 1 of the supplemental income schedule. (SOF ¶ 11). When asked whether she used the rental properties listed in line 1 for personal purposes, Ms. Navara checked the box marked "No." (SOF ¶ 12). This enabled Ms. Navara to deduct from her rental income all expenses associated with her rental properties, which she could not have done if she lived there. (SOF ¶ 13).

Further, Ms. Navara's only source of income comes from the rental income generated by the two apartments at 2715 S. Kostner and separate rental property at 2843 Drake Avenue. (SOF ¶ 14). For example, in 2005, Ms. Navara did not report any income on her tax return other than net income from her rental real estate properties. (SOF ¶ 15). Similarly, for 2003 and 2004, all of Ms. Navara's income (other than nominal interest income) was generated from the net income from her rental real estate properties. (SOF ¶¶ 16-17). Indeed, Ms. Navara's primary occupation entails managing and renting the apartments. (SOF ¶ 18).

**B.    Plaintiff Albert Stinson**

On April 12, 2006, Mr. Stinson executed two 1-4 Family Rider forms in connection with two mortgage loans that he obtained from Long Beach secured by real property located at 5402 S. Shields Avenue, Chicago, Illinois. (SOF ¶ 19). Mr. Stinson admits that he *never* lived at the 5402 S. Shields property. (SOF ¶ 20). Instead, during the few months that owned 5402 S. Shields, Mr. Stinson leased the property to a tenant to make the monthly mortgage payment. (SOF ¶ 21).

3

Further, in his 2006 income tax return, Mr. Stinson listed the property at 5402 S. Shields in line 1 of the supplemental income schedule as "rental real estate property." (SOF ¶ 22). When asked whether he used the property listed in line 1 for personal purposes, Mr. Stinson checked the box marked "No." (SOF ¶ 23). Indeed, Mr. Stinson reported a loss against his income based on expenses associated with maintaining 5402 S. Shields as rental property. (SOF ¶ 24).

C.     **Plaintiff Eric Shelton**

Mr. Shelton obtained a mortgage loan from Long Beach in July 2005 to finance the purchase of a building at 6800 S. Artesian Avenue, Chicago, Illinois. (SOF ¶ 25). Mr. Shelton executed a 1-4 Family Rider in connection with his mortgage loan. (SOF ¶ 26). Mr. Shelton purchased the property at 6800 S. Artesian solely to help out his friend (Michael Bibbs) who was the beneficial owner of the property due to an inheritance. (SOF ¶¶ 27-28). Apparently, Mr. Bibbs needed a buyer for the property so that he could get access to the building from a relative who was preventing Mr. Bibbs from accessing the building. (SOF ¶ 29). Accordingly, another friend of Mr. Bibbs and Mr. Shelton (Andre Colbert) made the arrangements with a realtor (Michelle Smith) for Mr. Shelton to act as the purchaser due to Mr. Shelton's supposed good credit. (SOF ¶ 30).

When Mr. Shelton was first approached about buying the 6800 S. Artesian building, he did not intend to move into the property and live there but instead was just going to rent it out. (SOF ¶ 31). Indeed, at the time of this purchase, Mr. Shelton's only source of income was the $500 in social security benefits that he received each month, as he has never worked a day in his life. (SOF ¶ 32). Mr. Shelton therefore anticipated that he would derive income to make the monthly mortgage payment with $700 in rental income from a second floor tenant and $500 in rental income from Mr. Bibbs. (SOF ¶ 33).

4

D.   **Plaintiff Charlene Sullivan**

In July 2005, Ms. Sullivan obtained a mortgage loan from Long Beach that was secured by real property located at 190 Littlefield Street in Pawtucket, Rhode Island. (SOF ¶ 34). As part of her Long Beach mortgage loan, Ms. Sullivan executed a 1-4 Family Rider. (SOF ¶ 35). The loan was used to re-finance two mortgage loans that Ms. Sullivan obtained when she first bought the property. (SOF ¶ 36).

