IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LONG BEACH MORTGAGE COMPANY TRUTH IN LENDING ACT FAMILY RIDER LITIGATION | * * * * * * | MDL CASE NO. 07 CV 06543 |
| _____ | * * * | Centralized before Judge Wayne R. Andersen |
| THIS DOCUMENT RELATES TO | * * | |
| *Navara v. Long Beach Mortgage Co.* U.S.D.C., N.D. Ill., Civil Action No. 05-0864 | * * * | |
| *Carye v. Long Beach Mortgage Co.* U.S.D.C., D. Mass., Civil Action No. 06-10887 (N.D. Ill. Civil Action No. 07-06544) | * * * * | |
| *Shelton v. Long Beach Mortgage Co.* U.S.D.C., N.D. Ill., Civil Action No. 06-2323 | * * * | |

*********************************************

**STATEMENT OF MATERIAL FACTS**

Pursuant to Local Rule 56.1, defendant Washington Mutual Bank f/k/a Long Beach Mortgage Company ("Long Beach") submits this statement of material facts in support of its motion for partial summary judgment.

**Parties, Jurisdiction, and Venue**

1.  Plaintiff Guadalupe Navara is a resident of Chicago, Illinois. (Exh. 1, Deposition of Guadalupe Navara (the "Navara Dep.") at Page 48, Line 16).

2.  Plaintiff Albert Stinson is a resident of Chicago, Illinois. (Exh. 2, Deposition of Albert Stinson (the "Stinson Dep.") at Page 26, Lines 14-15).

3. Plaintiff Eric Shelton is a resident of Chicago, Illinois. (Exh. 3, Deposition of Eric Shelton (the "Shelton Dep.") at Page 6, Lines 20-24).

4. Plaintiff Charlene Sullivan is a resident of Pawtucket, Rhode Island. (Exh. 4, Deposition of Charlene Sullivan (the "Sullivan Dep."), at Page 10, Lines 20-24).

5. Defendant Washington Mutual Bank, formerly Long Beach Mortgage Company, is a federal savings association with its principal place of business in Henderson, Nevada. (Answer, Dkt. No. 20, ¶ 8).

6. In the Consolidated Class Action Complaint, Plaintiffs assert claims against Long Beach for alleged violations of the federal Truth in Lending Act. (Cons. Compl., Dkt. No. 19, ¶¶ 26-29). The Court thus has federal question jurisdiction under 28 U.S.C. § 1331. (Answer, Dkt. No. 20, ¶ 2).

7. Venue is proper in this judicial district under 28 U.S.C. § 1391. (Answer, Dkt. No. 20, ¶ 2).

## Facts

**A.   Plaintiff Guadalupe Navara**

8. On April 29, 2004, Ms. Navara obtained a $50,000 mortgage loan from Long Beach that was secured by real property located at 2715 S. Kostner, Chicago, Illinois. (*See* Answer, Dkt. No. 20, ¶ 9; *see also* Cons. Compl., Exh. C).

9. As part of her mortgage loan, Ms. Navara executed a 1-4 Family Rider. (Cons. Compl., Exh. C).

10. The property at 2715 S. Kostner consists of one building with two apartments and a coach house, and Ms. Navara leases the two apartments for rental income. (Exh. 1, Navara Dep. 46:4-24, 48:21-24).

11. In each of her tax returns for 2003 through 2005, Ms. Navara listed properties at 2715 S. Kostner and 2843 Drake Avenue in Chicago as "rental real estate property" on line 1 of the supplemental income schedule. (Exh. 5 Income Tax Return for 2005, at ECL&G 135; Exh. 6, Income Tax Return for 2004, at ECL&G 142; Exh. 7, Income Tax Return for 2003, at ECL&G 152).

12. When asked whether she used the rental properties listed in line 1 for personal purposes, Ms. Navara checked the box marked "No." (Exh. 5, at ECL&G 135; Exh. 6, at ECL&G 142; Exh. 7, at ECL&G 152).

13. By checking "No" on the supplemental income schedule, Ms. Navara was able to deduct the expenses incurred in connection with her rental real estate properties. (Exh. 5, at ECL&G 135; Exh. 6, at ECL&G 142; Exh. 7, at ECL&G 152).

14. Ms. Navara's only source of income comes from the rental income generated by the two apartments at 2715 S. Kostner and separate rental property at 2843 Drake Avenue. (Exh. 1, Navara Dep. 46:24; *see also* Exhs. 5, 6, and 7).

15. In 2005, Ms. Navara did not report any income on her tax return other than the net income from her rental real estate properties. (Exh. 5, at ECL&G 133, 135).

16. In 2004, Ms. Navara reported $47 in taxable interest and the remainder of her income was derived from the net income from her rental real estate properties. (Exh. 6, at ECL&G 140, 142).

17. In 2003, Ms. Navara reported $41 in wages and $24 in taxable interest, and the remainder of her income was derived from the net income from her rental real estate properties. (Exh. 7, at ECL&G 150, 152).

18.     Ms. Navara's primary occupation entails managing and renting the apartments. (Exh. 1, Navara Dep. 67:19).

**B.    Plaintiff Albert Stinson**

19.     On April 12, 2006, Mr. Stinson executed two 1-4 Family Rider forms in connection with two mortgage loans that he obtained from Long Beach secured by real property located at 5402 S. Shields Avenue, Chicago, Illinois. (Answer, Dkt. No. 20, ¶ 12; Cons. Compl., Exhs. F and I).

