**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LONG BEACH MORTGAGE COMPANY | * | |
| TRUTH IN LENDING ACT FAMILY RIDER | * | |
| LITIGATION | * | MDL CASE NO. 07 CV 06543 |
| | * | |
| | * | |
| | * | |
| _____ | * | Centralized before |
| | * | Judge Wayne R. Andersen |
| | * | |
| THIS DOCUMENT RELATES TO | * | |
| | * | |
| *Navara v. Long Beach Mortgage Co.* | * | |
| U.S.D.C., N.D. Ill., Civil Action No. 05-0864 | * | |
| | * | |
| *Carye v. Long Beach Mortgage Co.* | * | |
| U.S.D.C., D. Mass., Civil Action No. 06-10887 | * | |
| (N.D. Ill. Civil Action No. 07-06544) | * | |
| | * | |
| *Shelton v. Long Beach Mortgage Co.* | * | |
| U.S.D.C., N.D. Ill., Civil Action No. 06-2323 | * | |
| | * | |

**********************************************

**LONG BEACH'S MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Matthew M. Neumeier
Scott T. Schutte
Gabriel A. Crowson
HOWREY LLP
321 N. Clark Street, Suite 3400
Chicago, IL 60610
Telephone: (312) 595-1239
Fax: (312) 595-2250

*Attorneys for Defendant Washington Mutual Bank
f/k/a Long Beach Mortgage Company*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................. 3

    A.    Plaintiff Guadalupe Navara ................................................................................ 3

    B.    Plaintiff Albert Stinson. .................................................................................... 4

    C.    Plaintiff Eric Shelton. ....................................................................................... 5

    D.    Plaintiff Charlene Sullivan. ............................................................................... 6

CLASS CERTIFICATION STANDARD ............................................................................. 7

ARGUMENT ......................................................................................................................... 8

I.      PLAINTIFFS HAVE IMPROPERLY DEFINED THE PROPOSED CLASS ................ 8

II.     PLAINTIFFS HAVE NOT SATISFIED THE TYPICALITY OR ADEQUACY
       REQUIREMENTS OF RULE 23(A) ......................................................................... 10

    A.    Plaintiffs' Claims Are Not Typical Of The Class Claims. ................................. 10

    B.    Plaintiffs Have Neglected To Introduce Any Evidence As To Their Ability
         To Fairly And Adequately Represent The Putative Class. ................................. 12

          1.   Ms. Sullivan Is An Inadequate Class Representative Because She Filed
             A Chapter 7 Bankruptcy Proceeding And No Longer Has Standing To
             Pursue This Case. ....................................................................................... 13

          2.   Ms. Navara And Mr. Stinson Cannot Serve As Class Representatives
             Due To Serious Credibility Issues. .............................................................. 13

III.    PLAINTIFFS CANNOT SATISFY RULE 23(B)(3)'S PREDOMINANCE
       REQUIREMENT BECAUSE THIS CASE INVOLVES INDIVIDUAL FACTUAL
       ISSUES ........................................................................................................................ 16

    A.    The Court Must Individually Examine Each Loan Transaction To
         Determine The Purpose For The Loan. ............................................................. 16

    B.    There Are Predominating Individual Issues As To Whether Each Putative
         Class Member Intended Certain Items To Be Permanently Attached To
         The Real Property. ............................................................................................. 20

CONCLUSION ..................................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

*A & A Market, Inc. v. Pekin Ins. Com.,*
   306 Ill. App. 3d 485 (1st Dist. 1999) ............................................................. 21
*Alliance to End Repression v. Rochford,*
   565 F.2d 975 (7th Cir. 1977) ......................................................................... 8
*Amchem Prods. v. Windsor,*
   521 U.S. 591, 117 S. Ct. 2231 (1997) ............................................................ 10
*Anderson v. Cornejo,*
   199 F.R.D. 228 (N.D. Ill. 2000) ..................................................................... 8
*Berkman v. Sinclair Oil Corp.,*
   59 F.R.D. 602 (N.D. Ill. 1973) ....................................................................... 20
*Brider v. Nationwide Credit, Inc.,*
   No. 97-C-3830, 1998 WL 729747 (N.D. Ill. Oct. 14, 1998) ............................... 14
*Brown & Root, Inc. v. Shelton,*
   No. 01-00259-CV, 2003 WL 21771917 (Tex. App. July 31, 2003). ....................... 22
*Buycks-Roberson v. Citibank Federal Sav. Bank,*
   162 F.R.D. 322 (N.D. Ill. 1995) ..................................................................... 8
*Califano v. Yamasaki,*
   442 U.S. 682, 99 S. Ct. 2545 (1979) .............................................................. 7
*Davis v. Hutchins,*
   321 F.3d 641 (7th Cir. 2003) .......................................................................... 7
*Dechert v. Cadle Co.,*
   333 F.3d 801 (7th Cir. 2003) .......................................................................... 13
*Fletcher v. ZLB Behring LLC,*
   245 F.R.D. 328 (N.D. Ill. 2006) ..................................................................... 17
*Ford Motor Credit Co. v. Milhollin,*
   444 U.S. 555, 100 S. Ct. 790 (1980) .............................................................. 18
*Freeman v. Barrs,*
   237 S.W.3d 285 (Mo. App. 2007) ................................................................... 21
*Guillory v. American Tobacco Co.,*
   No. 97-C-8641, 2001 WL 290603 (N.D. Ill. March 20, 2001) ............................. 9
*Harriston v. Chicago Tribune Co.,*
   992 F.2d 697 (7th Cir. 1993) .......................................................................... 8
*Johnson v. Wells Fargo Home Mortgage, Inc.,*
   No. 05-CV-0321, 2007 WL 3226153 (D. Nev. Oct. 29, 2007) ............................. 11
*Lindstrom v. Houzenga,*
   177 Ill. App. 3d 1 (2d Dist. 1988) ................................................................... 21
*Maxwell v. Arrow Fin. Servs.,*
   No. 03-C-1995, 2004 WL 719278 (N.D. Ill. March 31, 2004) ............................. 10
*McGarvey v. Citibank (South Dakota),*
   No. 95-C-0123, 1995 WL 404866 (N.D. Ill. July 5, 1995) ................................. 20
*Morlan v. Universal Guar. Life Ins. Co.,*
   298 F.3d 609 (7th Cir. 2002) .......................................................................... 13

