# EXHIBIT G

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

1               IN THE UNITED STATES DISTRICT COURT

2                 NORTHERN DISTRICT OF ILLINOIS

3                     EASTERN DIVISION

4

5   LONG BEACH MORTGAGE COMPANY              )

6   TRUTH IN LENDING ACT FAMILY              ) MDL CASE

7   LITIGATION                               NO. CV 06543

8

9

10      THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

11

12              The deposition of ALBERT STINSON,

13   called for examination, taken pursuant to the

14   Federal Rules of Civil Procedure of the United

15   States District Courts pertaining to the taking of

16   depositions, taken before NOREEN S. ERICKSON, CSR

17   No. 84-1527, a Notary Public within and for the

18   County of Cook, State of Illinois, and a Certified

19   Shorthand Reporter of said state, at Suite 3500,

20   321 North Clark Street, Chicago, Illinois, on the

21   21st day of April, A.D. 2008, at 10:13 a.m.

22

23

24

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

```
 1   PRESENT:

 2        EDELMAN, COMBS, LATTURNER & GOODWIN, LLC,

 3        (120 South LaSalle Street, 18th Floor

 4         Chicago, Illinois  60603

 5         Telephone: 312-739-4200), by:

 6        MS. CATHLEEN M. COMBS,

 7        MR. MICHAEL J. ASCHENBRENER,

 8             appeared on behalf of the Witness;

 9

10        HOWERY LLP,

11        (321 North Clark Street, Suite 3400

12         Chicago, Illinois  60610

13         Telephone: 312-846-5645), by:

14        MR. GABRIEL A. CROWSON,

15        MR. SCOTT T. SCHUTTE,

16             appeared on behalf of Long Beach

17             Mortgage Company;

18

19   ALSO PRESENT:

20        MR. MARC BUHMANN, The Videographer,

21          Esquire Deposition Services.

22

23   REPORTED BY:  NOREEN S. ERICKSON, RPR, C.S.R.

24          CERTIFICATE NO. 84-01527
```

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:13:20 | 1 | THE VIDEOGRAPHER:  Good morning.  We're going |
| 10:13:22 | 2 | on the video record at 10:13 a.m. |
| 10:13:25 | 3 | My name is Marc Buhmann, and I'm a legal |
| 10:13:28 | 4 | videographer in association with Esquire |
| 10:13:30 | 5 | Deposition Services located at 311 West Monroe, |
| 10:13:34 | 6 | Chicago, Illinois. |
| 10:13:35 | 7 | The court reporter is Noreen Erickson, |
| 10:13:38 | 8 | also in association with Esquire Deposition |
| 10:13:40 | 9 | Services. |
| 10:13:41 | 10 | Here begins the videotape deposition of |
| 10:13:43 | 11 | Albert Stinson, taking place at Howery LLP, 321 |
| 10:13:49 | 12 | North Clark Street, 34th floor, Chicago, Illinois. |
| 10:13:52 | 13 | Today's date is April 21st, 2008. |
| 10:13:56 | 14 | This deposition is being taken in the |
| 10:13:58 | 15 | matter of Long Beach Mortgage Company, Truth in |
| 10:14:04 | 16 | Lending Act, Family Rider litigation in the United |
| 10:14:06 | 17 | States District Court Northern District of |
| 10:14:08 | 18 | Illinois Eastern Division.  MDL case number 07 CV |
| 10:14:14 | 19 | 06543. |
| 10:14:15 | 20 | This deposition is being taken on behalf |
| 10:14:17 | 21 | of the defendants, the party at whose instance |
| 10:14:19 | 22 | this deposition is being recorded on an |
| 10:14:22 | 23 | audio-video recording device. |
| 10:14:25 | 24 | Counsel, please identify yourselves for |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:14:26 | 1 | the record. |
| 10:14:26 | 2 | MS. COMBS:  Cathleen Combs on behalf of |
| 10:14:29 | 3 | Mr. Stinson. |
| 10:14:30 | 4 | MR. ASCHENBRENER:  Michael Aschenbrener on |
| 10:14:32 | 5 | behalf of Mr. Stinson. |
| 10:14:32 | 6 | MR. CROWSON:  Gabriel Crowson on behalf of |
| 10:14:37 | 7 | defendant, Long Beach Mortgage Company. |
| 10:14:37 | 8 | MR. SCHUTTE:  Scott Schutte for Long Beach |
| | 9 | Mortgage Company. |
| | 10 | THE VIDEOGRAPHER:  Will the court reporter |
| | 11 | please swear in the witness. |
| | 12 | (WHEREUPON, the witness was duly |
| | 13 | sworn.) |
| | 14 | ALBERT STINSON, |
| | 15 | called as a witness herein, having been first duly |
| | 16 | sworn, was examined and testified as follows: |
| | 17 | EXAMINATION |
| | 18 | BY MR. CROWSON: |
| | 19 | Q.    Good morning, Mr. Stinson. |
| | 20 | A.    Good morning. |
| 10:14:50 | 21 | Q.    My name is Gabe Crowson, I represent |
| 10:14:51 | 22 | Long Beach in the lawsuit that you filed.  We met |
| 10:14:53 | 23 | earlier this morning. |
| 10:14:54 | 24 | Would you please state and spell your |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:14:57 | 1 | full name for the record. |
| 10:14:57 | 2 | A.    Albert Stinson, A-l-b-e-r-t, |
| | 3 | S-t-i-n-s-o-n. |
| 10:15:07 | 4 | Q.    Are you a junior or a senior? |
| 10:15:07 | 5 | A.    Junior. |
| | 6 | Q.    Have you ever gone by any other names? |
| 10:15:08 | 7 | A.    No. |
| 10:15:08 | 8 | Q.    Have your given a deposition before? |
| 10:15:10 | 9 | A.    No. |
| 10:15:10 | 10 | Q.    I'll go over a few of the ground rules. |
| 10:15:14 | 11 | Your lawyer may have talked about this with you |
| 10:15:16 | 12 | already -- |
| 10:15:16 | 13 | A.    Right. |
| 10:15:16 | 14 | Q.    -- but I have to make sure. |
| 10:15:18 | 15 | I'll be answering the questions, you'll |
| 10:15:20 | 16 | be giving the responses.  As you can see there's a |
| 10:15:22 | 17 | court reporter here who's taking everything down. |
| 10:15:24 | 18 | For that reason, it's important that you give an |
| 10:15:27 | 19 | audible response to all of my questions.  Even |
| 10:15:30 | 20 | though I may know what you mean when you kind of |
| 10:15:32 | 21 | nod or say huh-uh, she can't take it down, so you |
| 10:15:35 | 22 | need to give a verbal response, yes or no or |
| 10:15:37 | 23 | whatever to the actual question. |
| 10:15:40 | 24 | Also it's important, because she can |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:15:41 | 1 | only take down one person at a time, that you let |
| 10:15:44 | 2 | me finish my question before you begin |
| 10:15:45 | 3 | your response, and I'll do the same, I'll let you |
| 10:15:49 | 4 | finish your response before I begin my next |
| 10:15:51 | 5 | question. |
| 10:15:51 | 6 | Also, there's no judge here today.  But |
| 10:15:56 | 7 | periodically your lawyer may make objections for |
| 10:16:00 | 8 | the record.  Those are to preserve, you know, for |
| 10:16:03 | 9 | down the road.  But unless they instruct you |
| 10:16:05 | 10 | otherwise, you're required to answer the questions |
| 10:16:08 | 11 | that are pending.  If you need me to restate the |
| 10:16:10 | 12 | question, or rephrase it, please let me know. |
| 10:16:13 | 13 | A.    Okay. |
| 10:16:13 | 14 | Q.    Is there any reason that would impair |
| 10:16:20 | 15 | your ability to understand and answer truthfully |
| 10:16:23 | 16 | my questions today? |
| 10:16:24 | 17 | A.    No. |
| 10:16:24 | 18 | Q.    And you understand that you're being |
| 10:16:28 | 19 | deposed in connection with a lawsuit that you |
| 10:16:31 | 20 | filed against Long Beach Mortgage Company? |
| 10:16:33 | 21 | A.    Yes, I do. |
| 10:16:34 | 22 | Q.    And do you understand that the |
| 10:16:36 | 23 | deposition is being videotaped and taken down by a |
| 10:16:38 | 24 | court reporter as well? |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:16:39 | 1 | A.    Yes, I do. |
| 10:16:40 | 2 | Q.    Do you understand that the videotape |
| 10:16:43 | 3 | and/or your testimony could be shown to a judge or |
| 10:16:46 | 4 | jury in this lawsuit? |
| 10:16:47 | 5 | A.    Yes. |
| 10:16:47 | 6 | Q.    I'd like you to tell me in your own |
| 10:16:54 | 7 | words what you think Long Beach has done wrong. |
| 10:16:58 | 8 | A.    I think they violated -- they Truth in |
| 10:17:03 | 9 | Lending Act by not disclosing what they suppose to |
| 10:17:06 | 10 | disclose, as far as that 1-4 family rider. |
| 10:17:08 | 11 | Q.    And what was it that you claim that |
| 10:17:10 | 12 | they were supposed to disclose? |
| 10:17:12 | 13 | A.    The security interest on my personal |
| 10:17:14 | 14 | property. |
| 10:17:15 | 15 | Q.    And is that the only thing that you |
| 10:17:20 | 16 | claim Long Beach has done wrong? |
| 10:17:23 | 17 | A.    Yes, because I think that's most |
| 10:17:25 | 18 | important. |
| 10:17:25 | 19 | Q.    Other than -- other than your claim |
| 10:17:29 | 20 | that they didn't disclose a security interest in |
| 10:17:32 | 21 | personal property, is there anything -- any other |
| 10:17:36 | 22 | problems that you have with your loan with Long |
| 10:17:41 | 23 | Beach? |
| 10:17:42 | 24 | A.    I'd rather not say.  I just -- I just |