On May 16, 2007, Ms. Sullivan commenced a Chapter 7 bankruptcy proceeding with the U.S. Bankruptcy Court for the District of Rhode Island. (SOF ¶ 37). In one of her schedules to the bankruptcy petition, Ms. Sullivan disclosed her lawsuit against Long Beach as an asset of her estate. (SOF ¶ 38). A few months later, in August 2007, Ms. Sullivan obtained a discharge from the Bankruptcy Court but the trustee never formally abandoned Ms. Sullivan's claim against Long Beach. (SOF ¶ 39).

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The United States Supreme Court has interpreted Rule 56(c) to mandate "the entry of summary judgment after adequate time for discovery against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The motion should be granted "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c) is satisfied." *Id.* at 323. The "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but, rather as an integral part of the federal rules as a whole,

5

which are designed to secure the just, speedy and inexpensive determination of every action." *Id.* at 327.

# ARGUMENT

I. **Plaintiffs Navara, Stinson, and Shelton Cannot Maintain Any Claims Under TILA Because They Did Not Obtain Their Loans Primarily For A Personal Purpose.**

The disclosure requirements under TILA apply only to "consumer credit" transactions, which are defined as transactions extended "*primarily* for personal, family or household purposes." 15 U.S.C. § 1602(h) (emphasis added). Credit transactions primarily for "business or commercial purposes" are not subject to TILA's disclosure requirements. *See* 15 U.S.C. § 1603(1); 12 C.F.R. § 226.3(a). Moreover, merely providing TILA disclosures is not determinative of whether the loan was used for business or consumer purposes. *See* Supplement I to 12 C.F.R. § 226.3, at Commentary 3(a)(1).[2]

For loans involving rental property, the TILA Commentary makes it clear that loans obtained in connection with non-owner-occupied property are "deemed to be for business purposes" and thus not subject to TILA. *See* Commentary 3(a)(3); *see also Johnson v. Wells Fargo Home Mortgage, Inc.*, No. 05-CV-0321, 2007 WL 3226153, at *5-6 (D. Nev. Oct. 29, 2007) (finding that loan to obtain non-owner occupied rental property was a business purpose loan under Regulation Z). As for loans involving owner-occupied rental property, the TILA Commentary provides that courts should consider the following factors:

- The relationship of the borrower's primary occupation to the acquisition (the more closely related, the more likely it is to be a business purpose);

- The degree to which the borrower will personally manage the acquisition (the more personal involvement there is, the more likely it is to be a business purpose);

---

[2] The excerpts of the TILA Commentary cited in this brief are included in the attached Appendix of Unreported Cases.

6

- The ratio of income from the acquisition to the total income of the borrower (the higher the ratio, the more likely it is to be a business purpose);

- The size of the transaction (the larger the transaction, the more likely it is to be a business purpose); and

- The borrower's statement of purpose for the loan.

*See* Commentary 3(a)(2); *see also Roman v. First Franklin Fin. Corp.*, No. 00-C-7228, 2001 U.S. Dist. LEXIS 3968, at *7-8 (N.D. Ill. April 2, 2001) (discussing factors listed in Commentary).

### A.   Navara.

In this case, Ms. Navara cannot maintain a TILA claim because she obtained her Long Beach loan in connection with non-owner occupied rental property. *See* Commentary 3(a)(3); *Johnson*, 2007 WL 3226153, at *5-6. The undisputed evidence demonstrates that Ms. Navara did not live at 2715 S. Kostner, the property that was used as security for her Long Beach mortgage loan. Indeed, she represented to the IRS that 2715 S. Kostner was "rental real estate property" that she did not use for personal purposes. (SOF ¶¶ 11-12). Because Ms. Navara represented to the IRS that she did not use the property for personal purposes, she cannot prove as a matter of law that her loan was subject to TILA. Indeed, if she attempted to do so, she would have to admit and prove that she made fraudulent representations to the IRS (and therefore committed income tax fraud).