20.     Mr. Stinson never lived at the 5402 S. Shields property. (Exh. 2, Stinson Dep. 27:13, 31:20-24, 58:13).

21.     During the time that he did own 5402 S. Shields, Mr. Stinson leased the property to a tenant to make the monthly mortgage payment. (*Id.* 58:18-24, 59:1-14).

22.     In his 2006 income tax return, Mr. Stinson listed the property at 5402 S. Shields in line 1 of the supplemental income schedule as "rental real estate property." (Exh. 8, U.S. Individual Income Tax Return for 2006, at 4).

23.     When asked whether he used the property listed in line 1 for personal purposes, Mr. Stinson checked the box marked "No." (*Id.*).

24.     Mr. Stinson reported a loss against his income based on expenses associated with 5402 S. Shields. (*Id.* at 1, 4).

**C.    Plaintiff Eric Shelton**

25.     Mr. Shelton obtained a mortgage loan from Long Beach in July 2005 to finance the purchase of a building at 6800 S. Artesian Avenue, Chicago, Illinois. (Answer, Dkt. No., ¶ 16).

26.     Mr. Shelton executed a 1-4 Family Rider in connection with his mortgage loan. (Cons. Compl., Exh. K).

27.     Mr. Shelton purchased the property at 6800 S. Artesian to help out his friend (Michael Bibbs) who was the beneficial owner of the property due to an inheritance. (Exh. 3, Shelton Dep. 10:3-19, 12:5-24, 13:1-22).

28.     Mr. Shelton bought the building at 6800 S. Artesian solely to help out his friend, Mr. Bibbs. (*Id.* 139:15-21).

29.     Mr. Bibbs needed a buyer for the property so that he could get access to the building from a relative who was preventing Mr. Bibbs from residing at the property. (*Id.* 14:12-19, 15:3-10).

30.     As a result, another friend of Mr. Bibbs and Mr. Shelton (Andre Colbert) made the arrangements with a realtor (Michelle Smith) for Mr. Shelton to act as the purchaser due to his supposed good credit. (*Id.* 12:5-24, 13:1-24, 14:1-24, 15:1-17).

31.     When Mr. Shelton was first approached about buying the 6800 S. Artesian building, he did not intend to move into the property and live there but instead was just going to rent it out. (*Id.* 144:14-23, 146:10-19, 148:7-11).

32.     At the time of this purchase, Mr. Shelton's only source of income was the $500 in social security benefits that he received each month, as he has never worked a day in his life. (*Id.* 18:2-4, 22:9-24, 23:1-6, 105:13).

33.     At the time of the purchase, Mr. Shelton anticipated that he would derive income to make the monthly mortgage payment with $700 in rental income from a second floor tenant and $500 in rental income from Mr. Bibbs. (*Id.* 9:10-23, 16:9-20, 18:7-11, 22:14-18, 105:18-24).

**D.     Plaintiff Charlene Sullivan**

34.     In July 2005, Ms. Sullivan obtained a mortgage loan from Long Beach that was secured by real property located at 190 Littlefield Street in Pawtucket, Rhode Island. (Answer, Dkt. No. 20, ¶ 19).

35. As part of her Long Beach mortgage loan, Ms. Sullivan executed a 1-4 Family Rider. (Consol. Compl., Exh. N).

36. The loan was used to re-finance two mortgage loans that Ms. Sullivan obtained when she first bought the property. (Exh. 4, Sullivan Dep. 20:19-20, 38:15-16).

37. On May 16, 2007, Ms. Sullivan commenced a Chapter 7 bankruptcy proceeding with the U.S. Bankruptcy Court for the District of Rhode Island. (*Id.* 24:7-16; *see also* Exh. 9, excerpts from Chapter 7 Voluntary Petition, Case No. 1:07-BK-10899).

38. In one of her schedules to the bankruptcy petition, Ms. Sullivan disclosed her lawsuit against Long Beach as an asset of her estate. (Exh. 9, at Schedule B, item 35).

39. In August 2007, Ms. Sullivan obtained a discharge from the Bankruptcy Court, and the trustee never formally abandoned Ms. Sullivan's claim against Long Beach. (*See* Exh. 10, Sullivan Bankruptcy Court docket sheet; *see also* Exh. 11, Aug. 14, 2007 Order Discharging Debtor).

Dated:  June 11, 2008            Respectfully submitted,

                               Washington Mutual Bank
                               f/k/a Long Beach Mortgage Company

                               By:     /s/ Gabriel A. Crowson
                                        Matthew M. Neumeier
                                        Scott T. Schutte
                                        Gabriel A. Crowson
                                        HOWREY LLP
                                        321 N. Clark St. Suite 3400
                                        Chicago, IL 60610
                                        Telephone: (312) 595-1239
                                        Fax: (312) 595-2250
                                        Email: neumeierm@howrey.com
                                                     schuttes@howrey.com
                                                     crowsong@howrey.com

## CERTIFICATE OF SERVICE

I, Gabriel A. Crowson, hereby certify that a copy of the foregoing Statement of Material Facts has been served on all counsel of record with the Clerk of the Court using the CM/ECF system on the 11th day of June, 2008.

                                                             /s/ Gabriel A. Crowson
                                                             Gabriel A. Crowson