*Oshana v. Coca-Cola Bottling Co.*,
   225 F.R.D. 575 (N.D. Ill. 2005). ........................................................................... 8
*Parker v. George Thompson Ford, Inc.*,
   83 F.R.D. 378 (D.C. Ga. 1979) ............................................................................ 20
*Peoples v. Sebring Capital Corp.*,
   No. 01-C-5676, 2002 WL 406979 (N.D. Ill. Mar. 15, 2002)................................. 20
*Powell v. Advanta Nat'l Bank*,
   No. 00-C-7234, 2001 U.S. Dist. LEXIS 14048 (N.D. Ill. Sept. 4, 2001) .............. 20
*Premonstratensian Fathers v. Badger Mut. Ins. Co.*,
   46 Wis. 2d 362 (1970) ......................................................................................... 21
*Prospecting Unlimited, Inc. v. Norberg*,
   119 R.I. 116 (1977)............................................................................................... 21
*Retired Chicago Police Ass'n v. City of Chicago*,
   7 F.3d 584 (7th Cir. 1993)...................................................................................... 8
*Rodriguez v. Family Publication Service, Inc.*
   57 F.R.D. 189 (C.D. Cal. 1972) .......................................................................... 20
*Romaker v. Crossland Mortg. Corp.*,
   No. 94-C-3328, 1996 U.S. Dist. LEXIS 6490 (N.D. Ill. May 8, 1996)................. 20
*Roman v. First Franklin Fin. Corp.*,
   No 00-C-7228, 2001 U.S. Dist. LEXIS 3968 (N.D. Ill. Apr. 2, 2001)............. 19, 20
*Sadowski v. Med1 Online, LLC*,
   No. 07-C-2973, 2008 WL 489360 (N.D. Ill. Feb. 20, 2008) ................................. 9
*Simer v. Rios*,
   661 F.2d 655, 672 (7th Cir. 1981) ....................................................................... 17
*Szabo v. Bridgeport Machs, Inc.*,
   249 F.3d 672 (7th Cir.), *cert. denied*, 534 U.S. 951, 122 S. Ct. 348 (2001)............ 8
*Vodak v. City of Chicago*,
   No. 03-C-2463, 2008 WL 687221 (N.D. Ill. March 10, 2008)............................. 17
*Walker v. Wallace Auto Sales, Inc.*,
   155 F.3d 927 (7th Cir. 1998)................................................................................ 18
*Willliams v. Ford Motor Co.*,
   192 F.R.D. 580 (N.D. Ill. 2000) .......................................................................... 10

## Statutes

11 U.S.C. § 554 ......................................................................................................... 13
15 U.S.C. § 1602(h)............................................................................................... 10, 16
15 U.S.C. § 1603(1).................................................................................................... 16
15 U.S.C. § 1638(a)(9). ............................................................................................... 9

## Rules

Fed. R. Civ. P. 23(a)(3)............................................................................................... 10
Fed. R. Civ. P. 23(a)(4)............................................................................................... 12

## Treatises

Manual on Complex Litigation Fourth 270 § 21.222 (4th ed. 2004) ............................ 8

**Regulations**

12 C.F.R. § 226 ...........................................................................................9, 11, 16, 20

12 C.F.R. § 226.2(a)(25)......................................................................................... 9, 20

12 C.F.R. § 226.3 ...................................................................................................... 17

**INTRODUCTION**

Defendant Washington Mutual Bank f/k/a Long Beach Mortgage Company ("Long Beach") submits this opposition to the Motion for Class Certification filed by the proposed class representatives, Guadalupe Navara, Albert Stinson, Eric Shelton, and Charlene Sullivan (collectively "Plaintiffs").

Plaintiffs claim that Long Beach violated the Truth in Lending Act ("TILA") by including a 1-4 Family Rider with Plaintiffs' mortgage contracts. (Cons. Compl., Dkt. No. 19, ¶¶ 26-29). According to Plaintiffs, the Rider allowed Long Beach to take a security interest in Plaintiffs' personal property that should have been disclosed on Plaintiffs' TILA Disclosure Statements. (*Id.* at ¶ 27). Plaintiffs do not contend that the execution of the Rider caused Plaintiffs (or the putative class members) to sustain any actual damages such as loss of personal property through a foreclosure; instead, Plaintiffs seek only statutory damages and attorney's fees for Long Beach's alleged TILA violation. (*Id.* at ¶ 35).

Plaintiffs seek certification of the following nearly nationwide class of borrowers:

> (a) All natural persons (b) who signed a mortgage with Long Beach in any state excluding Massachusetts, (c) that takes a security interest in personal property by means of a one-to-four family rider not limited to fixtures, (d) on or after Feb. 11, 2004 (one year prior to the original filing of the <u>Navara</u> action on Feb. 11, 2005).

(Pltfs.' Mem., Dkt. No. 28, p. 1).[1]

---

[1] The Consolidated Complaint identified one other proposed class representative (Mirlaine Jeune), who asserted a similar family rider claim under the Massachusetts Consumer Credit Cost Disclosure Act (the "MCCCDA") on behalf of a proposed Massachusetts-only class. (Cons. Compl., ¶¶ 36-45). After Long Beach initiated discovery to Plaintiffs, Ms. Jeune's counsel represented that Ms. Jeune would be dismissing her claim. Even though Ms. Jeune's counsel provided Long Beach's counsel a draft stipulation of dismissal that Long Beach's counsel approved, Plaintiffs have yet to file the stipulation of dismissal. Because Ms. Jeune was the only plaintiff asserting a claim under the MCCCDA, there is no longer a proposed class representative with standing to assert that claim on behalf of a class and the Court should deny certification of the proposed Massachusetts-only class.

The Court should deny Plaintiffs' motion for several separate and independent reasons. **First**, Plaintiffs' proposed class definition is improper, as it is defined by reference to the ultimate fact issue in this case, namely whether the Rider took a security interest in personal property. Long Beach contends that the Rider only covers "incidental interests," which do not have to be disclosed under TILA. Plaintiffs have attempted to avoid resolution of this issue by improperly proposing a fail-safe class that only includes persons who obtained a Rider that actually took a security interest in their personal property.