| | | |
|---|---|---|
| 10:17:46 | 1 | think all of it is a fraud.  It's just my personal |
| 10:17:49 | 2 | opinion of things. |
| 10:17:50 | 3 | Q.    Okay.  What I'm trying to figure out is |
| 10:17:52 | 4 | what all those things were that constitute fraud. |
| 10:17:56 | 5 | I mean, you've identified the failure to disclose |
| 10:17:58 | 6 | security interest? |
| 10:18:00 | 7 | A.    Just the practice on loan -- on loan |
| 10:18:04 | 8 | companies, period. |
| 10:18:05 | 9 | Q.    But what other practices? |
| 10:18:06 | 10 | A.    Just the mess that the mortgage crisis |
| 10:18:10 | 11 | is in right now.  You know, I don't want to go on |
| 10:18:13 | 12 | and on about that.  I just want to just -- |
| 10:18:14 | 13 | Q.    But do you allege that Long Beach did |
| 10:18:17 | 14 | anything to you similar to what's going on in |
| 10:18:19 | 15 | mortgage industry right now? |
| 10:18:21 | 16 | A.    Just on behalf of violating what they |
| 10:18:22 | 17 | didn't disclose.  That's it. |
| 10:18:23 | 18 | Q.    Just the failure to disclose the |
| 10:18:26 | 19 | security interest? |
| 10:18:26 | 20 | A.    Right. |
| 10:18:27 | 21 | Q.    When did you first feel that they had |
| 10:18:31 | 22 | done something wrong? |
| 10:18:32 | 23 | A.    When they came into my attention when |
| 10:18:35 | 24 | Al Hofeld sent me what he sent me.  And I was, |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:18:39 | 1 | like, wow.  You know, I never could imagine that. |
| 10:18:41 | 2 | Q.    How do you know -- are you talking |
| 10:18:43 | 3 | about Al Hofeld? |
| 10:18:44 | 4 | A.    Yes. |
| 10:18:45 | 5 | Q.    How do you know Al? |
| 10:18:46 | 6 | A.    He sent me a package.  And once I read |
| 10:18:48 | 7 | the package about what was going on, it just -- it |
| 10:18:52 | 8 | just had me appalled. |
| 10:18:53 | 9 | Q.    When -- had you ever spoken or met |
| 10:18:59 | 10 | Mr. Hofeld before that package? |
| 10:19:00 | 11 | A.    No. |
| 10:19:00 | 12 | Q.    So it was just a cold -- something sent |
| 10:19:03 | 13 | in the mail to you? |
| 10:19:04 | 14 | A.    Right. |
| 10:19:05 | 15 | Q.    When was that? |
| 10:19:07 | 16 | A.    Around January.  I received it January |
| 10:19:10 | 17 | '07, something like that.  I have the package in |
| 10:19:12 | 18 | my bag, as a matter of fact. |
| 10:19:14 | 19 | Q.    Did you ever give that package to your |
| 10:19:22 | 20 | attorneys? |
| 10:19:22 | 21 | A.    No. |
| 10:19:23 | 22 | Q.    But you brought it here with you today? |
| 10:19:25 | 23 | A.    Yes. |
| 10:19:25 | 24 | Q.    What was included in that package? |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:19:37 | 1 | A.    Just things pertaining to that 1-4 |
| 10:19:42 | 2 | rider that should have been disclosed, and how it |
| 10:19:43 | 3 | was a violation upon the Truth in Lending Act for |
| 10:19:47 | 4 | not disclosing that. |
| 10:19:47 | 5 | Q.    Why did Mr. Hofeld send that to you? |
| 10:19:50 | 6 | A.    I guess they saw something that was |
| 10:19:52 | 7 | worth going after. |
| 10:19:53 | 8 | Q.    How did Mr. Hofeld know about you, |
| 10:19:55 | 9 | though? |
| 10:19:55 | 10 | A.    I guess they did their homework. |
| 10:19:58 | 11 | That's all I can tell you. |
| 10:19:59 | 12 | Q.    What else was in that package? |
| 10:20:03 | 13 | A.    I didn't really go through the whole |
| 10:20:06 | 14 | package.  That peaked my interest, that Long Beach |
| 10:20:09 | 15 | can have that, not disclose that they can have |
| 10:20:12 | 16 | something on my personal property.  And I really |
| 10:20:14 | 17 | took offense to that. |
| 10:20:15 | 18 | Q.    Was it was -- was there a letter in the |
| 10:20:19 | 19 | package? |
| 10:20:19 | 20 | A.    Yes. |
| 10:20:20 | 21 | Q.    And did it include some other |
| 10:20:24 | 22 | materials? |
| 10:20:24 | 23 | A.    No, just information on that 1-4. |
| 10:20:26 | 24 | Q.    Just a letter that had information |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:20:29 | 1 | about the family rider? |
| 10:20:30 | 2 | A.    Yes. |
| 10:20:30 | 3 | Q.    And what did you do after you received |
| 10:20:34 | 4 | this package? |
| 10:20:34 | 5 | A.    After I received the letter -- |
| 10:20:36 | 6 | MS. COMBS:  Mr. Stinson, I want you to be |
| 10:20:39 | 7 | careful when you answer your questions not to say |
| 10:20:41 | 8 | what you told your attorney about or what your |
| 10:20:43 | 9 | attorney told you.  But if you can answer the |
| 10:20:45 | 10 | question without revealing it, go ahead and |
| 10:20:47 | 11 | answer. |
| 10:20:48 | 12 | THE WITNESS:  Okay.  Can you repeat the |
| 10:20:49 | 13 | question. |
| 10:20:49 | 14 | BY MR. CROWSON: |
| 10:20:49 | 15 | Q.    Yeah.  What did you do after you |
| 10:20:51 | 16 | received the package from Mr. Hofeld? |
| 10:20:53 | 17 | A.    I looked over it and I went home and I |
| 10:20:56 | 18 | looked through my loan papers, see if I have that |
| 10:21:00 | 19 | 1-4 rider first.  And once I found out that I had |
| 10:21:02 | 20 | that 1-4 rider, then that's when I took |
| 10:21:05 | 21 | appropriate action. |
| 10:21:05 | 22 | Q.    So you looked at your loan papers at |
| 10:21:08 | 23 | home? |
| 10:21:08 | 24 | A.    Yes. |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:21:08 | 1 | Q.      And you saw the 1-4 family rider in |
| 10:21:12 | 2 | there? |
| 10:21:12 | 3 | A.      Yes. |
| 10:21:12 | 4 | Q.      And then what did you do after that? |
| 10:21:14 | 5 | A.      Is that -- |
| 10:21:14 | 6 | MS. COMBS:  You can say what you did, but |
| 10:21:16 | 7 | not -- but not what was said. |
| 10:21:19 | 8 | THE WITNESS:  Okay. |
| | 9 | BY THE WITNESS: |
| 10:21:20 | 10 | A.      What I did, I contacted who I need to |
| 10:21:22 | 11 | contact and tell them yes, I have this 1-4 rider. |
| 10:21:26 | 12 | MS. COMBS:  Again, do not say what you said |
| 10:21:27 | 13 | to your attorneys or what your attorney said to |
| 10:21:29 | 14 | you.  But you can answer the question if you can |
| 10:21:31 | 15 | answer the question without revealing that.  Go |
| 10:21:34 | 16 | ahead. |
| 10:21:34 | 17 | THE WITNESS:  Okay. |
| 10:21:34 | 18 | BY MR. CROWSON: |
| 10:21:36 | 19 | Q.      So you called someone at Mr. Hofeld's |
| | 20 | firm? |
| 10:21:44 | 21 | MS. COMBS:  You can answer that question -- |
| | 22 | BY THE WITNESS: |
| 10:21:44 | 23 | A.      Yes. |
| | 24 | |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

|  |  |  |
|---|---|---|
|  | 1 | BY MR. CROWSON: |
| 10:21:46 | 2 | Q.    And I'm not looking for what you told |
| 10:21:48 | 3 | anyone at the law firm or what they told you, but |
| 10:21:49 | 4 | I'm entitled to a lot of details about the -- |
| 10:21:52 | 5 | leading up to the relationship.  And that's what |
| 10:21:54 | 6 | I'm trying to get at. |
| 10:21:55 | 7 | And all I'm asking is, you know, roughly |
| 10:21:59 | 8 | how long after you received that package did you |
| 10:22:01 | 9 | call someone at the Edelman firm? |
| 10:22:05 | 10 | A.    Right away. |
| 10:22:05 | 11 | Q.    Like within a day -- |
| 10:22:06 | 12 | A.    Within a day, probably within a day. |
| 10:22:08 | 13 | Q.    And did you speak with Mr. Hofeld, or a |
| 10:22:11 | 14 | paralegal, or some other attorney? |
| 10:22:14 | 15 | A.    I spoke -- I think I recall speaking to |
| 10:22:18 | 16 | Al Hofeld. |
| 10:22:21 | 17 | Q.    And did you at that time decide to |
| 10:22:27 | 18 | enter into an attorney-client relationship with |
| 10:22:31 | 19 | Mr. Hofeld? |
| 10:22:31 | 20 | A.    Yes. |
| 10:22:31 | 21 | Q.    Do you have a written agreement where |
| 10:22:36 | 22 | you retained Mr. Hofeld and his firm? |
| 10:22:39 | 23 | A.    No, I do not. |
| 10:22:40 | 24 | Q.    And you believe that was around January |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:22:46 | 1 | of 2007? |
| 10:22:47 | 2 | A.     Yes. |
| 10:22:47 | 3 | Q.     Now you said you were upset about |
| 10:22:56 | 4 | learning about the 1-4 family rider.  Have you -- |
| 10:23:02 | 5 | do you feel that you've incurred any economic |
| 10:23:07 | 6 | damages because of the 1-4 family rider? |
| 10:23:10 | 7 | MS. COMBS:  Objection, calls for a legal |
| 10:23:12 | 8 | conclusion.  But he can answer. |
| | 9 | BY THE WITNESS: |
| 10:23:14 | 10 | A.     I feel I would have. |
| 10:23:17 | 11 | BY MR. CROWSON: |
| 10:23:17 | 12 | Q.     If what? |
| 10:23:18 | 13 | A.     If I would have been able to stay at |
| 10:23:22 | 14 | that property and defaulted on the loan. |
| 10:23:26 | 15 | Q.     Have you ever defaulted on your loan |
| 10:23:28 | 16 | before? |
| 10:23:28 | 17 | A.     No, I have not. |
| 10:23:29 | 18 | Q.     Do you still have the loan? |
| 10:23:30 | 19 | A.     No, I do not. |
| 10:23:31 | 20 | Q.     When did you pay it off? |
| 10:23:36 | 21 | A.     Actually -- let me see, on my statement |
| 10:23:41 | 22 | and I don't really know -- it should be in there, |
| 10:23:43 | 23 | I gave the property -- |
| 10:23:46 | 24 | Q.     You sold the property? |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:23:47 | 1 | A.    Yes. |
| 10:23:47 | 2 | Q.    When was that? |
| 10:23:52 | 3 | A.    Like I said, I don't get the date, but |
| 10:23:55 | 4 | like I said, I gave it to some investors because I |
| 10:23:57 | 5 | could no longer keep it. |
| 10:23:58 | 6 | Q.    You could no longer afford the mortgage |
| 10:24:01 | 7 | payments? |
| 10:24:01 | 8 | A.    Yes. |
| 10:24:01 | 9 | Q.    So you sold it to some investors? |
| 10:24:04 | 10 | A.    Yes. |
| 10:24:04 | 11 | Q.    And you're just not sure exactly when? |
| 10:24:06 | 12 | A.    No.  Like I said, all my papers got |
| 10:24:10 | 13 | destroyed in the fire at my home.  So I really |
| 10:24:11 | 14 | don't have any type of other paperwork in that. |
| 10:24:14 | 15 | Q.    Just so we're clear, the house that |
| 10:24:17 | 16 | we're talking about is the address at 127 -- |
| 10:24:21 | 17 | A.    No. |
| 10:24:21 | 18 | Q.    I'm sorry, 5402 South Shields Avenue in |
| 10:24:25 | 19 | Chicago, Illinois? |
| 10:24:25 | 20 | A.    Yes. |
| 10:24:25 | 21 | Q.    That's the property that you purchased |
| 10:24:30 | 22 | with the Long Beach mortgage loan? |
| 10:24:33 | 23 | A.    Yes. |
| 10:24:33 | 24 | Q.    And you sold that property to some |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:24:35 | 1 | investors? |
| 10:24:36 | 2 | A.      Yes. |
| 10:24:36 | 3 | Q.      So you never defaulted on your mortgage |
| 10:24:46 | 4 | loan? |
| 10:24:46 | 5 | A.      They go my statement there. |
| 10:24:48 | 6 | Q.      I can look at it, but I'm just asking |
| 10:24:50 | 7 | you. |
| 10:24:50 | 8 | A.      Yeah -- no, I never defaulted. |
| 10:24:52 | 9 | Q.      So Long Beach never commenced any |
| 10:24:55 | 10 | foreclosure actions against you? |
| 10:24:57 | 11 | A.      No. |
| 10:24:57 | 12 | Q.      And they never took any of your |
| 10:24:59 | 13 | personal property -- |
| 10:25:00 | 14 | A.      No. |
| 10:25:00 | 15 | Q.      -- by way of foreclosure? |
| 10:25:02 | 16 | A.      No. |
| 10:25:04 | 17 | Q.      What is it that your -- in your own |
| 10:25:09 | 18 | words -- that you're seeking in this lawsuit |
| 10:25:10 | 19 | against Long Beach? |
| 10:25:13 | 20 | A.      Statutory damages. |
| 10:25:14 | 21 | Q.      Anything else? |
| 10:25:15 | 22 | A.      No. |
| 10:25:19 | 23 | Q.      Are you aware that you're a proposed |
| 10:25:22 | 24 | class representative for a class of consumers? |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:25:26 | 1 | A.    Yes, I am. |
| 10:25:26 | 2 | Q.    Do you know what it means to be a class |
| 10:25:29 | 3 | representative? |
| 10:25:29 | 4 | A.    Yes, I am. |
| 10:25:29 | 5 | Q.    Can you tell me in your own words what |
| 10:25:31 | 6 | that means? |
| 10:25:31 | 7 | A.    When one person represents a group of |
| 10:25:36 | 8 | other people that has the same claim. |
| 10:25:38 | 9 | Q.    Do you know any other persons who had a |
| 10:25:41 | 10 | Long Beach loan who have a similar claim as you? |
| 10:25:43 | 11 | A.    No, I do not. |
| 10:25:45 | 12 | Q.    Do you know any of the other named |
| 10:25:46 | 13 | plaintiffs in this lawsuit? |
| 10:25:48 | 14 | A.    The first plaintiff. |
| 10:25:49 | 15 | Q.    Ms. Guadalupe Navara? |
| 10:25:51 | 16 | A.    Yes. |
| 10:25:51 | 17 | Q.    Did you know her before this lawsuit? |
| 10:25:53 | 18 | A.    No. |
| 10:25:53 | 19 | Q.    You just know her because of this |
| 10:25:55 | 20 | lawsuit? |
| 10:25:55 | 21 | A.    Yes. |
| 10:25:56 | 22 | Q.    What about Eric Shelton? |
| 10:25:58 | 23 | A.    No. |
| 10:25:58 | 24 | Q.    What about Mirlaine Jeune? |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:26:02 | 1 | A.    No. |
| 10:26:02 | 2 | Q.    Or Charlene Sullivan? |
| 10:26:23 | 3 | A.    No. |
| 10:26:23 | 4 | Q.    I just want to confirm a couple of |
| 10:26:26 | 5 | personal stats, I guess, before we go into some |
| 10:26:32 | 6 | more substantive stuff. |
| 10:26:36 | 7 | From your loan application I saw that |
| 10:26:37 | 8 | your date of birth is September 6th, 1972? |
| 10:26:40 | 9 | A.    That's correct. |
| | 10 | |
| | 11 | |
| | 12 | |
| | 13 | |
| | 14 | |
| | 15 | |
| | 16 | |
| | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