Moreover, even if her rental property was owner-occupied (which Ms. Navara told the IRS it was not), Ms. Navara's only source of income at the time she obtained her loan was the rental income generated by the two apartments at 2715 S. Kostner, along with two other apartments at 2843 Drake Avenue in Chicago. (SOF ¶¶ 14-17). Indeed, Ms. Navara's primary

occupation entailed managing and renting these apartments. (SOF ¶ 18). As discussed above, in determining whether a loan was obtained for a business or personal purpose, the Court should consider the ratio of income generated by the rental property with a borrower's total income and should also consider the extent to which the borrower managed the rental property. *See* Commentary 3(a)(2). Because Ms. Navara's only source of income was generated through rental income from her rental properties and because her primary occupation was managing the properties, Ms. Navara's loan was not obtained primarily for a personal purpose and thus was not subject to TILA. As such, the Court should enter summary judgment and dismiss, with prejudice, Ms. Navara's TILA claims.[3]

    **B.    Stinson.**

Mr. Stinson also cannot pursue his TILA claim as the property covered by his Long Beach loan was non-owner occupied rental property. *See Johnson*, 2007 WL 3226153, at *5-6. Mr. Stinson readily admitted in his deposition that he ***never*** lived at the property and simply rented it out to a tenant to make the monthly mortgage payments. (SOF ¶¶ 20-21). This is further confirmed by Mr. Stinson's tax returns in which he classified the property as "rental real estate property" and represented to the IRS that he did not use the property for personal purposes. (SOF ¶¶ 22-23). Indeed, he actually took a loss against his income for expenses incurred in maintaining the rental property. (SOF ¶ 24). Like Ms. Navara, Mr. Stinson would have to admit that he committed income tax fraud to establish he obtained his Long Beach loan for a personal purpose. In any event, Mr. Stinson's loan was obtained to acquire non-owner occupied rental property. Because such loans are deemed to be business purpose loans not

---

[3] In addition to the Family Rider claim asserted in the Consolidated Class Action Complaint, Ms. Navara also asserts a TILA rescission claim in her individual lawsuit based on the same Long Beach mortgage loan. (*See* N.D. Ill. Civil Action No. 05-0864, 3d Am. Compl., Dkt. No. 132, Count I). Because Ms. Navara's loan was not obtained primarily for a personal purpose, her individual claim under TILA should also be dismissed.

subject to TILA, the Court should grant summary judgment and dismiss Mr. Stinson's TILA Family Rider Claim.

      C.      **Shelton.**

Like Ms. Navara and Mr. Stinson, Mr. Shelton also cannot show that his loan was subject to TILA as he testified that he obtained the loan to purchase property solely to help out his friend and that he did not intend to move into the property himself. (SOF ¶¶ 27-28, 31). Mr. Shelton's initial plan was to buy the property and rent it out. (SOF ¶ 31). Thus, because Mr. Shelton's initial intent was to obtain a loan to purchase non-owner occupied rental property, his loan was not obtained primarily for personal purposes and thus not subject to TILA.

Moreover, even if Mr. Shelton's rental property was deemed to be owner-occupied based on the few months that he lived there, his loan was still not subject to TILA as he derived nearly all of his income from rental proceeds. Mr. Stinson testified that he anticipated $700 in monthly rental income from a second floor tenant and $500 monthly rental income from his roommate. (SOF ¶ 33). At the time he obtained his loan, Mr. Stinson only received about $500 in social security benefits, as he did not have a job. (SOF ¶ 32). Under the TILA Commentary, these circumstances demonstrate that Mr. Shelton's loan was not obtained primarily for a personal use because nearly all of his income was originated through rent proceeds and because he had no other occupation. Accordingly, TILA did not apply to Mr. Shelton's loan and he cannot assert any TILA claims in this proceeding.[4]

---

[4] In his individual lawsuit, Mr. Shelton also asserts a claim under the Real Estate Settlement Procedures Act involving the same Long Beach mortgage loan. (*See* N.D. Ill. Civil Action No. 06-02323, 1st Am. Compl., Dkt. No. 63, Count I). RESPA only applies to federally-related mortgage loans and specifically exempts from its coverage "business purpose loans" as defined by Regulation Z, 12 C.F.R. § 226.3(a). *See* 24 C.F.R. § 3500.5(b)(2); *see also Johnson*, 2007 WL 3226153, at *5-6. The "business purpose" provision in Regulation Z is the same provision that covers TILA transactions. Thus, because Mr. Shelton obtained his loan for a business purpose, it is not subject to RESPA and his individual claim should also be dismissed.