**Second**, Plaintiffs cannot satisfy Rule 23(a) because their claims are not typical of the class claims and because they have failed to demonstrate that they would be adequate class representatives. Typicality is lacking because proof of the named Plaintiffs' claims will not prove the claims of the entire class. This is best exemplified by the fact that two of the proposed class representatives (Navara and Stinson) did not live at the mortgaged property, and thus TILA does not apply to their transaction. Similarly, one of the other proposed class representatives (Shelton) stated that he did not intend to reside in the property that was the subject of his loan when he first decided to buy the property and therefore TILA does not apply to his transaction. Plaintiffs have also neglected to provide the Court with any evidence as to their ability to fairly and adequately represent the interests of the putative class as required by Rule 23(a)(4).

**Third**, Plaintiffs cannot satisfy Rule 23(b)(3)'s predominance requirement because there are individual fact issues as to whether each putative class member obtained their loan primarily for a consumer purpose as opposed to a business purpose. To properly resolve this issue, the Court would have to individually examine the loan transaction of each and every putative class member. In addition, there are predominating individual facts issues as to whether each borrower intended for the items listed in the Rider to be permanently attached to the real estate,

thus constituting a fixture.  Because Plaintiffs have neglected to provide the Court with any trial

plan addressing these individual issues, Plaintiffs' motion must be denied.

## FACTUAL BACKGROUND

### A.     Plaintiff Guadalupe Navara.

On April 29, 2004, Ms. Navara obtained a $50,000 mortgage loan from Long Beach that

was secured by real property located at 2715 S. Kostner, Chicago, Illinois.  (Answer, Dkt. No.

20, ¶ 9).  As part of her mortgage loan, Ms. Navara executed a 1-4 Family Rider.  (Cons. Compl.,

Exh. C).

Ms. Navara testified that the property at 2715 S. Kostner consists of one building with

two apartments and a coach house, and that she leases the two apartments for rental income.

(Exh. 1, Deposition of Guadalupe Navara (the "Navara Dep."), Page 46, Lines 4-24, Page 48,

Lines 21-24).   Ms. Navara's tax returns listed properties at 2715 S. Kostner and 2843 Drake

Avenue in Chicago as "rental real estate property" on line 1 of the supplemental income

schedule.  (Exh. 2, Income Tax Return for 2005, at ECL&G 135).[2]  Moreover, when asked

whether she used the rental properties listed in line 1 for personal purposes, Ms. Navara checked

the box marked "No."  (Exh. 2, at ECL&G 135; Exh. 3, at ECL&G 142, Exh. 4, at ECL&G 152).

This allowed Ms. Navara to deduct the expenses associated with her rental properties from her

income.  (*Id.*).

Further, Navara's only source of income comes from the rental income generated by the

two apartments at 2715 S. Kostner and separate rental property at 2843 Drake Avenue.  (Exh. 1,

Navara Dep. 46:24; *see also* Exhs. 2, 3, and 4).  For example, in 2005, Navara did not report any

income on her tax return other than net income from her rental real estate properties.  (Exh. 2).

---

[2] The same classification is made on Ms. Navara's 2004 and 2003 tax returns.  (*See* Exh. 3, Income Tax Return for 2004, at ECLG 142, Exh. 4, Income Tax Return for 2003, at ECLG 152).

Similarly, for 2003 and 2004, all of Navara's income (other than nominal interest income) was generated from the net income from her rental real estate properties. (Exhs. 3 and 4). Indeed, Navara's primary occupation entails managing and renting the apartments. (Exh. 1, Navara Dep. 67:19).

**B.     Plaintiff Albert Stinson.**

On April 12, 2006, Mr. Stinson executed two 1-4 Family Rider forms in connection with two mortgage loans that he obtained from Long Beach secured by real property located at 5402 S. Shields Avenue, Chicago, Illinois. (Answer, Dkt. No. 20, ¶ 12; Cons. Compl., Exhs. F and I). Mr. Stinson alleged that he obtained the loans for personal purposes, namely to refinance prior debts. (Cons. Compl., ¶ 13).

In his deposition, Mr. Stinson made it clear that he never lived at the 5402 S. Shields property. (Exh. 5, Deposition of Albert Stinson (the "Stinson Dep."), Page 27, Line 13, Page 31, Lines 20-24, Page 58, Line 13). In fact, Mr. Stinson sold the property only a few months after he initially bought the house. (*Id.* 31:20-24, 32:1-6). During the time that he did own 5402 S. Shields, Mr. Stinson leased the property to a tenant to make the monthly mortgage payment. (*Id.* 58:18-24, 59:1-14).

Further, in his 2006 income tax return, Mr. Stinson listed the property at 5402 S. Shields in line 1 of the supplemental income schedule as "rental real estate property." (Exh. 6, excerpts of U.S. Individual Income Tax Return for 2006, at 4). When asked whether he used the property in line 1 for personal purposes, Mr. Stinson checked the box marked "No." (*Id.*). Indeed, Mr. Stinson actually reported a loss against his income based on expenses associated with 5402 S. Shields, which he classified as rental real estate property. (*Id.* at 1, 4).

Mr. Stinson testified that he first felt that Long Beach had violated TILA when he received an unsolicited package of materials from Al Hofeld, a former associate at the Edelman

4

firm and prior counsel of record in this action.  (Exh. 5, Stinson Dep. 8:21-24, 9:1-18, 64:2-24, 65:1-10).  Although Mr. Stinson seeks to serve as a class representative in this case, he did not review drafts of the complaint or class certification papers before they were filed.  (*Id.* 41:8-17, 51:5-20).  Mr. Stinson also admitted that the complaint incorrectly alleged that he obtained his Long Beach loan to refinance existing debt when, in fact, he had obtained that loan to purchase the property at 5402 S. Shields.  (*Id.* 51:21-24, 52:1-12).  Similarly, even though Mr. Stinson signed a verification attesting to the accuracy of his interrogatory answers, he admitted that he neglected to read either the answers or the questions.  (*Id.* 54:16-24, 55:1-7).  Also, even though Mr. Stinson claims his Long Beach mortgage loan application contained inaccurate information about his income, he admitted that he signed that application without reading it.  (*Id.* 74:10-15, 76:6-16, 79:9-11).

  **C.**  **Plaintiff Eric Shelton.**

  Mr. Shelton obtained a mortgage loan from Long Beach in July 2005 to finance the purchase of a building at 6800 S. Artesian Avenue, Chicago, Illinois. (Answer, Dkt. No., ¶ 16). Mr. Shelton executed a 1-4 Family Rider in connection with his mortgage loan.  (Cons. Compl., Exh. K).