1              (WHEREUPON, the following

2              proceedings were had designated

3              as confidential:)

4    BY MR. CROWSON:

10:26:42    5        Q.    And your Social Security number is

10:26:44    6    Redacted ?

10:26:46    7        A.    That's correct.

10:26:47    8        MS. COMBS:  I would like that that be kept

10:26:50    9    confidential, please.

10:26:51    10        MR. CROWSON:  That's fine.  That part of the

10:26:53    11    transcript can be confidential.

12              (WHEREUPON, certain proceedings

13              designated as confidential were

14              concluded.)

15

16

17

18

19

20

21

22

23

24

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

|          |    |                                                          |
|----------|----|----------------------------------------------------------|
|          | 1  | BY MR. CROWSON:                                           |
| 10:26:55 | 2  | Q.    And you said you haven't been known by             |
| 10:26:56 | 3  | any other names other than Albert Stinson, Junior?       |
| 10:27:01 | 4  | A.    That's right.                                       |
| 10:27:02 | 5  | Q.    Are you presently married?                          |
| 10:27:03 | 6  | A.    Yes.                                                |
| 10:27:04 | 7  | Q.    What is your's wife name?                           |
| 10:27:05 | 8  | A.    Aisha Harris, A-i-s-h-a, H-a-r-r-i-s.               |
| 10:27:15 | 9  | Q.    And how long have you been married?                 |
| 10:27:18 | 10 | A.    Six years.                                          |
| 10:27:18 | 11 | Q.    Were you ever married before you were               |
| 10:27:23 | 12 | married to Ms. Harris?                                    |
| 10:27:24 | 13 | A.    No.                                                 |
| 10:27:24 | 14 | Q.    What's the highest level of education               |
| 10:27:36 | 15 | you've obtained?                                          |
| 10:27:36 | 16 | A.    I have a two-year degree.                           |
| 10:27:38 | 17 | Q.    An associate's?                                     |
| 10:27:39 | 18 | A.    Associate's in general studies, yes.                |
| 10:27:42 | 19 | Q.    Where did you get that associate's                  |
| 10:27:44 | 20 | degree from?                                              |
| 10:27:46 | 21 | A.    Harold Washington.                                  |
| 10:27:46 | 22 | Q.    And does it have a specific major?                  |
| 10:27:50 | 23 | A.    Mental health.                                      |
| 10:27:51 | 24 | Q.    Mental health?                                      |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:27:53 | 1 | A.    (Nodding head). |
| 10:27:54 | 2 | Q.    What year did you get that associate's |
| 10:27:57 | 3 | degree? |
| 10:27:57 | 4 | A.    '98. |
| 10:27:58 | 5 | Q.    Did you go straight to that university |
| 10:28:06 | 6 | after high school? |
| 10:28:06 | 7 | A.    No, I did not. |
| 10:28:07 | 8 | Q.    What year did you finish high school? |
| 10:28:11 | 9 | A.    Oh, wow, I almost forgot.  '91. |
| 10:28:17 | 10 | Q.    And where? |
| 10:28:20 | 11 | MS. COMBS:  Not so long ago. |
| 10:28:23 | 12 | THE WITNESS:  Right. |
| 10:28:23 | 13 | BY MR. CROWSON: |
| 10:28:24 | 14 | Q.    If you're not sure of specific dates or |
| 10:28:25 | 15 | things like that, you can feel free to say you're |
| 10:28:28 | 16 | not sure. |
| 10:28:28 | 17 | A.    Yeah. |
| 10:28:29 | 18 | Q.    But of course throughout the day if |
| 10:28:31 | 19 | something jogs your memory, please let me know. |
| 10:28:34 | 20 | And where did you go to high school? |
| 10:28:35 | 21 | A.    John Marshal Metro. |
| 10:28:37 | 22 | Q.    That's here in Chicago? |
| 10:28:38 | 23 | A.    Yes. |
| 10:28:38 | 24 | Q.    And did you start working after you |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:28:44 | 1 | finished high school? |
| 10:28:44 | 2 | A.    Actually I went to trade school for a |
| 10:28:47 | 3 | while and the school -- Washburne shut down, so... |
| 10:28:50 | 4 | Q.    How long did you go to the trade |
| 10:28:53 | 5 | school? |
| 10:28:53 | 6 | A.    Maybe three months. |
| 10:28:54 | 7 | Q.    What was that to study? |
| 10:28:56 | 8 | A.    Home building maintenance. |
| 10:28:58 | 9 | Q.    And what did you do after those three |
| 10:29:01 | 10 | months? |
| 10:29:02 | 11 | A.    What did I do?  Pretty much nothing, |
| 10:29:06 | 12 | you know.  Live my life a while. |
| 10:29:09 | 13 | Q.    Did you have any jobs? |
| 10:29:10 | 14 | A.    No, not at the time. |
| 10:29:12 | 15 | Q.    And then when did you start going to |
| 10:29:17 | 16 | get your associate's degree? |
| 10:29:20 | 17 | A.    I'm not -- out the correct date.  I |
| 10:29:24 | 18 | mean, I'm not sure of the date.  Had to be around |
| 10:29:29 | 19 | 201, 202, something like that. |
| 10:29:29 | 20 | Q.    2001? |
| 10:29:33 | 21 | A.    Yeah. |
| 10:29:33 | 22 | Q.    I thought you said you got the degree |
| 10:29:35 | 23 | in 1998? |
| 10:29:36 | 24 | A.    Oh, no, hold on -- let me be sure -- |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:29:41 | 1 | yeah, '98.  I went in '93, but I kept going back |
| 10:29:47 | 2 | and forth.  I take a semester off, go back and |
| 10:29:48 | 3 | forth.  Because I do have an 18-year old child. |
| 10:29:51 | 4 | So I was raising my kids in the the process. |
| 10:29:53 | 5 | Q.    So it wasn't one continuous two years? |
| 10:29:54 | 6 | A.    No, it was over a period of time. |
| 10:29:56 | 7 | Q.    But ultimately in 1998 you got an |
| 10:29:58 | 8 | associate's degree? |
| 10:29:59 | 9 | A.    Right. |
| 10:29:59 | 10 | Q.    And then what did you do after you got |
| 10:30:01 | 11 | your associate's degree? |
| 10:30:02 | 12 | A.    I went to work for Blue Cross, Blue |
| 10:30:05 | 13 | Shield. |
| 10:30:05 | 14 | Q.    What did you do there? |
| 10:30:07 | 15 | A.    What didn't I do there?  Quality |
| 10:30:11 | 16 | control check, people insurance cards.  Mail, |
| 10:30:15 | 17 | distribute packages for new benefit riders, |
| 10:30:18 | 18 | maintain stockroom.  I had various things I did |
| 10:30:21 | 19 | over there.  That was the main three. |
| 10:30:22 | 20 | Q.    Did you have an official title or |
| 10:30:25 | 21 | position? |
| 10:30:25 | 22 | A.    No. |
| 10:30:25 | 23 | Q.    Did you get promoted or move up into |
| 10:30:30 | 24 | any other position? |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| 10:30:31 | 1 | A.    Actually I started as a temp there.  I |
| 10:30:33 | 2 | was working as a temp for two and-a-half years, |
| 10:30:36 | 3 | maybe two and-a-half years. |
| 10:30:37 | 4 | Q.    So you just worked as a temp at Blue |
| 10:30:39 | 5 | Cross for two and-a-half years? |
| 10:30:40 | 6 | A.    Right. |
| 10:30:41 | 7 | Q.    And then what did you do when you left |
| 10:30:44 | 8 | Blue Cross? |
| 10:30:44 | 9 | A.    Maybe like four, five months, I started |
| 10:30:46 | 10 | working for -- oh, no, I got my unemployment for a |
| 10:30:48 | 11 | while.  Then I went to work for Easter Seals. |
| 10:30:54 | 12 | Q.    And what is Easter Seals? |
| 10:30:57 | 13 | A.    It's a school that teaches autism -- |
| 10:31:00 | 14 | kids with autism and other behavior disorders. |
| 10:31:03 | 15 | Q.    And what do you do at Easter Seals? |
| 10:31:07 | 16 | A.    I'm assistant teacher there.  And I was |
| 10:31:08 | 17 | a para per mentor (sic) there for the other aides |
| 10:31:11 | 18 | and assistants. |
| 10:31:13 | 19 | Q.    And is that your current job? |
| 10:31:14 | 20 | A.    Yes. |
| 10:31:15 | 21 | Q.    So you've been there since about 2001? |
| 10:31:22 | 22 | A.    Yes. |
| 10:31:23 | 23 | Q.    And is that the job that you had when |
| 10:31:29 | 24 | you got your Long Beach mortgage loan? |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:31:33 | 1 | A.    Yes. |
| 10:31:34 | 2 | Q.    When you got your associate's degree |
| 10:31:40 | 3 | and prior to that when you were getting your -- or |
| 10:31:44 | 4 | going to the trade school, did you ever take any |
| 10:31:47 | 5 | classes on law or legal affairs? |
| 10:31:51 | 6 | A.    No. |
| 10:31:52 | 7 | Q.    Have you ever -- you know, since you've |
| 10:31:57 | 8 | gotten your associate's degree, taken any |
| 10:31:59 | 9 | continuing education courses or any courses on the |
| 10:32:01 | 10 | law or legal relations? |
| 10:32:03 | 11 | A.    No. Very much interested so though. |
| 10:32:07 | 12 | Q.    And have you ever served in the |
| 10:32:11 | 13 | military? |
| 10:32:12 | 14 | A.    No. |
| 10:32:12 | 15 | Q.    Do you have any other jobs other than |
| 10:32:32 | 16 | working at Easter Seals? |
| 10:32:33 | 17 | A.    No. |
| 10:32:34 | 18 | Q.    And we can mark this part confidential, |
| 10:32:39 | 19 | too, if you want.  Can you tell me what your |
| 10:32:41 | 20 | salary or hourly wage is at Easter Seals? |
| 10:32:49 | 21 | A.    Right now my salary is |
| 10:32:50 | 22 | twenty-four-five. |
| 10:32:51 | 23 | Q.    24,500 a year? |
| 10:32:54 | 24 | A.    Yes. |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:32:54 | 1 | Q.    And do you remember what it was around |
| 10:32:57 | 2 | April of 2006 when you got your Long Beach |
| 10:33:01 | 3 | mortgage loan? |
| 10:33:03 | 4 | A.    Maybe 24, because they give us three |
| 10:33:05 | 5 | percent every year, 24.  Twenty-three-five, 24, in |
| 10:33:10 | 6 | that ballpark there. |
| 10:33:11 | 7 | Q.    And do you have any other sources of |
| 10:33:17 | 8 | income? |
| 10:33:17 | 9 | A.    No. |
| 10:33:18 | 10 | Q.    When you got your Long Beach mortgage |
| 10:33:20 | 11 | loan, did you have any other sources of income? |
| 10:33:23 | 12 | A.    No. |
| 10:33:23 | 13 | Q.    Can you tell me your current address. |
| 10:33:34 | 14 | A.    5937 West Iowa Street, Chicago, |
| 10:33:40 | 15 | Illinois 60651. |
| 10:33:41 | 16 | Q.    And do you own or rent that house? |
| 10:33:48 | 17 | A.    Me and my wife own that property. |
| 10:33:51 | 18 | Q.    Do you lease any part of it out to |