**II.     Ms. Sullivan Cannot Maintain Her Claim Because She Lacks Standing To Pursue That Claim Due To Her Chapter 7 Bankruptcy Case.**

Finally, Ms. Sullivan cannot proceed with her claim against Long Beach because she lacks standing to do so. It is undisputed that in May 2007, Ms. Sullivan filed a Chapter 7 bankruptcy petition and disclosed this lawsuit in one of the schedules to her bankruptcy filing. (SOF ¶¶ 37-38). It is also undisputed that the Bankruptcy Court granted Ms. Sullivan a discharge but the trustee never formally abandoned Ms. Sullivan's claim against Long Beach. (SOF ¶ 39).

Because the trustee never took the steps to abandon that claim, it remains property of the bankruptcy estate. *See* 11 U.S.C. § 554; *see also Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 618 (7th Cir. 2002) (noting that the requirements for abandonment under 11 U.S.C. § 554 are "exacting, in recognition of the potential harm to creditors from the trustee's abandoning property"). To prove that abandonment is indeed in effect, the debtor must show at a minimum that the trustee made a reasonable inquiry consistent with his statutory duties, to the estate and to creditors, as to the value of the estate property before impliedly abandoning it through filing of no asset report. *See Mule v. First Colony Life Ins. Co.*, 127 B.R. 82, 85-86 (D.D.C. 1991). Mere inaction by the bankruptcy trustee does not accomplishment abandonment of property by estate. *In re Prospero*, 107 B.R. 732, 735 (C.D.Cal. 1989). Given that the trustee never took the steps to abandon Ms. Sullivan's claim, it remains part of her bankruptcy estate and she therefore lacks standing to assert that claim in this proceeding. As such, the Court should enter summary judgment, dismissing Ms. Sullivan's TILA Family Rider Claim.

**CONCLUSION**

For the foregoing reasons, Long Beach respectfully requests that this Court grant Long Beach's motion for summary judgment and dismiss, with prejudice, the following counts:

(1) Count I of the Consolidated Class Action Complaint asserted by Plaintiffs Guadalupe Navara, Albert Stinson, Eric Shelton, and Charlene Sullivan;

(2) Count I of the Third Amended Complaint (Dkt. No. 132) filed by plaintiff Guadalupe Navara, N.D. Ill. Civil Action No. 05-0864; and

(3) Count I of the First Amended Complaint (Dkt. No. 63) filed by plaintiff Eric Shelton, N.D. Ill. Civil Action No. 06-02323.

Dated: June 11, 2008

Respectfully submitted,

Washington Mutual Bank
f/k/a Long Beach Mortgage Company


By:   /s/ Gabriel A. Crowson
      Matthew M. Neumeier
      Scott T. Schutte
      Gabriel A. Crowson
      HOWREY LLP
      321 N. Clark St. Suite 3400
      Chicago, IL 60610
      Telephone: (312) 595-1239
      Fax: (312) 595-2250
      Email: neumeierm@howrey.com
             schuttes@howrey.com
             crowsong@howrey.com

## CERTIFICATE OF SERVICE

    I, Gabriel A. Crowson, hereby certify that a copy of the foregoing Memorandum of Law in Support of Motion for Partial Summary Judgment has been served on all counsel of record with the Clerk of the Court using the CM/ECF system on the 11th day of June, 2008.

                                                            /s/ Gabriel A. Crowson
                                                             Gabriel A. Crowson