  Mr. Shelton purchased the property at 6800 S. Artesian to help out his friend (Michael Bibbs) who was the beneficial owner of the property due to an inheritance.  (Exh. 7, Deposition of Eric Shelton (the "Shelton Dep."), Page 10, Lines 3-19, Page 12, Lines 5-24, Page 13, Lines 1-22).  Mr. Shelton bought the building solely to help out his friend.  (*Id.* 139:15-21).  Mr. Bibbs needed a buyer for the property so that he could get access to the building from a relative who was supposedly preventing Mr. Bibbs from residing at the property.  (*Id.* 14:12-19, 15:3-10).  As a result, another friend of Mr. Bibbs and Mr. Shelton (Andre Colbert) made the arrangements

with a realtor (Michelle Smith) for Mr. Shelton to act as the purchaser due to his supposed good credit. (*Id.* 12:5-24, 13:1-24, 14:1-24, 15:1-17).

Even though he was making a real estate purchase for over $200,000, Mr. Shelton testified that he did not know the purchase price of the building, did not know the principal amount of his loan, and only had one conversation with his mortgage broker (Marnette James) simply to give her his social security number. (*Id.* 32:5-24, 33:1-24, 34:1-24, 35:1-24, 114:13-22, 121:4-15). Further, at the time of this purchase, Mr. Shelton's only source of income was the $500 in social security benefits that he received each month, as he has never worked a day in his life. (*Id.* 18:2-4, 22:9-24, 23:1-6, 105:13). Mr. Shelton therefore anticipated that he would derive income to make the monthly mortgage payment with $700 in rental income from a second floor tenant and $500 in rental income from Mr. Bibbs. (*Id.* 9:10-23, 16:9-20, 18:7-11, 22:14-18, 105:18-24).

### D.    Plaintiff Charlene Sullivan.

In July 2005, Ms. Sullivan obtained a mortgage loan from Long Beach that was secured by real property located at 190 Littlefield Street in Pawtucket, Rhode Island. (Answer, Dkt. No. 20, ¶ 19). As part of her Long Beach mortgage loan, Ms. Sullivan executed a 1-4 Family Rider. (Consol. Compl., Exh. N). The loan was used to re-finance two mortgage loans that Ms. Sullivan obtained when she first bought the property. (Exh. 8, Deposition of Charlene Sullivan (the "Sullivan Dep."), Page 20, Lines 19-20, Page 38, Lines 15-16). Although Ms. Sullivan's brother (Lawrence Balmforth) was a joint owner of the property and was a co-borrower on the Long Beach loan, Mr. Balmforth decided not to join in this suit because he did not care about it. (*Id.* 30:7-24, 31:1-3).

In her deposition, Ms. Sullivan testified her claim is based on her belief that Long Beach failed to disclose a security interest in her personal property. (*Id.* 7:11-19). When asked what

she expected to get out of this lawsuit, Ms. Sullivan responded "that's a good question" and then testified that she simply wanted Long Beach to stop using the Rider form.  (*Id.* 9:19-24, 10:1-4, 11:18-22).  Moreover, Ms. Sullivan made it clear that the Rider has not caused her to incur any actual damages or economic injury.  (*Id.* 9:19-21).  Indeed, even though Long Beach foreclosed on the real property at 190 Littlefield Street in August 2007, Long Beach did not seize any of Ms. Sullivan's personal effects.  (*Id.* 10:9-17).

Additionally, Ms. Sullivan acknowledged that there were some inaccuracies in the Consolidated Complaint filed on her behalf.  For instance, although the Complaint suggests that she owned a home at 190 Littlefield Street (*see* Cons. Compl., ¶ 6), Ms. Sullivan admitted that the house had already been foreclosed upon and that she did not own the house when the Complaint was filed.  (Exh. 8, Sullivan Dep. 33:17-23).  Ms. Sullivan also acknowledged that she filed a Chapter 7 bankruptcy petition in May 2007 in the United States Bankruptcy Court for the District of Rhode Island.  (*Id.* 24:7-14; *see also* Exh. 9, excerpts from Chapter 7 Voluntary Petition, Case No. 1:07-BK-10899).  A few months after she commenced her bankruptcy, the Bankruptcy Court granted her a discharge, but the trustee never abandoned Ms. Sullivan's claim against Long Beach.  (*See* Exh. 10, Bankruptcy Court docket sheet; Exh. 11, Aug. 14, 2007 Order Discharging Debtor).

## CLASS CERTIFICATION STANDARD

Class actions are an "exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Califano v. Yamasaki*, 442 U.S. 682, 700-01, 99 S. Ct. 2545 (1979).  A class "may only be certified if the trial court is satisfied, after a rigorous analysis" that the requirements of Rule 23 have been satisfied.  *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003).  Accordingly, the named plaintiffs bear the burden of demonstrating that all

the requirements of Rule 23 have been fulfilled. *Anderson v. Cornejo*, 199 F.R.D. 228, 238 (N.D. Ill. 2000) (citations omitted).

Rule 23 requires a two-step analysis to determine whether class certification is appropriate. *Buycks-Roberson v. Citibank Federal Sav. Bank*, 162 F.R.D. 322, 328 (N.D. Ill. 1995). First, a plaintiff must satisfy all four requirements of Rule 23 (a), which means "the plaintiff must meet the prerequisites of numerosity, commonality, typicality and adequacy of representation." *Id.* (quoting *Harriston v. Chicago Tribune Co.,* 992 F.2d 697, 703 (7th Cir. 1993)). The Seventh Circuit has cautioned that "all of these elements are prerequisites to certification; failure to meet any one of them precludes certification as a class." *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir. 1993). Second, the action must satisfy one of the three subsections of Rule 23(b). *Buycks-Roberson*, 162 F.R.D. at 328 (citing *Alliance to End Repression v. Rochford,* 565 F.2d 975, 977 (7th Cir. 1977)). Further, the Seventh Circuit has made it clear that trial courts can look beyond the pleadings and thus may need to resolve factual disputes that overlap with the merits when analyzing class certification. *Szabo v. Bridgeport Machs, Inc.*, 249 F.3d 672, 676-77 (7th Cir.), *cert. denied*, 534 U.S. 951, 122 S. Ct. 348 (2001).