| 10:33:55 | 19 | anyone else? |
| 10:33:56 | 20 | A.    No. |
| 10:33:56 | 21 | Q.    Do you own any other properties other |
| 10:34:00 | 22 | than 5937 West Iowa Street? |
| 10:34:03 | 23 | A.    No. |
| 10:34:04 | 24 | Q.    Do you manage any other rental |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:34:07 | 1 | property? |
| 10:34:07 | 2 | A.    No. |
| 10:34:07 | 3 | Q.    When did you start living at the West |
| 10:34:11 | 4 | Iowa Street address? |
| 10:34:14 | 5 | A.    '06, August. |
| 10:34:16 | 6 | Q.    And before that, were you living at |
| 10:34:21 | 7 | 5402 South Shields Avenue? |
| 10:34:23 | 8 | A.    That was the plan.  I sold my house in |
| 10:34:26 | 9 | Bellwood to go live at that property at 5402 South |
| 10:34:29 | 10 | Shields. |
| 10:34:32 | 11 | Q.    So did you ever live at 5402 South |
| 10:34:37 | 12 | Shields? |
| 10:34:37 | 13 | A.    No. |
| 10:34:38 | 14 | Q.    Can you tell me again what your plan |
| 10:34:45 | 15 | was? |
| 10:34:45 | 16 | A.    I purchased the property to go live in |
| 10:34:49 | 17 | the property.  But once my wife saw that it was on |
| 10:34:51 | 18 | the south side of the town in Englewood, she |
| 10:34:54 | 19 | say -- her exact words was, hell no.  And we had a |
| 10:34:59 | 20 | big fight about that seriously. |
| 10:35:02 | 21 | Q.    I know how that works. |
| 10:35:07 | 22 | MR. SCHUTTE:  Me too, for the record. |
| 10:35:10 | 23 | BY MR. CROWSON: |
| 10:35:10 | 24 | Q.    So at the time you purchased 5402 South |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:35:14 | 1 | Shields, you were living at 127 Bellwood Avenue in |
| 10:35:18 | 2 | Bellwood? |
| 10:35:19 | 3 | A.    Yes.  Yes. |
| 10:35:19 | 4 | Q.    Did you own or rent that house? |
| 10:35:21 | 5 | A.    I owned that. |
| 10:35:22 | 6 | Q.    Did you have a mortgage on it? |
| 10:35:25 | 7 | A.    Yes, I did. |
| 10:35:26 | 8 | Q.    Do you remember who the lender was? |
| 10:35:30 | 9 | A.    Man, they sold my mortgage about three, |
| 10:35:33 | 10 | four times.  I couldn't tell you who the last |
| 10:35:34 | 11 | mortgage on it -- Wells Fargo. |
| 10:35:35 | 12 | Q.    Sorry to interrupt you.  Wells Fargo |
| 10:35:40 | 13 | was the servicer or the original lender? |
| 10:35:42 | 14 | A.    I don't know who the original lender |
| 10:35:43 | 15 | was, but I know Wells Fargo was the last people I |
| 10:35:47 | 16 | was making payments to. |
| 10:35:48 | 17 | Q.    Was the house at 127 Bellwood, was it a |
| 10:35:51 | 18 | single family or -- |
| 10:35:53 | 19 | A.    Single family. |
| 10:35:54 | 20 | Q.    And did anyone other than your wife |
| 10:35:56 | 21 | live there with you? |
| 10:35:58 | 22 | A.    My kids. |
| 10:35:58 | 23 | Q.    Did you -- you didn't lease or rent any |
| 10:36:01 | 24 | part of it out? |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:36:02 | 1 | A.      No. |
| 10:36:02 | 2 | Q.      And at the time you owed that house, |
| 10:36:05 | 3 | did you own any other rental property? |
| 10:36:07 | 4 | A.      No. |
| 10:36:08 | 5 | Q.      How long did you live at the Bellwood |
| 10:36:10 | 6 | address? |
| 10:36:12 | 7 | A.      Maybe like a year, little bit after a |
| 10:36:14 | 8 | year, year and a half.  Something like that. |
| 10:36:16 | 9 | Q.      Did you own a house before that? |
| 10:36:18 | 10 | A.      No. |
| 10:36:19 | 11 | Q.      Where did you life before then? |
| 10:36:21 | 12 | A.      I stayed in Oak Park.  I was renting |
| 10:36:22 | 13 | out in Oak Park. |
| 10:36:23 | 14 | Q.      Is that an address of 712 -- |
| 10:36:25 | 15 | A.      712, yes, North Austin. |
| 10:36:27 | 16 | Q.      So prior to the 127 Bellwood, you had |
| 10:36:31 | 17 | never owned a house before? |
| 10:36:33 | 18 | A.      That's correct. |
| 10:36:33 | 19 | Q.      Now let's back and fast forward.  When |
| 10:36:38 | 20 | you went to buy the house at 5402, your plan was |
| 10:36:45 | 21 | to go and live there? |
| 10:36:46 | 22 | A.      Yes. |
| 10:36:46 | 23 | Q.      And did you plan on renting any part of |
| 10:36:52 | 24 | that house out? |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:36:53 | 1 | A. Yes. |
| 10:36:54 | 2 | Q. Was there an existing tenant at that |
| 10:36:58 | 3 | house? |
| 10:36:58 | 4 | A. Yes. |
| 10:36:58 | 5 | Q. Can you describe for me the layout of |
| 10:37:04 | 6 | that property. |
| 10:37:05 | 7 | A. What you mean, like -- |
| 10:37:06 | 8 | Q. Like is it multiple units? |
| 10:37:08 | 9 | A. Right. It was a top floor, first |
| 10:37:11 | 10 | floor, and I was going to renovate the basement |
| 10:37:14 | 11 | for extra income. |
| 10:37:15 | 12 | Q. You were going to live in one floor? |
| | 13 | A. I was going to live on the top floor. |
| 10:37:19 | 14 | Q. And you were going to rent out -- |
| 10:37:21 | 15 | A. The second floor. |
| 10:37:22 | 16 | Q. Did you have a lease to do that? |
| 10:37:25 | 17 | A. No. |
| 10:37:26 | 18 | Q. Did you have an expectation of a rental |
| 10:37:31 | 19 | amount? |
| 10:37:31 | 20 | A. Yes. |
| 10:37:31 | 21 | Q. What was that? |
| 10:37:33 | 22 | A. What I wanted from the rental? |
| 10:37:35 | 23 | Q. Right. |
| 10:37:35 | 24 | A. 750. That's what the -- what the two |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| 10:37:39 | 1 | bedrooms going at that time. |
| 10:37:40 | 2 | Q.    And I'm sorry, was there already a |
| 10:37:47 | 3 | tenant there? |
| 10:37:48 | 4 | A.    Yes. |
| 10:37:48 | 5 | Q.    Do you know how much they were renting? |
| 10:37:52 | 6 | A.    I think 750. |
| 10:37:53 | 7 | Q.    And were you going to sell your house |
| 10:37:58 | 8 | at 127 Bellwood? |
| 10:37:59 | 9 | A.    Yes, I put it on the market two months |
| 10:38:01 | 10 | after I purchased 5402, because I just knew I was |
| 10:38:05 | 11 | going to 5402.  Didn't work. |
| 10:38:07 | 12 | Q.    Did you have any plans of renting part |
| 10:38:11 | 13 | of 127 Bellwood out? |
| 10:38:13 | 14 | A.    No, it wasn't -- it's a single family. |
| 10:38:16 | 15 | Q.    I guess what I'm asking is after you |
| 10:38:21 | 16 | moved -- after you would have moved into 5402 |
| 10:38:25 | 17 | South Shields, did you have any plans for |
| 10:38:27 | 18 | retaining 127 Bellwood and renting it out? |
| 10:38:30 | 19 | A.    No, I saw -- no. |
| 10:38:32 | 20 | Q.    Did you ever move into the South |
| 10:38:37 | 21 | Shields address? |
| 10:38:37 | 22 | A.    No. |
| 10:38:37 | 23 | Q.    So you just owned it for a few months? |
| 10:38:41 | 24 | A.    Yes. |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:38:41 | 1 | Q.    And then you sold it around August of |
| 10:38:45 | 2 | 2006? |
| 10:38:45 | 3 | A.    I don't -- was it August -- like I say, |
| 10:38:49 | 4 | I can't give my dates, but was around up in there |
| 10:38:52 | 5 | somewhere.  Like I say, I gave it to some |
| 10:38:55 | 6 | investors and let them take it off my hands. |
| 10:38:58 | 7 | Q.    But you bought a house at West Iowa |
| 10:39:01 | 8 | Street in August of '06? |
| 10:39:02 | 9 | A.    Yes.  Yes. |
| 10:39:03 | 10 | Q.    Did you need to use the Long Beach |
| 10:39:43 | 11 | mortgage loan to fix up or improve any part of the |
| 10:39:48 | 12 | property at South Shields Avenue? |
| 10:39:49 | 13 | A.    No. |
| 10:39:49 | 14 | Q.    You were just going to use the loan |
| 10:39:51 | 15 | just to buy the house? |
| 10:39:53 | 16 | A.    Yes. |
| 10:39:53 | 17 | Q.    Did you ever had any problems with the |
| 10:40:01 | 18 | mortgage lender for your 127 Bellwood Avenue? |
| 10:40:04 | 19 | A.    No. |
| 10:40:05 | 20 | Q.    So I take it you haven't filed any |
| 10:40:15 | 21 | lawsuits against any other mortgage lenders? |
| 10:40:17 | 22 | A.    No. |
| 10:40:18 | 23 | Q.    Have you ever filed any lawsuit before |
| 10:40:20 | 24 | other than the one we're talking about today? |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:40:22 | 1 | A.    No. |
| 10:40:22 | 2 | Q.    Have you ever been sued? |
| 10:40:24 | 3 | A.    No. |
| 10:40:24 | 4 | Q.    And if you've never filed a lawsuit, I |
| 10:40:28 | 5 | take it you've never sought to be a class |
| 10:40:32 | 6 | representative? |
| 10:40:32 | 7 | A.    That's correct. |
| 10:40:33 | 8 | Q.    Have you ever been part of a class |
| 10:40:35 | 9 | action? |
| 10:40:35 | 10 | A.    No. |
| 10:40:35 | 11 | Q.    Have you ever filed for bankruptcy? |
| 10:40:40 | 12 | A.    No. |
| 10:40:41 | 13 | Q.    And I take it since you're still |
| 10:40:44 | 14 | married, you've never been involved in any |
| 10:40:47 | 15 | divorce proceedings -- |
| 10:40:47 | 16 | A.    I'm going through that right now, and |
| 10:40:50 | 17 | this is the root of it. |
| 10:40:51 | 18 | Q.    I'm sorry.  Is that in Cook County? |
| 10:40:55 | 19 | A.    Yes. |
| 10:40:55 | 20 | Q.    So a divorce proceeding has already |
| 10:41:01 | 21 | started? |
| 10:41:01 | 22 | A.    It's in the making.  It's in the |
| 10:41:03 | 23 | making. |
| 10:41:04 | 24 | Q.    What do you mean that this was a root |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:41:11 | 1 | of the divorce? |
| 10:41:12 | 2 | A.    The big fight about me going into that |
| 10:41:16 | 3 | property over there, that this what really, really |
| 10:41:18 | 4 | started the trickle-down effect.  And it started |
| 10:41:22 | 5 | from moving from the suburbs, coming back to |
| 10:41:26 | 6 | certain part of the city. |
| 10:41:27 | 7 | Q.    So it was about buying the house? |
| 10:41:29 | 8 | A.    Yes. |
| 10:41:29 | 9 | Q.    Not about the claims you have about the |
| 10:41:32 | 10 | loan? |
| 10:41:33 | 11 | A.    No. |
| 10:41:36 | 12 | Q.    Have you ever been involved -- other |
| 10:41:38 | 13 | than Long Beach, have you ever been involved in |
| 10:41:41 | 14 | any foreclosure proceedings? |
| 10:41:43 | 15 | A.    No. |
| 10:41:43 | 16 | Q.    Have you ever been evicted? |
| 10:41:45 | 17 | A.    No. |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

```
 1              (WHEREUPON, the following

 2         proceedings were had designated

 3         as confidential:)

 4    BY MR. CROWSON:

 5

 6

 7

 8

 9

10

11

12

13                              Redacted

14

15

16

17

18

19

20

21

22

23

24
```