## ARGUMENT

## I.    PLAINTIFFS HAVE IMPROPERLY DEFINED THE PROPOSED CLASS.

As an initial matter, Plaintiffs' motion should be denied because they have neglected to propose a proper class definition. The law is clear that a class definition must be "precise, objective and presently ascertainable." *See* Manual on Complex Litigation Fourth 270 § 21.222 (4th ed. 2004); *see also Oshana v. Coca-Cola Bottling Co.*, 225 F.R.D. 575, 580 (N.D. Ill. 2005). More important, a class definition must avoid subjective standards that depend on resolution of the merits. *Sadowski v. Med1 Online, LLC*, No. 07-C-2973, 2008 WL 489360, at *3 (N.D. Ill.

Feb. 20, 2008) (noting that federal courts have denied class certification when the class definition requires the court to delve into liability issues); *Guillory v. American Tobacco Co.*, No. 97-C-8641, 2001 WL 290603, at *3 (N.D. Ill. March 20, 2001) (class certification denied when the class definition improperly relied on "subjective criteria").

In this case, Plaintiffs' proposed class definition suffers from two main defects. ***First***, Plaintiffs have inappropriately defined the putative class by reference to the merits, as it purports to include all persons who signed a mortgage "***that takes a security interest*** in personal property by means of a one-to-four family rider not limited to fixtures." (Pltfs.' Mem., p. 1) (emphasis added). One of the primary areas of dispute in this litigation concerns whether the Rider actually takes a security interest in personal property, or whether the language was limited to fixtures, additions, or accessions. Long Beach does not dispute that TILA requires lenders to disclose security interests taken in personal property. *See* 15 U.S.C. § 1638(a)(9). TILA, however, states that the term "security interest" does not include "incidental interests" such as interests in "accessions, additions, or fixtures." *See* 12 C.F.R. § 226.2(a)(25). Long Beach contends that the language in the Rider simply takes an interest in fixtures, not a borrower's personal effects, and thus does not constitute a "security interest" within the meaning of TILA. Plaintiffs seek to take this issue off the table by proposing a fail-safe class that includes all persons who executed a rider that took a security interest in their personal property. Because the law does not allow classes to be defined by reference to the merits, Plaintiffs' motion should be denied.

***Second***, Plaintiffs' proposed class definition is flawed because it is not limited to persons who obtained their mortgage loan primarily for a consumer purpose. There is no question that the disclosure requirements under TILA only apply when a borrower obtains a loan for a consumer purpose. *See* 15 U.S.C. § 1602(h). As discussed in section III(a) below, the Court

must individually examine each loan transaction covered by Plaintiffs' proposed class to determine whether each borrower obtained his or her loan primarily for a personal purpose. These individual examinations render this case unsuitable for class treatment. In any event, Plaintiffs' proposed class definition does not account for this limitation and therefore cannot be certified.

## II.    PLAINTIFFS HAVE NOT SATISFIED THE TYPICALITY OR ADEQUACY REQUIREMENTS OF RULE 23(A).

### A.    Plaintiffs' Claims Are Not Typical Of The Class Claims.

The third prong of Rule 23(a) requires that the plaintiff demonstrate that the claims or defenses of the named party are typical to the claims of the putative class members. Fed. R. Civ. P. 23(a)(3). The claim of a proposed class representative is typical of the class if "it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members and his or her claims are based on the same legal theory." *Maxwell v. Arrow Fin. Servs.*, No. 03-C-1995, 2004 WL 719278, at *4 (N.D. Ill. March 31, 2004) (citations omitted). The Supreme Court has noted that the typicality criteria serve as "guideposts for determining whether…the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be…protected in their absence." *Amchem Prods. v. Windsor*, 521 U.S. 591, 626, n. 20, 117 S. Ct. 2231 (1997). Accordingly, if proof of the named plaintiffs' claims "would not necessarily prove all of the proposed class members' claims," then the typicality requirement cannot be met. *Williams v. Ford Motor Co.*, 192 F.R.D. 580, 586 (N.D. Ill. 2000).

In this case, proof of the named Plaintiffs' claims will not necessarily prove the claims of the class members because some of the proposed class representatives are subject to unique

defenses.[3]  Two of the proposed class representatives (Navara and Stinson) represented to the IRS that they did not reside at their rental property and did not use the properties for personal purposes.  (Exhs. 2, 3, 4, and 6).  The Federal Reserve Board's Official Staff Commentary to TILA makes it clear that if a consumer obtains a mortgage loan in connection with non-owner occupied property, then the loan was obtained for a business purpose and thus TILA's disclosure requirements are inapplicable.  *See* Supplement I to 12 C.F.R. § 226, at Commentary 3(a)(3).[4] Because Ms. Navara and Mr. Stinson obtained their Long Beach loans in connection with owner-occupied rental property, TILA does not apply to their loans and they cannot assert any TILA claims.  *See Johnson v. Wells Fargo Home Mortgage, Inc.*, No. 05-CV-0321, 2007 WL 3226153, at *5-6 (D. Nev. Oct. 29, 2007) (finding that loan to obtain non-owner occupied rental property was a business purpose loan under Regulation Z).

Likewise, when Mr. Shelton was first approached about buying the 6800 S. Artesian building, he did not intend to move into the property and live there but instead was just going to rent it out.  (Exh. 7, Shelton Dep. 144:14-23, 146:10-19, 148:7-11).  He further made it clear that he only bought the property to help out his friend.  (*Id.* 139:15-21).  In any event, at the time of his purchase, nearly all of Mr. Shelton's income was going to be generated from rental income from the building, as he only made $500 per month in social security benefits.  (*Id.* 9:10-23, 16:9-20, 18:2-11, 22:8-24, 23:1-6, 105:13-24).  Because Mr. Shelton derived nearly all of his income from rental income and because he had no other occupation, the factors enumerated by

---

[3] Because the undisputed evidence shows that Ms. Navara, Mr. Stinson, and Mr. Shelton did not obtain their mortgage loans primarily for a personal purpose, Long Beach is moving for summary judgment, seeking dismissal of their TILA claims.

[4] Long Beach has included excerpts of the cited portion of the TILA Commentary in the Appendix of Unreported Cases submitted with this brief.

the TILA Commentary demonstrate that his loan was for a business purpose and not subject to TILA.