10:41:47   5
10:41:50   6
10:41:54   8
10:41:57   9
10:42:01   10
10:42:04   11
10:42:06   12
10:42:08   13
10:42:13   14
10:42:16   15
10:42:17   16
10:42:20   17
10:42:22   18
10:42:25   19
10:42:27   20
10:42:29   21
10:42:33   22
10:42:37   23

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | |
|---|---|
| 10:42:39 | 1 |
| | 2 |
| 10:42:39 | 3 |
| 10:42:42 | 4 |
| 10:42:46 | 5 |
| 10:42:49 | 6 |
| | 7 |
| 10:42:51 | 8 |
| 10:42:54 | 9 |
| 10:42:56 | 10 |
| 10:42:59 | 11 |
| 10:43:03 | 12 |
| 10:43:04 | 13 |
| 10:43:04 | 14 |
| 10:43:05 | 15 |
| 10:43:07 | 16 |
| 10:43:09 | 17 |
| 10:43:10 | 18 |
| 10:43:13 | 19 |
| 10:43:18 | 20 |
| 10:43:19 | 21 |
| 10:43:19 | 22 |
| 10:43:22 | 23 |
| 10:43:24 | 24 |



Redacted

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL



10:43:26  1

10:43:28  2

10:43:30  3

10:43:30  4          *Redacted*

10:43:34  5

10:43:36  6

10:43:38  7

        8          (WHEREUPON, certain proceedings

        9          designated as confidential were

        10         concluded.)

        11

        12

        13

        14

        15

        16

        17

        18

        19

        20

        21

        22

        23

        24

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:43:40 | 1 | BY MR. CROWSON: |
| 10:43:51 | 2 | Q.    Mr. Stinson, do you -- what's your |
| 10:43:54 | 3 | understanding as to what a class action is? |
| 10:43:57 | 4 | A.    It's I -- do want me to repeat my |
| 10:44:00 | 5 | initial answer?  A class action -- like I said, I |
| 10:44:02 | 6 | represent a group of people that has the same |
| 10:44:04 | 7 | claim. |
| 10:44:04 | 8 | Q.    Do you have an understanding as to any |
| 10:44:12 | 9 | responsibilities or obligations you have? |
| 10:44:14 | 10 | A.    Yes.  I have to be considerate of the |
| 10:44:18 | 11 | rest of the claimants in my decision-making |
| 10:44:22 | 12 | process. |
| 10:44:22 | 13 | Q.    What about -- I'm sorry. |
| 10:44:23 | 14 | A.    When it comes down to settling. |
| 10:44:25 | 15 | Q.    What about time commitments?  Do you |
| 10:44:31 | 16 | understand that -- do you have an understanding |
| 10:44:34 | 17 | that you may be asked to dedicate some of your |
| 10:44:38 | 18 | time for this case? |
| 10:44:39 | 19 | A.    Yes. |
| 10:44:40 | 20 | Q.    Have you signed any affidavits or |
| 10:44:45 | 21 | verifications about your lawsuit? |
| 10:44:47 | 22 | A.    No. |
| 10:44:58 | 23 | Q.    How much time have you spent, you know, |
| 10:45:00 | 24 | working on this case or being involved in this |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:45:02 | 1 | case? |
| 10:45:04 | 2 | A.    Do you want a rough estimate or -- |
| 10:45:05 | 3 | Q.    Yeah, rough estimate. |
| 10:45:07 | 4 | A.    What, like days or -- |
| 10:45:12 | 5 | Q.    Or, you know, if you can ballpark it in |
| 10:45:15 | 6 | terms of hours. |
| 10:45:15 | 7 | A.    Maybe four or five. |
| 10:45:17 | 8 | Q.    Four or five? |
| 10:45:18 | 9 | A.    Yes. |
| 10:45:19 | 10 | Q.    And what has that been spent doing? |
| 10:45:23 | 11 | And you don't have to tell me what, you know, |
| 10:45:25 | 12 | you've talked about with your lawyers. |
| 10:45:26 | 13 | A.    Just going over the case, just going |
| 10:45:29 | 14 | over my claim. |
| 10:45:29 | 15 | Q.    Meeting with your lawyers? |
| 10:45:31 | 16 | A.    Yes. |
| 10:45:31 | 17 | Q.    About how many times have you met with |
| 10:45:34 | 18 | your lawyers? |
| 10:45:36 | 19 | A.    One, two, three -- maybe three. |
| 10:45:38 | 20 | Q.    Is that phone meetings or in person? |
| 10:45:41 | 21 | A.    In person. |
| 10:45:42 | 22 | Q.    Have you had any telephone meetings? |
| 10:45:47 | 23 | A.    Not outside -- twice with Hofeld, and I |
| 10:45:52 | 24 | spoke with Mike. |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:45:53 | 1 | Q.    When you had the roughly three |
| 10:45:58 | 2 | in-person meetings, who was present at those |
| 10:46:01 | 3 | meetings? |
| 10:46:02 | 4 | A.    Mike was present the first two times |
| 10:46:04 | 5 | and Ms. Combs was present the last time we met. |
| 10:46:07 | 6 | Q.    Any other lawyers? |
| 10:46:08 | 7 | A.    No. |
| 10:46:08 | 8 | Q.    Any other persons? |
| 10:46:09 | 9 | A.    No. |
| 10:46:23 | 10 | Q.    Do you know what the status of the |
| 10:46:25 | 11 | lawsuit is? |
| 10:46:27 | 12 | A.    As far as getting retributed (sic) -- |
| 10:46:30 | 13 | Q.    As far as where it's progressed in the |
| 10:46:32 | 14 | litigation process? |
| 10:46:33 | 15 | A.    No. |
| 10:46:33 | 16 | Q.    Have you reviewed any of the papers |
| 10:46:38 | 17 | that have been filed in the lawsuit? |
| 10:46:40 | 18 | A.    Yes. |
| 10:46:40 | 19 | Q.    Have you reviewed a consolidated class |
| 10:46:47 | 20 | action complaint? |
| 10:46:48 | 21 | A.    Of the papers -- of the documents I |
| 10:46:51 | 22 | have?  Like I said, I looked through the documents |
| 10:46:54 | 23 | but I couldn't really understand half of them, you |
| 10:46:57 | 24 | know, that's for my counsel, so... |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:46:59 | 1 | Q.    All right.  It's like my wife says, |
| 10:47:06 | 2 | it's mostly lawyer mumbo-jumbo. |
| | 3 | A.    Right. |
| 10:47:12 | 4 | Q.    Are you aware that a class action |
| 10:47:16 | 5 | lawsuit was filed on your behalf? |
| 10:47:19 | 6 | A.    No, I thought -- on the original |
| 10:47:24 | 7 | plaintiff, I was added on to this. |
| 10:47:26 | 8 | Q.    But -- fair enough.  Have you ever |
| 10:47:29 | 9 | reviewed any drafts of complaints to be filed in |
| 10:47:36 | 10 | federal court? |
| 10:47:36 | 11 | A.    No. |
| 10:47:36 | 12 | Q.    Have you ever reviewed any drafts of a |
| 10:47:41 | 13 | motion for a class certification? |
| 10:47:43 | 14 | A.    No. |
| 10:47:46 | 15 | Q.    And you haven't signed any declarations |
| 10:47:51 | 16 | or affidavits about class certification? |
| 10:47:54 | 17 | A.    No. |
| 10:48:05 | 18 | Q.    When you got the initial package from |
| 10:48:11 | 19 | Mr. Hofeld, did you go and gather any documents? |
| 10:48:21 | 20 | A.    Not initially until I made phone |
| 10:48:24 | 21 | contact, so I can know what to gather. |
| 10:48:27 | 22 | Q.    Did you give those documents to your |
| 10:48:33 | 23 | attorneys? |
| 10:48:33 | 24 | A.    Yes. |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:48:33 | 1 | Q.    And what documents was it that you have |
| 10:48:41 | 2 | at your house that you would have gathered? |
| 10:48:45 | 3 | A.    Statements, just my loan packets |
| 10:48:48 | 4 | showing the 1-4 rider and other things that's |
| 10:48:51 | 5 | beneficial to this claim. |
| 10:48:52 | 6 | Q.    What about any lease documents? |
| 10:48:55 | 7 | A.    No. |
| 10:48:55 | 8 | Q.    What about any tax returns? |
| 10:49:03 | 9 | A.    I submit it, but they -- you know, I |
| 10:49:06 | 10 | submit it. |
| 10:49:07 | 11 | Q.    You gave your tax returns to your |
| 10:49:09 | 12 | lawyers? |
| 10:49:09 | 13 | A.    Yes. |
| 10:49:10 | 14 | Q.    And there was a fire at your house |
| 10:49:17 | 15 | around February or March of 2007? |
| 10:49:20 | 16 | A.    Yes. |
| 10:49:20 | 17 | Q.    Was that the house at South Shields? |
| 10:49:22 | 18 | A.    No, 5937, my residency now. |
| 10:49:25 | 19 | Q.    That was the house that you were |
| 10:49:26 | 20 | maintaining your personal files? |
| 10:49:30 | 21 | A.    Yes. |
| 10:49:30 | 22 | Q.    Was that destroyed, all your personal |
| 10:49:34 | 23 | documents? |
| 10:49:34 | 24 | A.    Yes.  Yes. |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:49:34 | 1 | Q.    Sorry to hear about that. |
| 10:49:47 | 2 | Do you have a personal computer? |
| 10:49:50 | 3 | A.    I don't use it. |
| 10:49:51 | 4 | Q.    You have one and you don't use it? |
| 10:49:54 | 5 | A.    I let my kids.  I don't believe in it. |
| 10:49:57 | 6 | Just I have a personal thing about computers right |
| 10:50:00 | 7 | now. |
| 10:50:00 | 8 | Q.    So you don't -- right now or -- |
| 10:50:01 | 9 | A.    Just period.  I use it at work but not |
| 10:50:04 | 10 | at -- for home business. |
| 10:50:06 | 11 | Q.    So you don't maintain anything on a |
| 10:50:08 | 12 | personal computer? |
| 10:50:10 | 13 | A.    No, no. |
| 10:50:10 | 14 | Q.    Does the name Lloyd Brooks ring a bell |
| 10:50:27 | 15 | to you? |
| 10:50:28 | 16 | A.    Can you repeat that. |
| 10:50:28 | 17 | Q.    Sure.  Lloyd Brooks? |
| 10:50:31 | 18 | A.    No. |
| 10:50:31 | 19 | Q.    What about Christopher Lefebvre? |
| 10:50:36 | 20 | A.    Yes -- it's part of your firm, right? |
| 10:50:40 | 21 | MS. COMBS:  No, he isn't. |
| 10:50:43 | 22 | THE WITNESS:  I thought I heard of the name. |
| 10:50:46 | 23 | BY MR. CROWSON: |
| 10:50:47 | 24 | Q.    Is that a name that just sounds |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

1 familiar?