Thus, it is clear that the claims of Ms. Navara, Mr. Stinson, and Mr. Shelton are not typical of the claims of the putative class. These three plaintiffs would not be able to prove that their loans were obtained primarily for a personal purpose and thus cannot assert claims under TILA. That does not mean, however, that a putative class member would be unable to demonstrate that they actually obtained their loan primarily for a consumer purpose and therefore had the ability to maintain a TILA claim. Because proof of the named Plaintiffs' claims will not prove the claims of the entire class, the typicality requirement cannot be met and Plaintiffs' motion should be denied.

### B. Plaintiffs Have Neglected To Introduce Any Evidence As To Their Ability To Fairly And Adequately Represent The Putative Class.

To obtain class certification, Plaintiffs bear the burden of demonstrating that they will fairly and adequately representative the interests of the putative class. *See* Fed. R. Civ. P. 23(a)(4). In this case, Plaintiffs have neglected to provide the Court with a shred of evidence concerning their qualifications or willingness to serve as class representatives. Plaintiffs have offered no declarations or affidavits but instead simply pointed to their allegations in the Consolidated Complaint concerning the basic facts of their loan transaction. The law requires Plaintiffs to come forward with evidence as to the Rule 23 requirements and their failure to do so means that their motion should be denied. Moreover, the evidence that does exist for each of the Plaintiffs illustrates that none of them would be an adequate class representative.[5]

---

[5] In addition to the lack of evidence as to their ability and willingness to serve as class representatives, Plaintiffs have also neglected to provide the Court with evidence that proposed counsel would be adequate class counsel. While Plaintiffs did attach a declaration from the Edelman firm as to its purported class action experience and qualifications, Plaintiffs did present any evidence describing the

**1.    Ms. Sullivan Is An Inadequate Class Representative Because She Filed A Chapter 7 Bankruptcy Proceeding And No Longer Has Standing To Pursue This Case.**

In 2007, Ms. Sullivan filed a Chapter 7 bankruptcy proceeding and disclosed this lawsuit as an asset in her bankruptcy filings.  (Exh. 9).   In August 2007, Ms. Sullivan obtained a discharge from the Bankruptcy Court but the trustee did not take any procedural steps to abandon her claim.  (Exhs. 10 and 11).  Because the trustee never took the steps to abandon that claim, it remains property of the bankruptcy estate.  *See* 11 U.S.C. § 554; *see also Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 618 (7th Cir. 2002) (noting that the requirements for abandonment under 11 U.S.C. § 554 are "exacting, in recognition of the potential harm to creditors from the trustee's abandoning property").

Thus, Ms. Sullivan lacks standing to pursue her claim, as the bankruptcy trustee is the proper party.  The Seventh Circuit has made it clear that a bankruptcy trustee generally is not an adequate class representative because the trustee's interests are to maximize the assets of the estate, not to protect absent class members.  *See Dechert v. Cadle Co.*, 333 F.3d 801, 802-03 (7th Cir. 2003); *Morlan*, 298 F.3d at 616-17.  The Court should therefore disqualify Ms. Sullivan or her bankruptcy trustee from serving as class representative.

**2.    Ms. Navara And Mr. Stinson Cannot Serve As Class Representatives Due To Serious Credibility Issues.**

As explained earlier, Ms. Navara and Mr. Stinson both represented to the IRS under penalty of perjury that they did not live at the property covered by their Long Beach loan and did not use the property for personal purposes.   This, of course, is directly contrary to their allegations and assertions in this case in which they claim that they used the property for personal purposes.  Indeed, to prove their claims in this case, both Ms. Navara and Mr. Stinson

---

experience or qualifications of the other law firms seeking to be class counsel – The Brooks Law Firm and the Christopher Lefebvre, P.C. law firm.

must admit and prove that they committed tax fraud when they filed their income tax returns. This clearly presents serious credibility issues that render Ms. Navara and Mr. Stinson inadequate class representatives. *Brider v. Nationwide Credit, Inc.*, No. 97-C-3830, 1998 WL 729747, at * 3-4 (N.D. Ill. Oct. 14, 1998) (denying class certification motion because plaintiff's statements during her deposition "call into question whether she will take into consideration the interest of all the class members especially because her lack of credibility will make her vulnerable to attack at trial").

Ms. Navara's credibility issues are further exemplified by the panoply of evidence indicating that she actively assisted in defrauding Long Beach to obtain approval for her loan and receive cash proceeds from the loan.[6]  At her closing, Ms. Navara signed a HUD-1A Settlement Statement in which she represented that $26,000 of her loan proceeds would be paid to "ACS" to satisfy pre-existing debt.  (Exh. 12, Navara HUD-1).  Ms. Navara did not disclose on the HUD-1 that she was going to pay an $8,000 broker fee to Mr. Astudillo (her mortgage broker and loan consultant) or to ACS (Mr. Astudillo's company).

According to Mr. Astudillo, Ms. Navara needed cash proceeds from her loan to pay certain bills.  (Exh. 13, Deposition of Roger Astudillo (the "Astudillo Dep."), Page 130, Lines 12-24, Page 131, Lines 10-17).  Long Beach informed Mr. Astudillo that it would not approve a loan for a refinance that was less than $50,000 and strictly prohibited cash proceeds in connection with refinanced loans.  (*Id.* 131:18-25, 132:1-25, 164:18-25, 165:1-5, 225:2-14).  To ensure that Ms. Navara could receive cash from her loan proceeds, Mr. Astudillo and Ms. Navara

---

[6] Ms. Navara's fraudulent actions directly relate to her credibility as a class representative but are also relevant for the individual claims she asserts in her individual suit.  More particularly, Ms. Navara alleges that Long Beach violated TILA and the Illinois Consumer Fraud Act based on an $8,000 fee paid to her mortgage broker/loan consultant (Astudillo Consulting Services or "ACS").  (*See* Case No. 05-0864, 3d Am. Compl.).  Ms. Navara claims that after the $26,000 figure listed in the HUD-1 and her loan application was paid to ACS, Mr. Astudillo then paid $18,000 back to Ms. Navara and retained $8,000 as a broker fee.  (*Id.* at ¶ 14(c)).

completed leases for Ms. Navara's rental property, dated back to 2002, which Ms. Navara presented to her tenants for signature and which were presented to Long Beach as proof of rental income. (*Id.* 96:1-25, 247:6-23). Also, Mr. Astudillo then completed the loan application (with Ms. Navara's acquiescence) by indicating that there was an existing $26,000 debt to ACS in the liabilities column to disguise the cash proceeds as pre-existing debt. (*Id.* 251:6-25, 252:1-18). Mr. Astudillo then prepared a handwritten note and settlement letter for Ms. Navara to sign to further defraud Long Beach into believing that part of Ms. Navara's loan proceeds would satisfy an alleged pre-existing debt. (*Id.* 251:6-25, 252:1-25, 253:1-25, 254:1-25, 255:1-4). Ms. Navara signed the handwritten note after Mr. Astudillo explained its purpose to her. (*Id.* 252:1-18). Mr. Astudillo did not tell anyone at his mortgage brokerage company or Long Beach about their plan because, if he did, Long Beach would not approve the loan. (*Id.* 131:10-22, 255:12-14).