10:50:48  2      A.      It just sounds familiar.

10:50:49  3      Q.      Have you ever met or spoken with

10:50:52  4 someone named Christopher Lefebvre?

10:50:54  5      A.      No.

10:50:55  6      Q.      And I think you answered this already,

10:50:59  7 but when you initially spoke with Mr. Hofeld, you

10:51:09  8 started a -- you retained Mr. Hofeld and the

10:51:14  9 Edelman firm at that time?

10:51:14  10     A.      Yes.

10:51:14  11     Q.      Did you have a meeting with your

10:51:26  12 lawyers to get ready for today's deposition?

10:51:30  13     A.      Yes.

10:51:31  14     Q.      When was that?

10:51:32  15     A.      Last -- last week.  When was that?

10:51:36  16 Wednesday.  Last Wednesday.

10:51:39  17     Q.      One day last week?

10:51:41  18     A.      Last Wednesday, yes.

10:51:42  19     Q.      About how long did that meeting last?

10:51:43  20     A.      Maybe upwards to two hours.

10:51:45  21     Q.      And who was there at that meeting?

10:51:48  22     A.      Mike and Mrs. Combs.

10:51:49  23     Q.      No one else?

10:51:51  24     A.      No.

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:51:51 | 1 | Q.    Did you review any documents at that |
| 10:51:54 | 2 | time? |
| 10:51:58 | 3 | A.    Yes. |
| 10:51:58 | 4 | Q.    What kind of categories or kinds of |
| 10:52:03 | 5 | documents did you look at? |
| 10:52:04 | 6 | A.    Just the documents that's basically in |
| 10:52:06 | 7 | front of you, you know.  Wasn't any other |
| 10:52:09 | 8 | documents there. |
| 10:52:09 | 9 | Q.    Your loan documents? |
| 10:52:13 | 10 | A.    Yes. |
| 10:52:14 | 11 | Q.    Other than your lawyers, have you ever |
| 10:52:21 | 12 | spoken with anyone about this case or about your |
| 10:52:27 | 13 | Long Beach mortgage loan? |
| 10:52:28 | 14 | A.    Yes. |
| 10:52:29 | 15 | Q.    Who would that be? |
| 10:52:31 | 16 | A.    Previous owner and the coworker of |
| 10:52:33 | 17 | mine. |
| 10:52:33 | 18 | Q.    The previous owner of the house at -- |
| 10:52:36 | 19 | A.    5402 South Shields. |
| 10:52:38 | 20 | Q.    What is his or her name? |
| 10:52:39 | 21 | A.    Alonso Hicks. |
| 10:52:40 | 22 | Q.    And what's the coworker's name? |
| 10:52:49 | 23 | A.    Tekeisa, T-e-k-e-i-s-a. And Matthew |
| 10:52:59 | 24 | Henry too, as well. |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:52:59 | 1 | Q.    What's Tekeisa's last name? |
| 10:53:01 | 2 | A.    Cooley, C-o-o-l-e-y. |
| 10:53:04 | 3 | Q.    Did you know Mr. Hicks before you |
| 10:53:10 | 4 | bought the house at 5402? |
| 10:53:13 | 5 | A.    Yes. |
| 10:53:14 | 6 | Q.    How did you know him? |
| 10:53:14 | 7 | A.    He's -- my brother has a kid by his |
| 10:53:17 | 8 | sister. |
| 10:53:21 | 9 | MS. COMBS:  Extended family. |
| 10:53:21 | 10 | THE WITNESS:  Extended family, right. |
| 10:53:22 | 11 | BY MR. CROWSON: |
| 10:53:23 | 12 | Q.    Got it.  You've spoken with Mr. Hicks |
| 10:53:30 | 13 | after you bought the property specifically about |
| 10:53:32 | 14 | the lawsuit? |
| 10:53:32 | 15 | A.    Yes. |
| 10:53:33 | 16 | Q.    What have you talked about? |
| 10:53:36 | 17 | A.    That 1-4 rider.  That was it. |
| 10:53:40 | 18 | Q.    What did you tell him about it? |
| 10:53:43 | 19 | A.    Just I didn't know that they can have a |
| 10:53:47 | 20 | stake in my personal property. |
| 10:53:48 | 21 | Q.    What did he say about it? |
| 10:53:50 | 22 | A.    He was appalled.  He was, like, wow. |
| 10:53:53 | 23 | Q.    About how many times did you speak with |
| 10:53:55 | 24 | Mr. Hicks about it? |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:53:57 | 1 | A.      Twice. |
| 10:53:57 | 2 | Q.      Did he say anything else about that? |
| 10:54:00 | 3 | A.      He told me if I needed him for |
| 10:54:02 | 4 | anything, you know, he'd be more than willing to |
| 10:54:05 | 5 | step up for me. |
| 10:54:06 | 6 | Q.      What did he mean by that? |
| 10:54:09 | 7 | A.      If I needed him to come to a |
| 10:54:11 | 8 | disposition or anything like this here. |
| 10:54:13 | 9 | Q.      Anything else? |
| 10:54:14 | 10 | A.      That's it. |
| 10:54:15 | 11 | Q.      And you also spoke with a coworker, |
| 10:54:19 | 12 | Matthew Henry? |
| 10:54:19 | 13 | A.      Right. |
| 10:54:20 | 14 | Q.      What did you talk to him about? |
| 10:54:22 | 15 | A.      About the 1-4 rider, to make sure they |
| 10:54:22 | 16 | review all documents and understand them, that's |
| 10:54:27 | 17 | it, because they homeowners. |
| 10:54:29 | 18 | Q.      So you were sort of giving him advice? |
| 10:54:31 | 19 | A.      Right. |
| 10:54:31 | 20 | Q.      What did he say in response? |
| 10:54:33 | 21 | A.      Oh, wow.  That's all you can say, |
| 10:54:35 | 22 | because these things you're not aware of. |
| 10:54:37 | 23 | Q.      I'm sorry, say that again. |
| 10:54:39 | 24 | A.      I say these are things you're not aware |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:54:42 | 1 | of when you're buying property. |
| 10:54:43 | 2 | Q.    Did you say anything else? |
| 10:54:45 | 3 | A.    No. |
| 10:54:46 | 4 | Q.    Did you talk about anything else? |
| 10:54:47 | 5 | A.    No. |
| 10:54:48 | 6 | Q.    And what about -- is it Ms. Tekeisa |
| 10:54:52 | 7 | Cooley? |
| 10:54:53 | 8 | A.    Yes. |
| 10:54:53 | 9 | Q.    What did you talk to her about? |
| 10:54:55 | 10 | A,    Same thing, because they just bought |
| 10:54:57 | 11 | property. |
| 10:54:57 | 12 | Q.    Did you talk to them at the same time? |
| 10:54:59 | 13 | A.    Yes. |
| 10:54:59 | 14 | Q.    And what did she say? |
| 10:55:00 | 15 | A.    She said she'd have her mom look into |
| 10:55:03 | 16 | that, that's something else.  And that was the end |
| 10:55:06 | 17 | of the conversation. |
| 10:55:06 | 18 | Q.    So they already had homes with |
| 10:55:09 | 19 | mortgages? |
| 10:55:10 | 20 | A.    She just -- her mom just purchased a |
| 10:55:13 | 21 | mortgage two weeks ago. |
| 10:55:23 | 22 | Q.    And you said you're not -- you don't |
| 10:55:26 | 23 | know any of the other named plaintiffs other than |
| 10:55:29 | 24 | Ms. Navara? |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 10:55:29 | 1 | A.    No, I don't know him, just know the |
| 10:55:32 | 2 | name. |
| 10:55:32 | 3 | Q.    You just recognize the name? |
| 10:55:34 | 4 | A.    Yes. |
| 10:55:34 | 5 | Q.    And you don't know anybody who -- |
| 10:55:37 | 6 | potentially in the punitive class who may have had |
| 10:55:41 | 7 | a mortgage loan with Long Beach? |
| 10:55:45 | 8 | A.    No. |
| 10:55:56 | 9 | MR. CROWSON:  You guys want to take a break |
| 10:55:58 | 10 | for five minutes. |
| 10:56:00 | 11 | MS. COMBS:  I would love to take a break. |
| 10:56:00 | 12 | THE VIDEOGRAPHER:  Going off the video record |
| 10:56:03 | 13 | at 10:56 a.m. |
| 11:08:54 | 14 | (WHEREUPON, a recess was had.) |
| 11:08:55 | 15 | THE VIDEOGRAPHER:  We're going back on video |
| 11:09:03 | 16 | record at 11:09 a.m. |
| 11:09:05 | 17 | MR. CROWSON:  Mr. Stinson, I'm going to hand |
| 11:09:10 | 18 | you several series of documents, and just ask you |
| 11:09:15 | 19 | a few questions about each one. |
| | 20 | (WHEREUPON, a certain document |
| | 21 | was marked Stinson Deposition |
| | 22 | Exhibit No. 1, for |
| | 23 | identification, as of 4/21/08.) |
| | 24 | |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