Clearly, this fraudulent conduct by Ms. Navara disqualifies her from serving as a class representative in this case. If that were not enough, however, Ms. Navara contradicted herself several times under oath during her deposition.[7] For example, Ms. Navara initially claimed that no one else lived in her coach house with her. (Exh. 1, Navara Dep. 54:23-24, 55:1). On the second day of her deposition, Ms. Navara changed course and admitted that Sergio Sanchez has lived in the coach house and paid to her rent since the 1990s. (*Id.* 132:3-15). Similarly, when first asked who performs general maintenance and work on her rental property, Ms. Navara

---

[7] The ease by which the truth escapes Ms. Navara is perhaps best demonstrated by the following passage from her deposition:
> Q.   Okay. When you read this document in Mr. Hofeld's office sometime after April the 24th, did you see any errors in it?
> A.   Let me think. ***I could say that, yes.***
> Q.   You saw some errors?
> A.   ***I am going to change it to no.***
> Q.   Okay. So you don't recall seeing any errors?
> A.   ***No. I am going to say no.***

(Exh. 1, Navara Dep. 22:1-9) (emphasis added).

stated, "sometimes my brother, myself." (*Id.* 64:4-6). In the second day of her deposition, Ms. Navara again changed her story and testified that someone else (Mr. Sergio Sanchez) was the only person who performed maintenance on the property. (*Id.* 132:19-24, 133:1-7).

## III. PLAINTIFFS CANNOT SATISFY RULE 23(B)(3)'S PREDOMINANCE REQUIREMENT BECAUSE THIS CASE INVOLVES INDIVIDUAL FACTUAL ISSUES.

The predominance requirement of Rule 23(b)(3) tests whether the putative class is sufficiently cohesive to warrant adjudication by representation. *Amchem Products,* 521 U.S. at 623. In contrast to the commonality analysis under Rule 23(a), the predominance inquiry under Rule 23(b) is much "more demanding." *Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328, 332 (N.D. Ill. 2006) (citing *Amchem*, 521 U.S. at 623). Indeed, in light of *Amchem*, the Rule 23(a) commonality requirement has largely been subsumed under the Rule 23(b)(3) predominance requirement. *Vodak v. City of Chicago*, No. 03-C-2463, 2008 WL 687221, at *3 (N.D. Ill. March 10, 2008). To determine whether common issues predominate, the court must first examine the substantive issues raised by the claims asserted and then inquire into the proof relevant to each issue. *Id.* (citing *Simer v. Rios*, 661 F.2d 655, 672 (7th Cir. 1981)).

### A. The Court Must Individually Examine Each Loan Transaction To Determine The Purpose For The Loan.

The disclosure requirements under TILA apply only to "consumer credit" transactions, which are defined as transactions extended "[p]rimarily for personal, family or household purposes." 15 U.S.C. § 1602(h). Credit transactions primarily for "business or commercial purposes" are not subject to TILA's disclosure requirements. *See* 15 U.S.C. § 1603(1); 12 C.F.R. § 226.3(a). Although TILA does not define "business purpose," the Regulation Z Staff Commentary lists several factors that courts should consider when determining whether a loan

was obtained for a consumer purpose or a business purpose.  *See* Supplement I to 12 C.F.R. §

226.3, at Commentary 3(a)(2).[8]

The Commentary states that merely providing TILA disclosures is not determinative of

whether the loan was used for business or consumer purposes.  *Id.* at Commentary 3(a)(1).

Instead, courts should consider the following factors in determining a borrower's purpose in

obtaining a mortgage loan:

- The relationship of the borrower's primary occupation to the acquisition (the more closely related, the more likely it is to be a business purpose);

- The degree to which the borrower will personally manage the acquisition (the more personal involvement there is, the more likely it is to be a business purpose);

- The ratio of income from the acquisition to the total income of the borrower (the higher the ratio, the more likely it is to be a business purpose);

- The size of the transaction (the larger the transaction, the more likely it is to be a business purpose); and

- The borrower's statement of purpose for the loan.

*Id.* at Commentary 3(a)(2).

Moreover, in situations involving rental property, courts must determine whether the

mortgaged property is non-owner-occupied or owner-occupied.  Loans obtained in connection

with non-owner occupied rental property are "deemed to be for business purposes" and thus

TILA does not apply.  *See id.* at Commentary 3(a)(3).  If it is owner-occupied, the court must

then consider whether the loan was used to acquire the property or was used to make

_____

[8] The Seventh Circuit has made it clear that "the official staff opinions of the Federal Reserve Board construing TILA and Regulation Z are binding on this court unless they are 'demonstrably irrational.'" *Walker v. Wallace Auto Sales, Inc.*, 155 F.3d 927, 931 (7th Cir. 1998) (citing *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565, 100 S. Ct. 790 (1980)).

improvements to the property.  *See id.* at Commentary 3(a)(4) ("[c]redit extended to acquire the rental property is deemed to be for business purposes if it contains more than 2 housing units" and "credit extended to improve or maintain the rental property is deemed to be for business purposes if it contains more than 4 housing units").[9]

Careful consideration of the factors listed in the Commentary is crucial in this case because there are a large number of loans encompassed by the proposed class that would involve real estate containing multiple units (not single family residences).  There is a greater chance that multiple unit properties (as opposed to single family homes) could be used by investors as rental properties or investment properties.  Thus, the Court must individually review each loan transaction in the putative class and consider a host of factors to determine whether the borrower obtained the loan for a consumer purpose.  For example, the Court must analyze the borrower's occupation, his or her income, the income derived from the property, the purpose as stated in the loan application, the extent of efforts undertaken by the consumer to manage the property, the number of units covered by the mortgage, whether the loan was used to make improvements to the property or was instead used to acquire the property, and whether the property is owner-occupied.