|  |  |  |
|---|---|---|
|  | 1 | BY MR. CROWSON: |
| 11:09:38 | 2 | Q. Mr. Stinson, I'm going to hand you |
| 11:09:39 | 3 | what's been marked as Exhibit 1. I have a copy |
| 11:09:44 | 4 | for you. |
| 11:09:46 | 5 | MS. COMBS: Okay. Great. Thanks. |
| 11:09:49 | 6 | MR. ASCHENBRENER: Thank you. |
| 11:09:52 | 7 | MR. CROWSON: For the record, it's a copy of |
| 11:09:55 | 8 | the consolidated class action complaint without |
| 11:10:00 | 9 | exhibits. |
|  | 10 | BY MR. CROWSON: |
| 11:10:05 | 11 | Q. Mr. Stinson have you -- I'm sorry, just |
| 11:10:07 | 12 | let me know when you've flipped through it enough. |
| 11:10:15 | 13 | A. I read it. |
| 11:10:16 | 14 | Q. Have you ever seen a copy of this |
| 11:10:18 | 15 | document before? |
| 11:10:19 | 16 | A. Yes. |
| 11:10:19 | 17 | Q. Do you know if -- have you ever seen a |
| 11:10:23 | 18 | draft of this document? |
| 11:10:24 | 19 | A. No. |
| 11:10:25 | 20 | Q. So the only version that you saw was a |
| 11:10:30 | 21 | final version after it was filed? |
| 11:10:32 | 22 | A. I guess this -- |
| 11:10:33 | 23 | MS. COMBS: I just -- objection to the |
| 11:10:35 | 24 | question because I think a draft and a final |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 11:10:39 | 1 | document after filing -- you could have a final |
| 11:10:42 | 2 | document before filing. |
| 11:10:43 | 3 | MR. CROWSON:  Okay. |
| | 4 | BY MR. CROWSON: |
| 11:10:44 | 5 | Q.    Have you ever seen a draft of the |
| 11:10:46 | 6 | consolidated class action complaint? |
| 11:10:48 | 7 | A.   No. |
| 11:10:48 | 8 | Q.    Do you know if you saw a final version |
| 11:10:53 | 9 | of the complaint before it was filed? |
| 11:10:56 | 10 | A.    This is what I saw. |
| 11:10:58 | 11 | Q.    What you saw was the final version -- |
| 11:11:03 | 12 | is that a yes? |
| 11:11:04 | 13 | A.    Yes, I guess, you know, this is what I |
| 11:11:07 | 14 | saw.  I'm not going to say.  This the lawyer's |
| 11:11:10 | 15 | thing, so... |
| 11:11:11 | 16 | Q.    Do you remember when you saw it? |
| 11:11:14 | 17 | A.    Yes. |
| 11:11:14 | 18 | Q.    Was it -- do you know if it had already |
| 11:11:19 | 19 | been filed with the court? |
| 11:11:19 | 20 | A.    I couldn't tell you that. |
| 11:11:20 | 21 | Q.    Can you turn to page 3.  And the |
| 11:11:28 | 22 | paragraph that is number 13, it says, "Plaintiff, |
| 11:11:34 | 23 | Albert Stinson, obtained the loans for personal |
| 11:11:37 | 24 | family or household purposes, mainly the |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 11:11:40 | 1 | refinancing of prior debts incurred for such |
| 11:11:45 | 2 | purposes." |
| 11:11:45 | 3 | Do you see what I'm talking about? |
| 11:11:47 | 4 | A.    Yes. |
| 11:11:47 | 5 | Q.    Correct me if I'm wrong, but I think |
| 11:11:50 | 6 | your earlier testimony was that you got the Long |
| 11:11:53 | 7 | Beach mortgage to buy the house at 5402 South |
| 11:11:57 | 8 | Shields? |
| 11:11:57 | 9 | A.    Yes. |
| 11:11:57 | 10 | Q.    Did you use any part of that to pay for |
| 11:12:02 | 11 | other debts? |
| 11:12:03 | 12 | A.    No. |
| 11:12:03 | 13 | Q.    That's all I have. |
| | 14 | (WHEREUPON, a certain document |
| | 15 | was marked Stinson Deposition |
| | 16 | Exhibit No. 2, for |
| | 17 | identification, as of 4/21/08.) |
| | 18 | BY MR. CROWSON: |
| 11:12:12 | 19 | Q.    Now I'm going to hand you what I'm |
| 11:12:14 | 20 | going to mark as Exhibit 2 -- I'm done with that |
| 11:12:19 | 21 | one -- for the record, Exhibit 2 is a copy of the |
| 11:12:32 | 22 | third amended complaint class action without |
| 11:12:36 | 23 | exhibits. |
| 11:12:37 | 24 | Let me know when you've had a chance to |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 11:12:49 | 1 | flip through it. |
| 11:13:00 | 2 | A.    I'm ready. |
| 11:13:01 | 3 | Q.    The only questions I have are do you |
| 11:13:05 | 4 | remember seeing a -- have you ever seen a copy of |
| 11:13:08 | 5 | this -- |
| 11:13:09 | 6 | A.    Yes. |
| 11:13:09 | 7 | Q.    -- complaint before? |
| 11:13:11 | 8 | A.    Yes. |
| 11:13:11 | 9 | Q.    Do you remember seeing a draft or a |
| 11:13:14 | 10 | final version? |
| 11:13:16 | 11 | A.    Is this what I saw?  Like I said, I'm |
| 11:13:18 | 12 | going to leave that to my counsel.  I just |
| 11:13:20 | 13 | remember seeing this paper. |
| 11:13:21 | 14 | Q.    Do you know if it was before or after |
| 11:13:24 | 15 | it was filed with the court? |
| 11:13:25 | 16 | A.    No. |
| 11:13:27 | 17 | Q.    All right.  That's all I have.  You can |
| 11:13:31 | 18 | set it aside. |
| 11:13:33 | 19 | I'm going to mark this as Exhibit 3. |
| 11:14:15 | 20 | For the record I'm marking as Exhibit 3 |
| 11:14:25 | 21 | plaintiff Albert Stinson's responses to Long |
| 11:14:29 | 22 | Beach's first set of discovery requests. |
| | 23 | (WHEREUPON, a certain document |
| | 24 | was marked Stinson Deposition |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

|  |  |  |
|---|---|---|
|  | 1 | Exhibit No. 3, for |
|  | 2 | identification, as of 4/21/08.) |
| 11:15:19 | 3 | THE WITNESS:  I'm ready. |
|  | 4 | BY MR. CROWSON: |
| 11:15:20 | 5 | Q.    Okay.  Have you ever seen a copy of |
| 11:15:22 | 6 | this document before? |
| 11:15:23 | 7 | A.    Yes. |
| 11:15:23 | 8 | Q.    Do you recall when -- |
| 11:15:26 | 9 | A.    Yes. |
| 11:15:27 | 10 | Q.    About when that was? |
| 11:15:31 | 11 | A.    Last week. |
| 11:15:31 | 12 | Q.    Was it -- do you recall being sent a |
| 11:15:38 | 13 | version of this document that only had the |
| 11:15:40 | 14 | questions? |
| 11:15:42 | 15 | A.    I don't recall. |
| 11:15:43 | 16 | Q.    Was the version that you saw have |
| 11:15:48 | 17 | answers already filled in? |
| 11:15:51 | 18 | A.    Like I say, this -- I remember this top |
| 11:15:55 | 19 | sheet and I looking through it.  But I didn't get |
| 11:15:57 | 20 | through it thoroughly because I didn't understand |
| 11:15:59 | 21 | it.  So that's what -- |
| 11:16:01 | 22 | Q.    Did you read the answers to the |
| 11:16:03 | 23 | questions? |
| 11:16:03 | 24 | A.    No. |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 11:16:04 | 1 | Q.    Did you read the questions? |
| 11:16:08 | 2 | A.    Say I didn't even get through the |
| 11:16:09 | 3 | middle of it. |
| 11:16:10 | 4 | Q.    So you just read like the cover page? |
| 11:16:14 | 5 | A.    Yes, I saw the MDL, and I flipped two |
| 11:16:17 | 6 | or three pages.  I saw the plaintiff, and I didn't |
| 11:16:19 | 7 | go into no more detail about it. |
| 11:16:22 | 8 | Q.    Turn to page 9 -- actually the question |
| 11:16:53 | 9 | starts on the page before, and it's asking you to |
| 11:17:01 | 10 | identify various people who may have knowledge of |
| 11:17:05 | 11 | this litigation. |
| 11:17:06 | 12 | A.    Okay. |
| 11:17:06 | 13 | Q.    And one of the answers on page 9 is |
| 11:17:10 | 14 | Brent Claire with Park West Mortgage.  Do you see |
| 11:17:15 | 15 | that? |
| 11:17:16 | 16 | A.    Yes. |
| 11:17:16 | 17 | Q.    Do you know who that is? |
| 11:17:18 | 18 | A.    He's my loan guy. |
| 11:17:20 | 19 | Q.    Did you know him before you got your |
| 11:17:24 | 20 | mortgage loan with Long Beach? |
| 11:17:25 | 21 | A.    Yes. |
| 11:17:25 | 22 | Q.    Professionally or just personally? |
| 11:17:29 | 23 | A.    Professionally. |
| 11:17:30 | 24 | Q.    Had he helped you out with other loans |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 11:17:33 | 1 | before? |
| 11:17:33 | 2 | A.    Yes. |
| 11:17:33 | 3 | Q.    Have you spoken with him about this |
| 11:17:35 | 4 | lawsuit? |
| 11:17:35 | 5 | A.    No. |
| 11:17:36 | 6 | Q.    Have you ever spoken with him after you |
| 11:17:39 | 7 | got your Long Beach mortgage loan? |
| 11:17:42 | 8 | A.    No. |
| 11:17:42 | 9 | Q.    Was he at the closing? |
| 11:17:46 | 10 | A.    Yes. |
| 11:17:47 | 11 | Q.    What was his role, so to speak, for the |
| 11:17:58 | 12 | closing? |
| 11:18:00 | 13 | A.    Doing his job.  I know he needed to be |
| 11:18:01 | 14 | there. |
| 11:18:02 | 15 | Q.    Did he explain any documents to you? |
| 11:18:04 | 16 | A.    Not really. |
| 11:18:05 | 17 | Q.    What did he have to do though, for his |
| 11:18:09 | 18 | job, to be there? |
| 11:18:11 | 19 | A.    See, I don't get into that.  I know he |
| 11:18:13 | 20 | just had to be present, you know. |
| 11:18:14 | 21 | Q.    But you didn't really understand what |
| 11:18:16 | 22 | he needed to do? |
| 11:18:17 | 23 | A.    No, no. Pick up a check. |
| 11:18:21 | 24 | Q.    I guess that's the most important |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 11:18:26 | 1 | thing. |
| 11:18:26 | 2 | If we can go to -- it's near the end, |
| 11:18:36 | 3 | after the actual cleaning -- there's a page that |
| 11:18:42 | 4 | says Exhibit A; it's really the last, like, five |
| 11:18:45 | 5 | pages. |
| 11:18:47 | 6 | A.    You said the last five pages? |
| 11:18:49 | 7 | Q.    Yeah.  It starts Exhibit A. |
| 11:19:04 | 8 | A.    Okay. |
| 11:19:04 | 9 | Q.    And then if you turn to the next |
| 11:19:09 | 10 | page -- I'm sorry, you were at it.  At the top |
| 11:19:14 | 11 | right-hand corner there's letters that say |
| 11:19:18 | 12 | Stinson 1? |
| 11:19:19 | 13 | A.    Yes. |
| 11:19:19 | 14 | Q.    Those are Bates stamps that lawyers put |
| 11:19:22 | 15 | on documents so we know where they're at.  If you |
| 11:19:26 | 16 | can turn to the one that's marked Stinson 2.  It |
| 11:19:32 | 17 | appears to be a settlement statement for the house |
| 11:19:36 | 18 | that you bought at 5937 West Iowa Street? |
| | 19 | A.    Yes. |
| 11:19:41 | 20 | Q.    And it says "Settlement date, |
| 11:19:43 | 21 | August 2006"? |
| 11:19:44 | 22 | A.    Yes. |
| 11:19:45 | 23 | Q.    Is that when you bought the house at |
| 11:19:47 | 24 | West Iowa Street? |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 11:19:48 | 1 | A. That's when I closed on it, yes. |
| 11:19:50 | 2 | Q. At that time, where were you living? |
| 11:19:56 | 3 | A. I was still staying in Bellwood. |
| 11:19:58 | 4 | Q. At the 127 Bellwood? |
| 11:20:00 | 5 | A. At the 127 Bellwood, right. |
| 11:20:03 | 6 | Q. So you hadn't sold that house yet? |
| 11:20:05 | 7 | A. No. |
| 11:20:06 | 8 | Q. And had you sold the 5402 South Shields |
| 11:20:10 | 9 | house yet? |
| 11:20:11 | 10 | A. No. |
| 11:20:11 | 11 | Q. Had you ever moved into the 5402 South |
| 11:20:18 | 12 | Shields house? |
| 11:20:18 | 13 | A. No. |
| 11:20:19 | 14 | Q. And were you renting either part -- |
| 11:20:28 | 15 | A. Yes. |
| 11:20:32 | 16 | Q. Let me finish. Were you renting either |
| | 17 | part of 127 Bellwood or 5402 South Shields? |
| 11:20:33 | 18 | A. I was staying at 127 for personal. I |
| 11:20:38 | 19 | was renting 5402 to help me with that mortgage |
| 11:20:42 | 20 | until I got something done with it. |
| 11:20:44 | 21 | Q. How many leases did you have for 5402? |
| 11:20:47 | 22 | A. One. |
| 11:20:47 | 23 | Q. And who was that lease to? |
| 11:20:48 | 24 | A. Jasper Tabb. |