In light of these individual factors, courts have declined class certification when the plaintiffs' claims would require individual examinations of whether the loans were exempt from TILA.  *See Roman v. First Franklin Fin. Corp.*, No 00-C-7228, 2001 U.S. Dist. LEXIS 3968, at *7-8 (N.D. Ill. Apr. 2, 2001) (holding that the factors outlined in the Commentary would require the court to conduct "highly fact intensive inquiries and that certification would result in an

---

[9] The Commentary emphasizes that neither of the two additional rules for owner-occupied property means "that an extension of credit for property containing fewer than the requisite number of units is necessarily consumer credit.  In such cases, the determination of whether it is business or consumer credit should be made by considering the factors listed in Comment 3(a)(2)."  *See* Commentary 3(a)(4).

undetermined number of mini-trials." (citing *McGarvey v. Citibank (South Dakota)*, No. 95-C-0123, 1995 WL 404866, at *6 (N.D. Ill. July 5, 1995)).[10]

The cases cited by Plaintiffs on this issue are distinguishable because (unlike the *Roman* court), those courts neglected to weigh all the factors enumerated in the Commentary.[11] Moreover, those courts suggested that the fact-intensive individual inquires required by this issue can be mechanically addressed through a class questionnaire. Long Beach respectfully requests that a simple questionnaire directed to all class members would not thoroughly account for the myriad of factors enunciated in the Commentary; instead, a court must conduct a "mini-trial" for each class member to determine the reasons why they obtained their loan. Indeed, if Ms. Navara and Mr. Stinson were absent class members (instead of named Plaintiffs), the Court would not be able to discern that they had represented to the IRS that they were not using the property for personal purposes and that they had obtained a loan in connection with non-owner occupied rental property. That the Court would have to undertake a similar analysis for each putative class members underscores the fact that this case is not suitable for class treatment.

---

[10] Other courts have reached similar conclusions. *See Berkman v. Sinclair Oil Corp.*, 59 F.R.D. 602, 609 (N.D. Ill. 1973) (denying class certification in part because the defendant had a due process right to require from each class member proof as to whether the primary use of the credit extended was personal or business use thereby making a class action "entirely unmanageable"); *Parker v. George Thompson Ford, Inc.*, 83 F.R.D. 378, 381 (D.C. Ga. 1979) (stating that class action certification is not proper when a finding of fact would be required for each alleged class member to decide if credit was extended primarily for personal use or business use); *Rodriguez v. Family Publication Service, Inc.* 57 F.R.D. 189, 193 (C.D. Cal. 1972).

[11] On this issue, Plaintiffs cite *Peoples v. Sebring Capital Corp.*, No. 01-C-5676, 2002 WL 406979 (N.D. Ill. Mar. 15, 2002), *Powell v. Advanta Nat'l Bank*, No. 00-C-7234, 2001 U.S. Dist. LEXIS 14048 (N.D. Ill. Sept. 4, 2001), and *Romaker v. Crossland Mortg. Corp.*, No. 94-C-3328, 1996 U.S. Dist. LEXIS 6490 (N.D. Ill. May 8, 1996).

**B.    There Are Predominating Individual Issues As To Whether Each Putative Class Member Intended Certain Items To Be Permanently Attached To The Real Property.**

Plaintiffs' claims are not suitable for class treatment because there are individualized factual issues as to whether the items enumerated in the Rider constitute fixtures.  The gist of Plaintiffs' Family Rider claim is that the Rider created a security interest in personal property that should have been disclosed on the TILA disclosure statement.  TILA, however, makes it clear that the term "security interest" does not include "incidental interests" such as "fixtures." *See* 12 C.F.R. § 226.2(a)(25).

Because neither TILA nor Regulation Z defines the term "fixture," the term must be construed pursuant to state law.  12 C.F.R. § 226.2(b)(3).  As a general matter, in determining whether an item is a "fixture," the court must evaluate the "intent of the party attaching it to the realty."  *See, e.g., A & A Market, Inc. v. Pekin Ins. Com.*, 306 Ill. App. 3d 485, 487 (1st Dist. 1999); *Premonstratensian Fathers v. Badger Mut. Ins. Co.*, 46 Wis. 2d 362, 367 (1970); *Prospecting Unlimited, Inc. v. Norberg*, 119 R.I. 116, 121 (1977).  In fact, Illinois courts have noted that intent is the "preeminent factor" in determining whether a piece of property is a fixture.  *A & A Market, Inc.*, 306 Ill. App. 3d at 487.

In light of this "intent" component, the Court must examine each loan transaction (or real estate purchase agreement) to determine whether the borrower intended that the items listed in the Rider would be permanently attached to the real estate.  As courts have recognized, determining whether a piece of property constitutes a "fixture" is a highly fact-intensive inquiry. *See Lindstrom v. Houzenga*, 177 Ill. App. 3d 1, 2 (2d Dist. 1988) (whether mortgage was secured for property intended to be personal property or fixtures created a material issue of fact thereby precluding summary judgment); *see also Freeman v. Barrs*, 237 S.W.3d 285, 289 (Mo. App. 2007); *Brown & Root, Inc. v. Shelton*, No. 01-00259-CV, 2003 WL 21771917, at *3 (Tex. App.

July 31, 2003).  These kinds of subjective individualized inquires render this case inappropriate for class treatment and the Court should deny Plaintiffs' motion.

## <u>CONCLUSION</u>

For the foregoing reasons, Long Beach respectfully requests that this Court deny Plaintiffs' motion for class certification.

Dated:  June 11, 2008                          Respectfully submitted,

Washington Mutual Bank
f/k/a Long Beach Mortgage Company


By:      /s/ Gabriel A. Crowson
         Matthew M. Neumeier
         Scott T. Schutte
         Gabriel A. Crowson
         HOWREY LLP
         321 N. Clark St. Suite 3400
         Chicago, IL 60610
         Telephone: (312) 595-1239
         Fax: (312) 595-2250
         Email: neumeierm@howrey.com
                schuttes@howrey.com
                crowsong@howrey.com

## <u>CERTIFICATE OF SERVICE</u>

I, Gabriel A. Crowson, hereby certify that a copy of the foregoing Long Beach's Memorandum in Opposition to Plaintiffs' Motion for Class Certification has been served on all counsel of record with the Clerk of the Court using the CM/ECF system on the 11th day of June, 2008.

<u>/s/ Gabriel A. Crowson</u>
Gabriel A. Crowson