59

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 11:20:49 | 1 | Q. I'm sorry, spell -- |
| 11:20:52 | 2 | A. Jasper, J-a-s-p-e-r, T-a-b-b. |
| 11:20:54 | 3 | Q. Did you have a written lease with him? |
| 11:20:58 | 4 | A. All my documents got destroyed. |
| 11:20:59 | 5 | Q. But you had one before it got |
| 11:21:01 | 6 | destroyed? |
| 11:21:02 | 7 | A. No, I never got a written because he's |
| 11:21:04 | 8 | a friend of mines, and I didn't get a written |
| 11:21:07 | 9 | lease up. |
| 11:21:08 | 10 | Q. Was it a verbal agreement between you |
| 11:21:10 | 11 | two? |
| 11:21:11 | 12 | A. Right. |
| 11:21:11 | 13 | Q. How much was the rent? |
| 11:21:12 | 14 | A. 750. |
| 11:21:13 | 15 | Q. Was that person the tenant that was |
| 11:21:18 | 16 | living there before you bought the house? |
| 11:21:20 | 17 | A. No, actually I told the former owner to |
| 11:21:24 | 18 | tell the tenant, you know, to move, because he was |
| 11:21:26 | 19 | up in the air about getting a new owner and plus I |
| 11:21:29 | 20 | wanted the third floor. He was staying on the |
| 11:21:32 | 21 | third floor and that's the one I wanted because it |
| 11:21:34 | 22 | had three bedrooms up there. And that's the one I |
| 11:21:36 | 23 | was going into. |
| 11:21:37 | 24 | Q. Oh -- |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 11:21:38 | 1 | A.    The top floor had three bedrooms. |
| 11:21:40 | 2 | That's the one that the former tenant was living |
| 11:21:43 | 3 | in.   That's the one I wanted to go stay in. |
| 11:21:45 | 4 | Q.    And when you say third floor, you mean |
| 11:21:47 | 5 | there's a basement, first floor and second floor? |
| 11:21:50 | 6 | A.    Yeah.   Yeah. |
| 11:21:50 | 7 | Q.    How much -- do you know how much the |
| 11:21:57 | 8 | original tenant was paying in rent? |
| 11:21:59 | 9 | A.    I don't.   I know he was Section 8 up |
| 11:22:02 | 10 | there, so I couldn't really tell you. |
| 11:22:05 | 11 | Q.    Yeah, but do you know a ballpark? |
| 11:22:06 | 12 | A.    Maybe like 850.   That's what they run, |
| 11:22:09 | 13 | anywhere between 850, 750 for those units out |
| 11:22:15 | 14 | there. |
| 11:22:15 | 15 | Q.    So did you go to the lower end, around |
| 11:22:19 | 16 | 750, because you were giving the lease to your |
| 11:22:22 | 17 | friend? |
| 11:22:22 | 18 | A.    No, but that's -- I was just being |
| 11:22:24 | 19 | fair.   That what they was asking for, you know. |
| 11:22:26 | 20 | Q.    If you look at the -- on the page |
| 11:22:39 | 21 | Stinson 2 in the box G, where it says "property |
| 11:22:43 | 22 | location," do you see where I'm talking about? |
| 11:22:46 | 23 | It's on the -- kind of in the middle on the left |
| 11:22:49 | 24 | side? |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 11:22:50 | 1 | A.    Yeah, I see.  Yeah. |
| 11:22:50 | 2 | Q.    It describes it as 5937 West Iowa |
| 11:22:56 | 3 | Street, Chicago, Illinois, Cook County, Illinois. |
| 11:22:57 | 4 | Then lots, looks like 7 and 8? |
| 11:22:59 | 5 | A.    Right. |
| 11:23:00 | 6 | Q.    Is it two pieces of property on that |
| 11:23:02 | 7 | address? |
| 11:23:03 | 8 | A.    No. |
| 11:23:04 | 9 | Q.    Do you know why it's referred to as |
| 11:23:06 | 10 | lots 7 and 8? |
| 11:23:08 | 11 | A.    I have no idea. |
| 11:23:09 | 12 | Q.    Is it a single-family or multi-unit? |
| 11:23:11 | 13 | A.    Single family. |
| 11:23:33 | 14 | MR. CROWSON:  We're going to take a quick |
| 11:23:36 | 15 | break to change the tape. |
| 11:23:37 | 16 | THE VIDEOGRAPHER:  We're going off the video |
| 11:23:39 | 17 | record at the end of tape one at 11:23 a.m. |
| | 18 | (WHEREUPON, discussion was had |
| 11:23:51 | 19 | off the record.) |
| 11:24:44 | 20 | THE VIDEOGRAPHER:  We're going back on the |
| 11:25:09 | 21 | video record at the start of tape two at |
| 11:25:11 | 22 | 11:25 a.m. |
| 11:25:13 | 23 | BY MR. CROWSON: |
| 11:25:21 | 24 | Q.    Why don't you hold on to the discovery |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 11:25:23 | 1 | answers, Exhibit 3.  And I'm going to mark as |
| 11:25:26 | 2 | Exhibit 4 the verification for those discovery |
| 11:25:32 | 3 | requests. |
| 11:25:32 | 4 | I'll make one extra copy for this. |
| | 5 | (WHEREUPON, a certain document |
| | 6 | was marked Stinson Deposition |
| | 7 | Exhibit No. 4, for |
| | 8 | identification, as of 4/21/08.) |
| | 9 | BY MR. CROWSON: |
| 11:25:41 | 10 | Q.    Is that your signature, Mr. Stinson? |
| 11:25:42 | 11 | A.    Yes, it is. |
| 11:25:43 | 12 | Q.    What's your understanding of why you |
| 11:25:47 | 13 | needed to sign this document? |
| 11:25:49 | 14 | A.    Just verify things that I went over, |
| 11:25:53 | 15 | you know. |
| 11:25:54 | 16 | Q.    Was it to verify the information in |
| 11:25:58 | 17 | Exhibit 3? |
| 11:26:03 | 18 | MS. COMBS:  Want to look at the title of |
| 11:26:06 | 19 | Exhibit 3. |
| 11:26:06 | 20 | BY MR. CROWSON: |
| 11:26:07 | 21 | Q.    Or do you know? |
| 11:26:08 | 22 | A.    Yeah, I -- yes. |
| 11:26:11 | 23 | Q.    That's all I have.  I'm done with that, |
| 11:26:24 | 24 | you can set that aside -- you can set both of |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 11:26:26 | 1 | those aside. |
| 11:26:29 | 2 | Earlier, Mr. Stinson, you explained a |
| 11:26:36 | 3 | package of materials that Mr. Hofeld had sent to |
| 11:26:39 | 4 | you in the mail.  Did you retain everything that |
| 11:26:46 | 5 | Mr. Hofeld delivered to you? |
| 11:26:47 | 6 | A.    It's right there, it's what I have, |
| 11:26:49 | 7 | right there. |
| 11:26:50 | 8 | Q.    Was there a -- I thought you may have |
| 11:26:53 | 9 | said earlier -- |
| 11:26:54 | 10 | A.    There was a first initial letter. |
| 11:26:56 | 11 | Q.    There was a cover letter? |
| 11:26:56 | 12 | A.    No, it was a letter before that. |
| 11:26:59 | 13 | Q.    Did you save that? |
| 11:27:00 | 14 | A.    No.  I thought I did, I don't have it. |
| 11:27:03 | 15 | Q.    You just may have happened to throw it |
| 11:27:06 | 16 | away at some point? |
| 11:27:07 | 17 | A.    Right. |
| 11:27:07 | 18 | Q.    I just want to mark this for the |
| | 19 | record. |
| | 20 | (WHEREUPON, a certain document |
| | 21 | was marked Stinson Deposition |
| | 22 | Exhibit No. 5, for |
| | 23 | identification, as of 4/21/08.) |
| | 24 | |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

|  |  |  |
|---|---|---|
| | 1 | BY MR. CROWSON: |
| 11:27:27 | 2 | Q.    I'm handing you what I've marked as |
| 11:27:29 | 3 | Exhibit 5.  Can you just confirm that that's the |
| 11:27:31 | 4 | packet of materials that you did retain -- |
| 11:27:34 | 5 | A.    Yes. |
| 11:27:34 | 6 | Q.    -- from Mr. Hofeld? |
| 11:27:35 | 7 | A.    Yes. |
| 11:27:35 | 8 | Q.    Okay.  You can set it aside. |
| 11:27:38 | 9 | Earlier you gave a very good and |
| 11:27:55 | 10 | accurate summary of your claim against Long Beach |
| 11:28:00 | 11 | when you said that it's the failure to disclose a |
| 11:28:05 | 12 | security interest via the 1-4 family rider. |
| 11:28:10 | 13 | Have you -- is that understanding based |
| 11:28:16 | 14 | solely on information that you got from your |
| 11:28:20 | 15 | attorneys? |
| 11:28:20 | 16 | A.    No. |
| 11:28:20 | 17 | MS. COMBS:  Well -- okay. |
| | 18 | BY THE WITNESS: |
| 11:28:24 | 19 | A.    No, because I feel like I'm highly |
| 11:28:27 | 20 | educated enough to understand that without a |
| 11:28:30 | 21 | lawyer, you know. |
| 11:28:31 | 22 | BY MR. CROWSON: |
| 11:28:39 | 23 | Q.    And when again was it that you first |
| 11:28:45 | 24 | started feeling that Long Beach had violated the |

ALBERT STINSON, APRIL 21, 2008
THIS DEPOSITION CONTAINS CONFIDENTIAL MATERIAL

| | | |
|---|---|---|
| 11:28:49 | 1 | Truth in Lending Act? |
| 11:28:51 | 2 | MS. COMBS: I'm going to object. I believe |
| 11:28:52 | 3 | that was asked and answered. But, he can answer. |
| 11:28:55 | 4 | BY THE WITNESS: |
| 11:28:55 | 5 | A. When I received those documents stating |
| 11:28:57 | 6 | that they have a right to my personal property. |
| 11:29:01 | 7 | BY MR. CROWSON: |
| 11:29:02 | 8 | Q. And that was around January of 2007? |
| 11:29:04 | 9 | A. Yes. When I first made -- made aware |
| 11:29:07 | 10 | of what this thing -- this whole thing was about. |
| 11:29:11 | 11 | Q. Did you have any understanding as to |
| 11:29:16 | 12 | how Mr. Hofeld had a copy of your mortgage or your |
| 11:29:22 | 13 | 1-4 family rider? |
| 11:29:23 | 14 | MS. COMBS: Now I'm going to caution you not |
| 11:29:26 | 15 | to answer as to what Mr. Hofeld told you or what |
| 11:29:28 | 16 | you told Mr. Hofeld. But if you can answer |
| 11:29:30 | 17 | that -- |
| 11:29:30 | 18 | MR. CROWSON: If you know. |
| 11:29:32 | 19 | MS. COMBS: -- based on your knowledge -- |
| | 20 | BY THE WITNESS: |
| 11:29:34 | 21 | A. That's what lawyers do, they do they |
| 11:29:38 | 22 | own work. |
| 11:29:38 | 23 | BY MR. CROWSON: |
| 11:29:51 | 24 | Q. I want to talk about the actual Long |